QUINN EMANUEL URQUHART & SULLIVAN, LLP

James R. Asperger (Bar No. 83188)
jamesasperger@quinnemanuel.com
Yury Kapgan (Bar No. 218366)
yurykapgan@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Jordan R. Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

BLACKBERRY CORPORATION
Edward R. McGah, Jr. (Bar No. 97719)
emcgah@blackberry.com
3001 Bishop Drive, Suite 400
San Ramon, CA 94583
Telephone: (949) 629-0221
Facsimile: (925) 424-5661

Attorneys for Defendants and Counter-Claimants
BlackBerry Limited and BlackBerry Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC.,<br>a Delaware corporation,<br><br>    Plaintiff and Counter-Defendant,<br><br>    v.<br><br>BLACKBERRY LIMITED,<br>a Canadian corporation, and<br>BLACKBERRY CORPORATION,<br>a Delaware corporation,<br><br>    Defendants and Counter-Claimants. | Case No. 4:18-cv-05434-JSW<br><br>**DEFENDANTS' ANSWER AND COUNTERCLAIMS**<br><br>**JUDGE**: Hon. Jeffrey S. White<br><br>**JURY TRIAL DEMANDED** |

Defendants BlackBerry Limited ("BlackBerry Ltd.") and BlackBerry Corporation ("BlackBerry Corp.") (collectively, "BlackBerry") answer as follows to each allegation set forth in the complaint filed by Plaintiff Facebook, Inc. ("Facebook") on September 4, 2018.[1]  Factual allegations not expressly admitted below are denied.

## COMPLAINT FOR PATENT INFRINGEMENT

1.      BlackBerry admits that Facebook filed a complaint against BlackBerry on September 4, 2018 in the Northern District of California, Case No. 3:18-cv-05434 ("Complaint").  BlackBerry denies that Facebook is entitled to any relief requested in the Complaint.

## NATURE OF THE ACTION

2.      BlackBerry admits that Facebook accuses BlackBerry of infringing U.S. Patent Nos. 8,429,231 (the "'231 patent"), 7,567,575 (the "'575 patent"), 6,356,841 (the "'841 patent"), 7,228,432 (the "'432 patent"), 6,744,759 (the "'759 patent"), and 7,302,698 (the "'698 patent") (collectively, the "Asserted Patents").  BlackBerry denies infringing the Asserted Patents.

## FACEBOOK BACKGROUND

3.      BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3 of the Complaint, and therefore denies them.

4.      BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4 of the Complaint, and therefore denies them.

5.      BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 of the Complaint, and therefore denies them.

6.      BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6 of the Complaint, and therefore denies them.

## THE PARTIES

7.      BlackBerry admits the allegations in paragraph 7 of the Complaint.

---

[1]     Each paragraph herein responds to the same numbered paragraph in Facebook's complaint. In responding to the allegations, BlackBerry mirrors in its answer the headings used by Facebook in its complaint, but does so solely for the ease of reference—BlackBerry admits to neither the accuracy of the headings nor with any characterizations reflected in the headings.

8.     BlackBerry admits the allegations in paragraph 8 of the Complaint.

9.     BlackBerry admits the allegations in paragraph 9 of the Complaint.

## JURISDICTION

10.     BlackBerry admits that Facebook purports to bring this civil action under the patent laws of the United States, set forth in Title 35 of the United States Code.  The remaining allegation in paragraph 10 of the Complaint states a legal conclusion for which neither admission nor denial is required.

11.     BlackBerry admits that BlackBerry Corp. is registered to do business in California.  BlackBerry admits that BlackBerry Corp. does business in California and within the Northern District of California.  BlackBerry admits that BlackBerry Corp. has at least one office located at 3001 Bishop Drive, Suite 400, San Ramon, California, 94583, and has employees in California and within the Northern District of California.   BlackBerry admits that BlackBerry Corp. is a wholly owned subsidiary of BlackBerry Ltd.  Blackberry denies that it infringes any of the Asserted Patents.  The remaining allegations in paragraph 11 of the Complaint state legal conclusions for which neither admission nor denial is required.  To the extent a response is required, BlackBerry denies the remaining allegations in paragraph 11 of the Complaint.

## VENUE

12.     BlackBerry admits that BlackBerry Ltd. is not a resident of the United States.  BlackBerry admits that BlackBerry Corp. conducts business in the Northern District of California.  BlackBerry admits that BlackBerry Corp. has a regular and established place of business in the Northern District of California.  The remaining allegations in paragraph 12 of the Complaint state legal conclusions for which neither admission nor denial is required.  To the extent a response is required, BlackBerry denies the remaining allegations in paragraph 12 of the Complaint.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 8,429,231

13.     In response to paragraph 13 of the Complaint, BlackBerry incorporates by reference and re-alleges all foregoing paragraphs of this Answer as if fully set forth herein.

14.     BlackBerry admits that the '231 patent is entitled "VOICE INSTANT MESSAGING" and reflects an issue date of April 23, 2013.  The remaining allegations in paragraph 14 of the

1   Complaint state legal conclusions for which neither admission nor denial is required.  To the extent a

2   response is required, BlackBerry lacks knowledge or information sufficient to form a belief as to the

3   truth of the remaining allegations in paragraph 14 of the Complaint, and therefore denies them.

4         15.    BlackBerry admits that Exhibit A, attached to the Complaint, appears on its face to be a

5   copy of the '231 patent.  The remaining allegations in paragraph 15 of the Complaint state legal

6   conclusions for which neither admission nor denial is required.

7         16.    BlackBerry denies the allegations in paragraph 16 of the Complaint.

8   ***SUMMARY OF INVENTION***

9         17.    BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of

10  the allegations in paragraph 17 of the Complaint, and therefore denies them.

11        18.    BlackBerry admits that the "BACKGROUND" section of the '231 patent states at col.

12  1 ll. 33–41 that: "America Online has provided subscribers with the ability to send and receive instant

13  messages. . . . . Instant messaging is becoming a preferred means of communicating among online

14  subscribers." BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of

15  the remaining allegations in paragraph 18 of the Complaint, and therefore denies them.

16        19.    BlackBerry admits that the '231 patent states at col. 1 ll. 13–16 that: "The present

17  invention relates generally to transferring data between subscribers of a communications system and

18  more particularly to transferring audio data between subscribers of an instant messaging host."

19  BlackBerry admits that the '231 patent states at col. 1 l. 66 that: "Voice communication may be

20  enabled by establishing a generic signaling interface channel, a control channel, and an audio channel

21  between the sender and the recipient."  BlackBerry lacks knowledge or information sufficient to form

22  a belief as to the truth of the remaining allegations in paragraph 19 of the Complaint, and therefore

23  denies them.

24        20.    BlackBerry admits that the '231 patent states at col. 13 ll. 27–33 that: "In one

25  implementation, a talk tool establishes an active talk session using three communication channels: a

26  Generic Signaling Interface (GSI) channel, a control channel, and an audio channel.  The talk tool uses

27  the GSI channel to establish the initial connection.  During this connection, the local IP addresses are

28  exchanged.   After the initial connection phase is done, the GSI channel is no longer used."

BlackBerry admits that the '231 patent states at col. 13 ll. 33–38 that: "By using the GSI channel, the exchange of local IP addresses is only done when both users permit such an exchange, i.e., by clicking on the CONNECT UI.  These actions protect users from having their local EP addresses automatically obtained without their consent."  BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 20 of the Complaint, and therefore denies them.

21.    BlackBerry admits that claims 1 and 10 of the '231 patent recite at col. 15 ll. 33–34, col. 16 ll. 24–25 as follows: "using more than one channel including at least a generic signaling interface channel."  BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 21 of the Complaint, and therefore denies them.

22.    BlackBerry admits that the '231 patent states at col. 12 ll. 16–25 that: "Once the instant message is verified, the host **604** determines the capabilities of the recipient (step **615**).  For example, the host **604** may monitor and update the online status, client version, and device type of all connected subscribers in real time.  The capability to receive audio data may depend on hardware (e.g., device type), software (e.g., client version), and/or transfer preferences (e.g., blocked screen names).  To be talk enabled, both the talk software and audio equipment must be available.  The host **604** then reports the capabilities of the recipient to the sender (step **620**)."  BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 22 of the Complaint, and therefore denies them.

23.    BlackBerry admits that claims 1 and 10 of the '231 patent recite at col. 15 ll. 29–32, col. 16 ll. 20–23 as follows: "based on the determined voice communication capabilities of the recipient and based on the indication that the sender has selected the voice communication option."  The remaining allegations in paragraph 23 of the Complaint state legal conclusions for which neither admission nor denial is required.  To the extent a response is required, BlackBerry denies the remaining allegations in paragraph 23 of the Complaint.

### BLACKBERRY'S INFRINGEMENT

24.    BlackBerry denies the allegations in paragraph 24 of the Complaint.

25.    BlackBerry denies the allegations in paragraph 25 of the Complaint.

26.     BlackBerry denies the allegations in paragraph 26 of the Complaint.

27.     BlackBerry admits that https://docs.blackberry.com/en/id-comm-collab/bbm-enterprise/latest states that "BBM Enterprise offers secure text, voice, video and group chat" for devices.  BlackBerry denies the remaining allegations in paragraph 27 of the Complaint.

28.     BlackBerry denies the allegations in paragraph 28 of the Complaint.

29.     BlackBerry denies the allegations in paragraph 29 of the Complaint.

30.     BlackBerry denies the allegations in paragraph 30 of the Complaint.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,567,575

31.     In response to paragraph 31 of the Complaint, BlackBerry incorporates by reference and re-alleges all foregoing paragraphs of this Answer as if fully set forth herein.

32.     BlackBerry admits that the '575 patent is entitled "PERSONALIZED MULTIMEDIA SERVICES USING A MOBILE SERVICE PLATFORM" and reflects an issue date of July 28, 2009.  The remaining allegations in paragraph 32 of the Complaint state legal conclusions for which neither admission nor denial is required.  To the extent a response is required, BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 32 of the Complaint, and therefore denies them.

33.     BlackBerry admits that Exhibit B, attached to the Complaint, appears on its face to be a copy of the '575 patent.  The remaining allegations in paragraph 33 of the Complaint state legal conclusions for which neither admission nor denial is required.

34.     BlackBerry denies the allegations in paragraph 34 of the Complaint.

### *SUMMARY OF INVENTION*

35.     BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35 of the Complaint, and therefore denies them.

36.     BlackBerry admits that the '575 patent states at col. 2 ll. 12–14 that: "Wireless access links suffer from severe transmission conditions, such as narrow bandwidth, higher bit error rates and high latency."  BlackBerry admits that the '575 patent states at col. 2 ll. 22–25 that: "Another problem with wireless links is congestion of the control and request channels when these channels are used simultaneously to deliver the multimedia content."  BlackBerry admits that the '575 patent states at

col. 2 ll. 26–34 that: "It would, therefore, be desirable to provide personal multimedia services delivered over a wireless communication channel to a variety of mobile device types while minimizing congestion of the control and request paths.  It would further be desirable to provide a mobile service platform and separate multimedia servers having distinct channels for delivering transcoded multimedia data and adapting the delivery of the multimedia data to fluctuations of the wireless communication channel conditions."  BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in paragraph 36 of the Complaint, and therefore denies them.

37.     BlackBerry admits that the '575 patent states at col. 2 l. 60–col. 3 l. 18 that: "In one aspect of the invention, a method for providing multimedia data from at least one controllable multimedia source to a mobile device includes providing a request path from the mobile device to a mobile service platform, receiving a request from the mobile device, obtaining a device profile from the mobile device, authenticating the identity of a user of the mobile device, and determining a user profile in response to the user identity.  The method further includes authorizing control and access to the at least one multimedia source, providing a control channel from the mobile service platform to at least one multimedia server, providing multimedia data delivery information to the at least one multimedia server, and providing multimedia data to the mobile device in response to the request via the at least one multimedia server.  With such a technique, personal multimedia services are delivered over a wireless communication channel to a variety of mobile device types while minimizing congestion of the control and request paths, and a mobile user can control multimedia sources over the wireless channel.  By routing the control paths through the mobile service platform and the content delivery paths through multimedia servers, the control, transcoding, and multimedia delivery functions are handled efficiently without overloading any particular communications pipe.  The inventive technique enables different modes of communication from a multitude of handheld devices for efficient and personalized multimedia delivery."  BlackBerry admits that the '575 patent states at col. 4 ll. 19–28 that: "In general, the present invention provides personalized multimedia service by integrating a mobile service platform, and a plurality of multimedia servers for wireless multimedia delivery.  The mobile service platform operates as a message gateway for allowing mobile devices

using various protocols on different access networks to access multimedia resources on the Internet and various other networks.  The mobile service platform includes a flexible architecture having a plurality of components that cooperate to service mobile device service requests." BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in paragraph 37 of the Complaint, and therefore denies them.

38.     BlackBerry admits that claim 1 of the '575 patent recites at col. 14 ll. 55–56 as follows: "[a] method for providing multimedia data from at least one controllable multimedia source to a mobile device." BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in paragraph 38 of the Complaint, and therefore denies them.

39.     BlackBerry admits that claim 1 of the '575 patent recites at col. 14 ll. 58–59, col. 15 ll. 1–2, 5–6 as follows: "providing a request path from the mobile device to a mobile service platform," "providing a control channel from the mobile service platform to at least one multimedia server," and "providing multimedia data to the mobile device in response to the request via the at least one multimedia server." BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 39 of the Complaint, and therefore denies them.

40.     BlackBerry admits that claim 1 of the '575 patent recites at col. 14 ll. 61–66 as follows: "obtaining a device profile from the mobile device," "authenticating the identity of a user of the mobile device," "determining a user profile corresponding to the user identity," and "authorizing control and access to the at least one multimedia source."  The remaining allegations in paragraph 40 of the Complaint state legal conclusions for which neither admission nor denial is required.  To the extent a response is required, BlackBerry denies the remaining allegations in paragraph 40 of the Complaint.

### *BLACKBERRY'S INFRINGEMENT*

41.     BlackBerry denies the allegations in paragraph 41 of the Complaint.

42.     BlackBerry denies the allegations in paragraph 42 of the Complaint.

43.     BlackBerry denies the allegations in paragraph 43 of the Complaint.

44.     BlackBerry admits that https://www.blackberry.com/us/en/products/endpoint-management/blackberry-uem states that BlackBerry Unified Endpoint Manager (BlackBerry UEM)

-8-

"delivers complete endpoint management and policy control" for "devices and apps."  BlackBerry admits that https://help.blackberry.com/en/security-guide-for-blackberry-powered-by-android/latest/security-guide-for-blackberry-powered-by-android-html/kja1437070745523.html   states   that: "BlackBerry Secure Connect Plus is a BlackBerry UEM component that provides a secure IP tunnel between work space apps on a device and your organization's network."  BlackBerry denies the remaining allegations in paragraph 44 of the Complaint.

45.     BlackBerry admits that the figure in paragraph 45 of the Complaint  (without the red annotation) appears on its face to be a reproduction of figure 1 in the '575 patent, described in the patent at col. 4 ll. 1–3 as "a schematic depiction of a system for providing multimedia data to a variety of mobile devices in accordance with the present invention."  BlackBerry denies the remaining allegations in paragraph 45 of the Complaint.

46.     BlackBerry denies the allegations in paragraph 46 of the Complaint.

47.     BlackBerry denies the allegations in paragraph 47 of the Complaint.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 6,356,841

48.     In response to paragraph 48 of the  Complaint, BlackBerry incorporates by reference and re-alleges all foregoing paragraphs of this Answer as if fully set forth herein.

49.     BlackBerry admits that the '841 patent is entitled "G.P.S. MANAGEMENT SYSTEM" and reflects an issue date of March 12, 2002.  The remaining allegations in paragraph 49 of the Complaint state legal conclusions for which neither admission nor denial is required.  To the extent a response is required, BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 49 of the Complaint, and therefore denies them.

50.     BlackBerry admits that Exhibit C, attached to the Complaint, appears on its face to be a copy of the '841 patent.  The remaining allegations in paragraph 50 of the Complaint state legal conclusions for which neither admission nor denial is required.

51.     BlackBerry denies the allegations in paragraph 51 of the Complaint.

## *SUMMARY OF INVENTION*

52.     BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 52 of the Complaint, and therefore denies them.

53.     BlackBerry admits that the '841 patent states at col. 1 ll. 17–24 that: "One of the drawbacks of conventional G.P.S. systems is the local and isolated nature of the G.P.S. information. Currently, the position information is only sent to the local user and the location history, or where the user has been, cannot be determined.   Furthermore, conventional G.P.S. systems do not allow centralized storage and processing of information and conventional G.P.S. systems cannot track multiple G.P.S. users."  BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 53 of the Complaint, and therefore denies them.

54.     BlackBerry admits that the '841 patent states at col. 2 ll. 55–57 that: "The invention generally allows accurate and convenient tracking and management of multiple G.P.S.-equipped remote entities."  BlackBerry admits that the '841 patent states at col. 1 ll. 61–67 that: "In another aspect of the invention, the system includes provisions that allow information stored in the remote unit to be transmitted to the central location during periods of relative inactivity.  This feature allows information to be transferred from the remote unit to the central location without interfering with the function of the system during busy or active periods of time."  BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 54 of the Complaint, and therefore denies them.

55.     BlackBerry admits that the '841 patent states at col. 11 l. 45–col. 12 l. 2 as follows:

> The invention includes provisions to conserve power.  When the system detects an ignition off condition, the system processes all of the computing steps associated with the detection of an ignition off condition, and then the ICU enters a "sleep" mode in order to reduce power consumption.  When in sleep mode, power shall be supplied only to those components that must still function when the vehicle is not moving.
>
> During the "sleep mode" the alert call features, including the RAT (Remote Alert Transmitter) button, still function.  The preferred way the system allows the alert call feature to function during a state of "sleep," such that the system comes out of sleep mode when the system senses an activation of a technician alert call, either from an in-vehicle button or a remote button, and the ICU comes out of the sleep mode long enough to perform alert call processing functions.
>
> System parameters, location of the vehicle, and other stored data is maintained while the ICU is in sleep mode.  Turning the vehicle ignition on causes the ICU to come out of the sleep mode and resume normal processing.

> Preferably, the ICU is designed to conserve power during all of its operating modes.  Primary vehicle power consumption by all G.P.S. components within the vehicle should not to exceed 1 Amp hour for any twenty-four hour period.

BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 55 of the Complaint, and therefore denies them.

56.   BlackBerry admits that claim 12 of the '841 patent recites at col. 20 ll. 13–21 as follows: "a remote unit in communication with a Global Positioning System receiver and receiving Global Positioning System information from the Global Positioning System receiver; wherein: [¶] the remote unit having a first state wherein the remote unit consumes a first quantity of power and a second state where the remote unit consumes a second quantity of power."  BlackBerry admits that claim 26 the '841 patent recites at col. 21 ll. 31–34 as follows: "the remote unit has a first state wherein the remote unit consumes a first quantity of power and a second state where the remote unit consumes a second quantity of power."  BlackBerry admits that claim 12 of the '841 patent recites at col. 20 ll. 22–26 as follows: "the remote unit storing the Global Positioning System information in a memory wherein the remote unit transmits the Global Positioning System information to the central location when the remote unit is in the second state."  BlackBerry admits that claims 19 and 25 of the '841 patent recite at col. 20 ll. 60–62, col. 21 ll. 28–30 as follows: "the remote unit detects a loss of Global Positioning System signal and stores information associated with the loss of signal."  The remaining allegations in paragraph 56 of the Complaint state legal conclusions for which neither admission nor denial is required.  To the extent a response is required, BlackBerry denies the remaining allegations in paragraph 56 of the Complaint.

### BLACKBERRY'S INFRINGEMENT

57.   BlackBerry denies the allegations in paragraph 57 of the Complaint.

58.   BlackBerry denies the allegations in paragraph 58 of the Complaint.

59.   BlackBerry denies the allegations in paragraph 59 of the Complaint.

60.   BlackBerry admits that https://www.blackberry.com/us/en/products/blackberry-radar/dashboards-reporting states that BlackBerry Radar provides "trailer tracking and asset monitoring," including enabling "[b]ack [o]ffice" to "[e]asily [v]iew" "[a]ccurate GPS asset location."  BlackBerry

admits that the image in paragraph 60 of the Complaint appears on its face to be a reproduction of the image displayed at https://us.blackberry.com/qnx-radar/trailer-chassis-and-container-tracking/radar-solution/radar-services.   BlackBerry denies the remaining allegations in paragraph 60 of the Complaint.

61.    BlackBerry admits that figures in paragraph 61 of the Complaint appear on their face to be reproductions of: (1) figure 15 in the '841 patent, described in the patent at col. 2 ll. 39–30 as "an example of a graphical route history, according to the present invention"; and (2) figure 17 in the '841 patent, described in the patent at col. 2 ll. 43–44 as "an example of a current location report, according to the present invention."   BlackBerry denies the remaining allegations in paragraph 61 of the Complaint.

62.    BlackBerry denies the allegations in paragraph 62 of the Complaint.

63.    BlackBerry denies the remaining allegations in paragraph 63 of the Complaint.

### COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,228,432

64.    In response to paragraph 64 of the Complaint, BlackBerry incorporates by reference its foregoing responses as if fully set forth herein.

65.    BlackBerry admits that the '432 patent is entitled "METHOD AND APPARATUS FOR PROVIDING SECURITY FOR A COMPUTER SYSTEM" and reflects an issue date of June 5, 2007.  The remaining allegations in paragraph 65 of the Complaint state legal conclusions for which neither admission nor denial is required.  To the extent a response is required, BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 65 of the Complaint, and therefore denies them.

66.    BlackBerry admits that Exhibit D, attached to the Complaint, appears on its face to be a copy of the '841 patent.  The remaining allegations in paragraph 66 of the Complaint state legal conclusions for which neither admission nor denial is required.

67.    BlackBerry denies the allegations in paragraph 67 of the Complaint.

### *SUMMARY OF INVENTION*

68.    BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 68 of the Complaint, and therefore denies them.

69.     BlackBerry admits that the '432 patent states at col. 1 ll. 25–36 that: "In providing security for a computer system, computer systems typically preclassify viruses to assist in identifying malicious code.   However, when new viruses are introduced, computer systems are vulnerable because a virus may be unknown or unclassified.   As a result, the computer system is not able to remove an unknown virus before it attacks the computer system.   In addition, the performance of the central processing unit ('CPU') may be impacted by the operation of security functions of the computer system.   The computer system's overall performance may be diminished because the security functions are consuming the resources of the CPU."   BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 69 of the Complaint, and therefore denies them.

70.     BlackBerry admits that the '432 patent states at col. 2 ll. 18–29 as follows:

> The disclosed embodiments provide an improved approach that may address one or more of the issues discussed above, while enhancing the performance of a computer system. With computer systems, security functions may be provided to protect the system.   The security functions may be managed by a device or component, such as a processor, that is within the computer system or external to the computer system.   In the disclosed embodiments, the security of the computer system is maintained in a manner that: (1) protects against defeat by thread models or technologies; (2) minimizes interaction with the CPU; and (3) allows trapping of code that is unknown or unclassified.

BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 70 of the Complaint, and therefore denies them.

71.     BlackBerry admits that the '432 patent states at col. 2 ll. 31–34 that: "the disclosed embodiments may enable a computer system to operate in a more efficient manner by having a security co-processor that protects against defeat by thread models or technologies."   BlackBerry admits that the '432 patent states at col. 2 ll. 37–49 as follows:

> By having a security co-processor examine code and activities that are independent of the operating system, the threaded programs are unable to defeat the security of the computer system.   In addition, the security co-processor may minimize the performance impact on the central processing unit ("CPU") of a computer system by performing the security functions, which allows the CPU to devote more resources to non-security related functions.   Furthermore, the security co-processor may examine new code without the code being pre-classified.   Thus, as new viruses are introduced, the security co-processor may trap the

-13-

unknown or unclassified code before the CPU is damaged by an attack from the code.

BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 71 of the Complaint, and therefore denies them.

72.     BlackBerry admits that the '432 patent states at col. 4 ll. 13–33 that: "The security co-processor **111** may examine code independent of the operating system ('OS') executing in the computer system **100** or other computers in the computer network **10**.  For example, the security co-processor **111** may enable the computer system **100** to prevent thread technologies and unknown code from attacking the computer system **100**.  As a benefit to the computer system **100**, the security co-processor **111** may examine code independently of the processor complex **102**, which may be executing an operating system.  As such, the security co-processor **111** may trap code that is unknown or unclassified to prevent it from impacting the performance or integrity of the computer system **100**." BlackBerry admits that the '432 patent states at col. 4 ll. 17–20 that: "Because the security co-processor **111** performs the security functions and activities, it frees the use of the CPU cycles on the processor complex **102** for other computing activities."  BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 72 of the Complaint, and therefore denies them.

73.     BlackBerry admits that the '432 patent states at col. 4 ll. 27–33 that: "As a benefit to the computer system **100**, the security co-processor **111** may examine code independently of the processor complex **102**, which may be executing an operating system.  As such, the security co-processor **111** may trap code that is unknown or unclassified to prevent it from impacting the performance or integrity of the computer system **100**."  BlackBerry admits that '432 patent states at col. 2 ll. 40–44 that: "[T]he security co-processor may minimize the performance impact on the central processing unit ('CPU') of a computer system by performing the security functions, which allows the CPU to devote more resources to non-security related functions."  The remaining allegations in paragraph 73 of the Complaint state legal conclusions for which neither admission nor denial is required.  To the extent a response is required, BlackBerry denies the remaining allegations in paragraph 73 of the Complaint.

**BLACKBERRY'S INFRINGEMENT**

74.     BlackBerry denies the allegations in paragraph 74 of the Complaint.

75.     BlackBerry denies the allegations in paragraph 75 of the Complaint

76.     BlackBerry denies the allegations in paragraph 76 of the Complaint.

77.     BlackBerry admits that BlackBerry Workspaces was formerly known as WatchDox, and https://www.blackberry.com/us/en/products/communication/blackberry-workspaces-efss states that: "BlackBerry Workspaces provides secure file storage, synchronization and sharing." BlackBerry denies the remaining allegations in paragraph 77 of the Complaint.

78.     BlackBerry admits that the figure in paragraph 78 of the Complaint (without the red annotations) appears on its face to be an excerpt of figure 2 in the '432 patent, described in the patent at col. 1 ll. 55–57 as "a block diagram illustrating a computer system in a network in accordance with embodiments of the present invention." BlackBerry denies the remaining allegations in paragraph 78 of the Complaint.

79.     BlackBerry denies the remaining allegations in paragraph 79 of the Complaint.

80.     BlackBerry denies the remaining allegations in paragraph 80 of the Complaint.

**COUNT V: INFRINGEMENT OF U.S. PATENT NO. 6,744,759**

81.     In response to paragraph 81 of the Complaint, BlackBerry incorporates by reference and re-alleges all foregoing paragraphs of this Answer as if fully set forth herein.

82.     BlackBerry admits that the '759 patent is entitled "SYSTEM AND METHOD FOR PROVIDING USER-CONFIGURED TELEPHONE SERVICE IN A DATA NETWORK TELEPHONY SYSTEM" and reflects an issue date of June 1, 2004. The remaining allegations in paragraph 82 of the Complaint state legal conclusions for which neither admission nor denial is required. To the extent a response is required, BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 82 of the Complaint, and therefore denies them.

83.     BlackBerry admits that Exhibit E, attached to the Complaint, appears on its face to be a copy of the '841 patent. The remaining allegations in paragraph 83 of the Complaint state legal conclusions for which neither admission nor denial is required.

84.     BlackBerry denies the allegations in paragraph 84 of the Complaint.

***SUMMARY OF INVENTION***

85.     BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 85 of the Complaint, and therefore denies them.

86.     BlackBerry admits that the '759 patent states at col. 1 ll. 16–27 that: "For many years, telephone service providers on the Public Switched Telephone Network (PSTN) provided their customers nothing more than a telephone line to use to communicate with other subscribers.  Over time, telephone service providers have enhanced their service by providing Custom Local Area Signaling Service (CLASS) features to their customers. . . . The CLASS features permit customer subscribers of the features to tailor their telephone service according to individual needs."  BlackBerry admits that the '759 patent states at col. 2 ll. 37–44 that: "While the CLASS and PBX features have enhanced the offerings of service providers that use the PSTN, the features are nevertheless limited in their flexibility and scope.  The effect to the user is that the features become clumsy and difficult to use.  For example, in order to use the Call Forwarding function, the user must perform the steps at the user's own phone prior to moving to the location of the telephone to which calls will be forwarded."  BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 86 of the Complaint, and therefore denies them.

87.     BlackBerry admits that the '759 patent states at col. 2 ll. 49–52 that: "One problem with the PSTN is that the terminal devices (e.g. telephones) lack intelligence and operate as 'dumb' terminals on a network having the intelligence in central offices."  BlackBerry admits that the '759 patent states at col. 2 ll. 59–65 that: "For example, some PSTN telephones have a display function to enable the Caller ID feature.  Even such PSTN telephones are limited however by the closed PSTN signaling architecture, which prohibits access by the PSTN telephones to the network signaling protocols.  The display functions are effectively limited to displaying text, again, as a 'dumb' terminal."  BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 87 of the Complaint, and therefore denies them.

88.     BlackBerry admits that the '759 patent states at col. 3 ll. 16–22 that: "In another form of Internet telephony, telephones are connected to access networks that access the Internet using a

router.  The telephones in this form of Internet telephony may be substantially more intelligent than typical PSTN telephones.  For example, such a telephone may include substantially the computer resources of a typical personal computer."  BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 88 of the Complaint, and therefore denies them.

89.     BlackBerry admits that the '759 patent states at col. 3 ll. 23–25 that: "It would be desirable to incorporate CLASS and PBX features into a data network telephony system that uses a data network such as the Internet."  BlackBerry admits that the '759 patent states at col. 3 ll. 26–28 that: "It would be desirable to provide new features and enhancements to telephony service that accommodates and conforms to users' needs."  BlackBerry admits that the '759 patent states at col. 3 ll. 29–31 that: "It would also be desirable to provide features and capabilities to telephone service that create new opportunities for users and for service providers."  BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 89 of the Complaint, and therefore denies them.

90.     BlackBerry admits that the '759 patent states at col. 3 ll. 32–40 as follows:

> The present invention addresses the above needs by providing a system in a data network telephony system, such as for example, the Internet, that provides a way for users to make brand new telephones usable without having to wait while the telephone company programs an account.  The embodiments of the present invention may also be used to modify existing telephone accounts to incorporate new features, or features that may be desired for a limited amount of time.

BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in paragraph 90 of the Complaint, and therefore denies them.

91.     BlackBerry admits that the '759 patent states at col. 3 ll. 41–42 that: "One advantage of the present invention is that telephone features become user-configurable."  BlackBerry admits that the '759 patent states at col. 3 ll. 43–48 that: "Another advantage is that the extent to which features are user-configurable may be determined by the service provider.  The service provider may wish to make a few basic features standard and impose their use in a registration function.  Other features may then be made selectable by the user."  BlackBerry lacks knowledge or information sufficient to form a

1  belief as to the truth of any remaining allegations in paragraph 91 of the Complaint, and therefore

2  denies them.

3        92.     BlackBerry admits that the '759 patent states at col. 11 ll. 21–28 that: "The requests for

4  features may be made contemporaneously with setting up a new account . . . .  The features may also

5  be requested to modify the service.  Users need not be locked into any service plan or feature set.  One

6  advantage of such provisioning functions is that services may be ordered for temporary use in a

7  manner that is convenient to the user."  BlackBerry lacks knowledge or information sufficient to form

8  a belief as to the truth of any remaining allegations in paragraph 92 of the Complaint, and therefore

9  denies them.

10        93.     BlackBerry admits that the '759 patent states at col. 6 ll. 53–58 that: "another

11  advantage of the system **100** is that the user may plug the data network telephone to the access

12  network to receive rudimental service, but obtain access to fully personalized, user-configured service

13  account as well as to user-selected telephony enhancements and features."  BlackBerry lacks

14  knowledge or information sufficient to form a belief as to the truth of any remaining allegations in

15  paragraph 93 of the Complaint, and therefore denies them.

16        94.     BlackBerry admits that the '759 patent states at col. 3 ll. 32–36 that: "The present

17  invention addresses the above needs by providing a system in a data network telephony system, such

18  as for example, the Internet, that provides a way for users to make brand new telephones usable

19  without having to wait while the telephone company programs an account."  BlackBerry admits that

20  claim 4 of the '759 patent recites at col. 19 ll. 39–41 as follows: "a service configuration function to

21  send a message to the data network telephone to activate the service enhancements."  BlackBerry

22  admits that claim 8 of the '759 patent recites at col. 20 ll. 27–28 as follows: "sending a configuration

23  message to provision the data network telephone with the features selected."  The remaining

24  allegations in paragraph 94 of the Complaint state legal conclusions for which neither admission nor

25  denial is required.  To the extent a response is required, BlackBerry denies the remaining allegations

26  in paragraph 94 of the Complaint.

27                                         ***BLACKBERRY'S INFRINGEMENT***

28        95.     BlackBerry denies the allegations in paragraph 95 of the Complaint.

CASE NO. 4:18-CV-05434-JSW
DEFENDANTS' ANSWER AND COUNTERCLAIMS

96.     BlackBerry denies the allegations in paragraph 96 of the Complaint.

97.     BlackBerry denies the allegations in paragraph 97 of the Complaint.

98.     BlackBerry admits that http://help.blackberry.com/en/blackberry-uem-self-service/latest/blackberry-uem-self-service/amo1375906210935.html states that: "BlackBerry UEM Self-Service is a web-based application that you can use to perform certain tasks, such as creating a password to activate your device or sending commands to your device.  If your device is lost or stolen, you can remotely change the password on your device or delete data from your device."  BlackBerry denies the remaining allegations in paragraph 98 of the Complaint.

99.     BlackBerry denies the allegations in paragraph 99 of the Complaint.

100.    BlackBerry admits that the figure in paragraph 100 of the Complaint appears on its face to be a reproduction of figure 4B in the '759 patent, described in the patent at col. 4. ll. 11–12 as "a depiction of a sample screen for ordering telephone service for the data network telephone of" another figure in the patent.  BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 100 of the Complaint, and therefore denies them.

101.    BlackBerry denies the remaining allegations in paragraph 101 of the Complaint.

102.    BlackBerry denies the remaining allegations in paragraph 102 of the Complaint.

**COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 7,302,698**

103.    In response to paragraph 103 of the Complaint, BlackBerry incorporates by reference and re-alleges all foregoing paragraphs of this Answer as if fully set forth herein.

104.    BlackBerry admits that the '698 patent is entitled "OPERATION OF TRUSTED STATE IN COMPUTING PLATFORM" and reflects an issue date of November 27, 2007.  The remaining allegations in paragraph 104 of the Complaint state legal conclusions for which neither admission nor denial is required.  To the extent a response is required, BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 104 of the Complaint, and therefore denies them.

105.    BlackBerry admits that Exhibit F, attached to the Complaint, appears on its face to be a copy of the '698 patent.  The remaining allegations in paragraph 105 of the Complaint state legal conclusions for which neither admission nor denial is required.

106.    BlackBerry denies the allegations in paragraph 106 of the Complaint.

### SUMMARY OF INVENTION

107.    BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 107 of the Complaint, and therefore denies them.

108.    BlackBerry admits that the '698 patent states at col. 2 ll. 40–46 that: "The operating status of a computer system or platform and the status of the data within the platform or system is dynamic and difficult to predict.  It is difficult to determine whether a computer platform is operating correctly because the state of the computer platform and data on the platform is constantly changing and the computer platform itself may be dynamically changing."  BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 108 of the Complaint, and therefore denies them.

109.    BlackBerry admits that the '698 patent states at col. 7 ll. 18–26 that: "Specific embodiments of the present invention comprise a computer platform having a processing means and a memory means, and which is physically associated with a component, known herein after as a 'trusted component' which monitors operation of the computer platform by collecting metrics data from the computer platform, and which is capable of verifying to third party computer entities interacting with the computer platform to the correct functioning of the computer platform."  BlackBerry admits that the '698 patent states at col. 7 ll. 33–49 as follows:

> A user of a computing entity has higher confidence in the integrity and security of his/her own computer entity and in the integrity and security of the computer entity belonging to the other computing entity.
>
> Each entity is confident that the other entity is in fact the entity which it purports to be.
>
> Where one or both of the entities represent a party to a transaction, e.g. a data transfer transaction, because of the in-built trusted component, third party entities interacting with the entity have a high degree of confidence that the entity does in fact represent such a party.
>
> The trusted component increases the inherent security of the entity itself, through verification and monitoring processes implemented by the trusted component.
>
> The computer entity is more likely to behave in the way it is expected to behave.

1   BlackBerry lacks knowledge or information sufficient to form a belief as to the truth of the remaining

2   allegations in paragraph 109 of the Complaint, and therefore denies them.

3        110.    BlackBerry admits that the '698 patent states at col. 7 ll. 45–47 that: "The trusted

4   component increases the inherent security of the entity itself, through verification and monitoring

5   processes implemented by the trusted component."  The remaining allegations in paragraph 110 of the

6   Complaint state legal conclusions for which neither admission nor denial is required.  To the extent a

7   response is required, BlackBerry denies the remaining allegations in paragraph 110 of the Complaint.

8   ### *BLACKBERRY'S INFRINGEMENT*

9        111.    BlackBerry denies the allegations in paragraph 111 of the Complaint.

10       112.    BlackBerry denies the allegations in paragraph 112 of the Complaint.

11       113.    BlackBerry denies the allegations in paragraph 113 of the Complaint.

12       114.    BlackBerry admits that http://www.qnx.com/developers/docs/qnxcar2/index.jsp?

13  topic=%2Fcom.qnx.doc.neutrino.sys_arch%2Ftopic%2Fham_HAM.html states that: (1) "The High

14  Availability Manager (HAM) provides a mechanism for monitoring processes and services on your

15  system."; (2) "The HAM can monitor specific processes and can control the behavior of the system

16  when specific components fail and need to be recovered."; and (3) "The goal is to provide a resilient

17  manager (or 'smart watchdog') that can perform multistage recovery whenever system services or

18  processes fail, no longer respond, or are detected to be in a state where they cease to provide

19  acceptable levels of service."  BlackBerry denies the remaining allegations in paragraph 114 of the

20  Complaint.

21       115.    BlackBerry admits that figure in paragraph 115 of the Complaint appears on its face to

22  be a reproduction of figure 7 in the '698 patent, described in the patent at col. 6 ll. 53–56 as

23  "illustrate[ing] schematically an example of a state diagram illustrating a set of states into which the

24  computing entity can be placed, and processes for entry and exit from those states." BlackBerry lacks

25  knowledge or information sufficient to form a belief as to the truth of the remaining allegations in

26  paragraph 115 of the Complaint, and therefore denies them.

27       116.    BlackBerry denies the remaining allegations in paragraph 116 of the Complaint.

28       117.    BlackBerry denies the remaining allegations in paragraph 117 of the Complaint.

118.    The allegation in paragraph 118 of the Complaint states a legal conclusion for which neither admission nor denial is required.  To the extent a response is required, BlackBerry denies any allegation contained therein.

### PRAYER FOR RELIEF

This paragraph in the Complaint states legal conclusions for which neither admission nor denial is required.  To the extent a response is required, BlackBerry denies the allegations in the Prayer for Relief, denies that it infringes the Asserted Patents, and denies that Facebook is entitled to any relief sought in the Complaint.

### DEMAND FOR JURY TRIAL

This paragraph sets forth a demand for jury trial by Facebook to which no response is required. To the extent a response is required, BlackBerry denies any allegations contained therein.

### DENIAL OF ANY REMAINING ALLEGATIONS

Except as specifically admitted above, BlackBerry denies any remaining allegations set forth in any paragraph of the Complaint.

### AFFIRMATIVE DEFENSES

BlackBerry incorporates by reference and re-alleges all foregoing paragraphs of this Answer as if fully set forth herein.  For further answer by way of affirmative defenses, each of which pertains to each claim of infringement in the Complaint, BlackBerry asserts the following defenses.

### FIRST AFFIRMATIVE DEFENSE: FAILURE TO STATE A CLAIM

119.    Facebook fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE: NON-INFRINGEMENT

120.    BlackBerry has not infringed and does not infringe any valid, enforceable claims of the Asserted Patents.

### THIRD AFFIRMATIVE DEFENSE: INVALIDITY

121.    The claims of the Asserted Patents are invalid for failure to satisfy one or more requirements of Title 35 of the United States Code, including, without limitation, the provisions of 35 U.S.C. §§ 101, 102, 103, and 112.

**FOURTH AFFIRMATIVE DEFENSE: CAUSATION**

122.     Facebook's alleged damages have not been caused by BlackBerry's actions or omissions.

**FIFTH AFFIRMATIVE DEFENSE: ABSENCE OF DAMAGES**

123.     Facebook has not suffered and will not suffer any damages or injuries arising from BlackBerry's actions or omissions alleged in the Complaint.

**SIXTH AFFIRMATIVE DEFENSE: FAILURE TO MITIGATE ALLEGED DAMAGES**

124.     Facebook has failed to mitigate its alleged damages.

**SEVENTH AFFIRMATIVE DEFENSE: NO WILLFUL INFRINGEMENT**

125.     To the extent Facebook has alleged willful infringement in its Complaint, it is not entitled to enhanced damages because BlackBerry has not engaged in any conduct that meets the applicable standard for willful infringement.

**EIGHTH AFFIRMATIVE DEFENSE: UNAVAILABILITY OF ANY EQUITABLE REMEDY**

126.     Facebook is not entitled to any equitable remedy because it has suffered neither harm nor irreparable harm from BlackBerry's actions or omissions, and further because it has an adequate remedy at law.

**NINTH AFFIRMATIVE DEFENSE: LIMITATION ON DAMAGES**

127.     Facebook's claims for recovery are barred, in whole or in part, by 35 U.S.C. §§ 286, 287, and 288.

**TENTH AFFIRMATIVE DEFENSE: FAILURE TO MARK**

128.     Facebook's claims for recovery are barred, in whole or in part, by 35 U.S.C. § 287.

**ELEVENTH AFFIRMATIVE DEFENSE: LICENSE, IMPLIED LICENSE, AND EXHAUSTION**

129.     Facebook's claims are barred, in whole or in part, by the doctrines of license, implied license, and/or exhaustion, including to the extent that any of the allegedly infringing conduct is premised on or related to products made, sold, used, imported, or provided by any licensed entity (whether express or implied) to the Asserted Patents or related patents.

**TWELFTH AFFIRMATIVE DEFENSE: PROSECUTION HISTORY ESTOPPEL**

130.    By reason of statements, representations, concessions, admissions, arguments, and/or amendments, whether explicit or implicit, made by or on behalf of the applicants during the prosecution of the patent applications that led to the issuance of the Asserted Patents, Facebook's claims of patent infringement are barred in whole or in part by the doctrine of prosecution history estoppel.

**THIRTEENTH AFFIRMATIVE DEFENSE: WAIVER, ESTOPPEL, DISCLAIMER, AND ACQUIESCENCE**

131.    On information and belief, Facebook's claims are barred, in whole or in part, under the doctrines of waiver, estoppel, disclaimer, and/or acquiescence.

**RESERVATION OF ADDITIONAL AFFIRMATIVE DEFENSES**

132.    BlackBerry's investigation of its defenses is ongoing.  BlackBerry reserves the right to assert additional affirmative defenses as additional facts are learned or present themselves during the course of discovery or otherwise during these proceedings.

\* \* \*

**COUNTERCLAIMS**

Defendants and Counterclaimants BlackBerry Limited ("BlackBerry Ltd.") and BlackBerry Corporation ("BlackBerry Corp.") (collectively, "BlackBerry") hereby allege the following counterclaims against Plaintiff and Counter-Defendant Facebook, Inc. ("Facebook"):

**THE PARTIES**

1.    BlackBerry Ltd. is a corporation organized and existing under the laws of Canada, having its principal place of business at 2200 University Avenue East, Waterloo, Ontario, Canada N2K 0A7.

2.    BlackBerry Corp. is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 3001 Bishop Drive, Suite 400, San Ramon, California, 94583.

3.    Facebook is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 1601 Willow Road, Menlo Park, California 94025.

**JURISDICTION AND VENUE**

4.      This is a civil action for declaratory judgment of non-infringement and invalidity of U.S. Patent Nos. 8,429,231 (the "'231 patent"), 7,567,575 (the "'575 patent"), 6,356,841 (the "'841 patent"), 7,228,432 (the "'432 patent"), 6,744,759 (the "'759 patent"), and 7,302,698 (the "'698 patent") (collectively, the "Asserted Patents"), in which BlackBerry seeks relief under the Declaratory Judgment Act.  This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 2201 and 2202.

5.      The Court has personal jurisdiction and venue over Facebook because it consented to personal jurisdiction and venue by filing the Complaint in this action.

**COUNT 1**

**DECLARATION OF NON-INFRINGEMENT OF**

**U.S. PATENT NO. 8,429,231**

6.      BlackBerry incorporates by reference and re-alleges the foregoing counterclaim paragraphs 1 through 5 as if fully set forth herein.

7.      Facebook claims to be owner by assignment of the '231 patent.

8.      Facebook has accused BlackBerry of infringement of the '231 patent.  Facebook has therefore created a substantial, immediate, and real controversy between the parties as to the infringement of the '231 patent.

9.      Blackberry has not infringed and currently does not infringe any asserted claim of the '231 patent directly, indirectly, by inducement, or in any other manner.

10.     Facebook is entitled to no relief.

**COUNT 2**

**DECLARATION OF INVALIDITY OF U.S. PATENT NO. 8,429,231**

11.     BlackBerry incorporates by reference and re-alleges the foregoing counterclaim paragraphs 1 through 5 as if fully set forth herein.

12.     Facebook contends that the asserted claims of the '231 patent are valid and enforceable.  Facebook has therefore created a substantial, immediate, and real controversy between the parties as to the invalidity of the asserted claims of the '231 patent.

13.     Each asserted claim of the '231 patent is invalid for failure to comply with one or more provisions of 35 U.S.C. §§ 101, 102, 103, and/or 112.

14.     Facebook is entitled to no relief.

### COUNT 3

### DECLARATION OF NON-INFRINGEMENT OF

### U.S. PATENT NO. 7,567,575

15.     BlackBerry incorporates by reference and re-alleges the foregoing counterclaim paragraphs 1 through 5 as if fully set forth herein.

16.     Facebook claims to be owner by assignment of the '575 patent.

17.     Facebook has accused BlackBerry of infringement of the '575 patent.  Facebook has therefore created a substantial, immediate, and real controversy between the parties as to the infringement of the '575 patent.

18.     Blackberry has not infringed and currently does not infringe any asserted claim of the '575 patent directly, indirectly, by inducement, or in any other manner.

19.     Facebook is entitled to no relief.

### COUNT 4

### DECLARATION OF INVALIDITY OF U.S. PATENT NO. 7,567,575

20.     BlackBerry incorporates by reference and re-alleges the foregoing counterclaim paragraphs 1 through 5 as if fully set forth herein.

21.     Facebook contends that the asserted claims of the '575 patent are valid and enforceable.  Facebook has therefore created a substantial, immediate, and real controversy between the parties as to the invalidity of the asserted claims of the '575 patent.

22.     Each asserted claim of the '575 patent is invalid for failure to comply with one or more provisions of 35 U.S.C. §§ 101, 102, 103, and/or 112.

23.     Facebook is entitled to no relief.

**COUNT 5**

**DECLARATION OF NON-INFRINGEMENT OF**

**U.S. PATENT NO. 6,356,841**

24.     BlackBerry incorporates by reference and re-alleges the foregoing counterclaim paragraphs 1 through 5 as if fully set forth herein.

25.     Facebook claims to be owner by assignment of the '841 patent.

26.     Facebook has accused BlackBerry of infringement of the '841 patent.  Facebook has therefore created a substantial, immediate, and real controversy between the parties as to the infringement of the '841 patent.

27.     Blackberry has not infringed and currently does not infringe any asserted claim of the '841 patent directly, indirectly, by inducement, or in any other manner.

28.     Facebook is entitled to no relief.

**COUNT 6**

**DECLARATION OF INVALIDITY OF U.S. PATENT NO. 6,356,841**

29.     BlackBerry incorporates by reference and re-alleges the foregoing counterclaim paragraphs 1 through 5 as if fully set forth herein.

30.     Facebook contends that the asserted claims of the '841 patent are valid and enforceable.  Facebook has therefore created a substantial, immediate, and real controversy between the parties as to the invalidity of the asserted claims of the '841 patent.

31.     Each asserted claim of the '841 patent is invalid for failure to comply with one or more provisions of 35 U.S.C. §§ 101, 102, 103, and/or 112.

32.     Facebook is entitled to no relief.

**COUNT 7**

**DECLARATION OF NON-INFRINGEMENT OF**

**U.S. PATENT NO. 7,228,432**

33.     BlackBerry incorporates by reference and re-alleges the foregoing counterclaim paragraphs 1 through 5 as if fully set forth herein.

34.     Facebook claims to be owner by assignment of the '432 patent.

CASE NO. 4:18-CV-05434-JSW

DEFENDANTS' ANSWER AND COUNTERCLAIMS

35.     Facebook has accused BlackBerry of infringement of the '432 patent.  Facebook has therefore created a substantial, immediate, and real controversy between the parties as to the infringement of the '432 patent.

36.     Blackberry has not infringed and currently does not infringe any asserted claim of the '432 patent directly, indirectly, by inducement, or in any other manner.

37.     Facebook is entitled to no relief.

**COUNT 8**

**DECLARATION OF INVALIDITY OF U.S. PATENT NO. 7,228,432**

38.     BlackBerry incorporates by reference and re-alleges the foregoing counterclaim paragraphs 1 through 5 as if fully set forth herein.

39.     Facebook contends that the asserted claims of the '432 patent are valid and enforceable.  Facebook has therefore created a substantial, immediate, and real controversy between the parties as to the invalidity of the asserted claims of the '432 patent.

40.     Each asserted claim of the '432 patent is invalid for failure to comply with one or more provisions of 35 U.S.C. §§ 101, 102, 103, and/or 112.

41.     Facebook is entitled to no relief.

**COUNT 9**

**DECLARATION OF NON-INFRINGEMENT OF**

**U.S. PATENT NO. 6,744,759**

42.     BlackBerry incorporates by reference and re-alleges the foregoing counterclaim paragraphs 1 through 5 as if fully set forth herein.

43.     Facebook claims to be owner by assignment of the '759 patent.

44.     Facebook has accused BlackBerry of infringement of the '759 patent.  Facebook has therefore created a substantial, immediate, and real controversy between the parties as to the infringement of the '759 patent.

45.     Blackberry has not infringed and currently does not infringe any asserted claim of the '759 patent directly, indirectly, by inducement, or in any other manner.

46.     Facebook is entitled to no relief.

**COUNT 10**

**DECLARATION OF INVALIDITY OF U.S. PATENT NO. 6,744,759**

47.     BlackBerry incorporates by reference and re-alleges the foregoing counterclaim paragraphs 1 through 5 as if fully set forth herein.

48.     Facebook contends that the asserted claims of the '759 patent are valid and enforceable.  Facebook has therefore created a substantial, immediate, and real controversy between the parties as to the invalidity of the asserted claims of the '759 patent.

49.     Each asserted claim of the '759 patent is invalid for failure to comply with one or more provisions of 35 U.S.C. §§ 101, 102, 103, and/or 112.

50.     Facebook is entitled to no relief.

**COUNT 11**

**DECLARATION OF NON-INFRINGEMENT OF**

**U.S. PATENT NO. 7,302,698**

51.     BlackBerry incorporates by reference and re-alleges the foregoing counterclaim paragraphs 1 through 5 as if fully set forth herein.

52.     Facebook claims to be owner by assignment of the '698 patent.

53.     Facebook has accused BlackBerry of infringement of the '698 patent.  Facebook has therefore created a substantial, immediate, and real controversy between the parties as to the infringement of the '698 patent.

54.     Blackberry has not infringed and currently does not infringe any asserted claim of the '698 patent directly, indirectly, by inducement, or in any other manner.

55.     Facebook is entitled to no relief.

**COUNT 12**

**DECLARATION OF INVALIDITY OF U.S. PATENT NO. 7,302,698**

56.     BlackBerry incorporates by reference and re-alleges the foregoing counterclaim paragraphs 1 through 5 as if fully set forth herein.

57.     Facebook contends that the asserted claims of the '698 patent are valid and enforceable.  Facebook has therefore created a substantial, immediate, and real controversy between the parties as to the invalidity of the asserted claims of the '698 patent.

58.     Each asserted claim of the '698 patent is invalid for failure to comply with one or more provisions of 35 U.S.C. §§ 101, 102, 103, and/or 112.

59.     Facebook is entitled to no relief.

## BLACKBERRY'S PRAYER FOR RELIEF

BlackBerry prays for the following relief:

A.     That each of Facebook's claims be dismissed with prejudice;

B.     For an entry of judgment that Facebook is not entitled to the relief sought, or any other relief, on its claims;

C.     For an entry of judgment of non-infringement, declaring that BlackBerry does not infringe any claims of the Asserted Patents;

D.     For an entry of judgment of invalidity, declaring that each and every claim of the Asserted Patents is invalid or unenforceable;

E.     That the case be found exceptional under 35 U.S.C. § 285 and that BlackBerry be awarded its reasonable attorneys' fees;

F.     Costs and expenses in this action; and

G.     Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

BlackBerry respectfully demands a trial by jury on all issues so triable.

1   DATED: November 12, 2018          QUINN EMANUEL URQUHART &
2                                     SULLIVAN, LLP

3

4                              By   /s/ Yury Kapgan

5                                    James R. Asperger (Bar No. 83188)
6                                    jamesasperger@quinnemanuel.com
                                     Yury Kapgan (Bar No. 218366)
7                                    yurykapgan@quinnemanuel.com
                                     865 S. Figueroa Street, 10th Floor
8                                    Los Angeles, CA 90017
                                     Telephone: (213) 443-3000
9                                    Facsimile: (213) 443-3100

10                                   Kevin P.B. Johnson (Bar No. 177129)
11                                   kevinjohnson@quinnemanuel.com
                                     Victoria F. Maroulis (Bar No. 202603)
12                                   victoriamaroulis@quinnemanuel.com
                                     555 Twin Dolphin Drive, 5th Floor
13                                   Redwood Shores, CA 94065
                                     Telephone: (650) 801-5000
14                                   Facsimile: (650) 801-5100

15
                                     Jordan R. Jaffe (Bar No. 254886)
16                                   jordanjaffe@quinnemanuel.com
                                     50 California Street, 22nd Floor
17                                   San Francisco, CA 94111
                                     Telephone: (415) 875-6600
18                                   Facsimile: (415) 875-6700

19
                                     *Attorneys for Defendants and Counter-Claimants*
20                                   BlackBerry Limited and
                                     BlackBerry Corporation
21

22

23

24

25

26

27

28

                                     -31-                    CASE NO. 4:18-CV-05434-JSW
                                     DEFENDANTS' ANSWER AND COUNTERCLAIMS