COOLEY LLP
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
MARK R. WEINSTEIN (193043)
(mweinstein@cooley.com)
MATTHEW J. BRIGHAM (191428)
(mbrigham@cooley.com)
LOWELL D. MEAD (223989)
(lmead@cooley.com)
BENJAMIN S. LIN (232735)
(blin@cooley.com)
MARK A. ZAMBARDA (314808)
(mzambarda@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
MATTHEW D. CAPLAN (260388)
(mcaplan@cooley.com)
101 California Street
San Francisco, CA 94111-5800
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

Attorneys for Plaintiff
FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>BLACKBERRY LIMITED, a Canadian corporation, and BLACKBERRY CORPORATION, a Delaware corporation,<br><br>Defendants. | Case No. 4:18-cv-05434-JSW<br><br>**FACEBOOK, INC.'S REPLY IN SUPPORT OF MOTION TO AMEND INFRINGEMENT CONTENTIONS**<br><br>Hearing Date: September 12, 2019<br>Time: 9:00 a.m.<br>Courtroom: F, 15th Floor<br>Judge: Magistrate Judge Jacqueline S. Corley |

**REDACTED/PUBLIC VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1
II. REPLY ARGUMENT ..................................................................................................... 1
    A. Facebook Diligently Supplemented Its Infringement Contentions Using The Confidential Technical Documents BlackBerry Produced In Late May 2019. ........... 1
    B. Facebook Has Good Cause For Each Item Where BlackBerry Objected. ................... 2
        1. Facebook has good cause to supplement on the '432 Patent. ......................... 2
        2. Facebook has good cause to supplement on the '698 Patent. ......................... 2
        3. Facebook has good cause to supplement on the '231 Patent. ......................... 4
        4. Facebook has good cause to supplement on the '575 Patent. ......................... 5
    C. Facebook Has Good Cause For Its DOE Theories. ....................................................... 6
    D. Blackberry Will Not Be Unduly Prejudiced By The Proposed Amendment ............... 7
        1. The timing of Facebook's supplementation is not unduly prejudicial. ............ 8
        2. Facebook's supplemental contentions are sufficiently specific. ...................... 9
III. CONCLUSION .............................................................................................................. 11

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Advanced Micro Devices, Inc. v. LG Elecs., Inc.*,
  Case No. 14-cv-01012-SI, 2017 WL 732896 (N.D. Cal. Feb. 24, 2017) ................................4, 8, 9

*DCG Sys. v. Checkpoint Techs., LLC*,
  No. C 11-03792 PSG, 2012 WL 1309161 (N.D. Cal. Apr. 16, 2012) ............................................6

*Delphix Corp. v. Actifio, Inc.*,
  No. 13-CV-04613 BLF (HRL), 2015 WL 5693722 (N.D. Cal. Sept. 21, 2015) ........................2, 6

*Philips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ....................................................................................................8

*ProconGPS, Inc. v. Skypatrol, LLC*,
  No. C 11-3975 SI, 2013 WL 1788049 (N.D. Cal. Apr. 26, 2013) ..........................................3, 6, 9

*Radware, Ltd. v. A10 Networks, Inc.*,
  Nos. C13-02021, -02024 RMW (HRL), 2014 WL 1350230 (N.D. Cal. Apr. 4,
  2014) .........................................................................................................................................7, 9

*Tech. Licensing Corp. v. Grass Valley USA, Inc.*,
  No. 12-cv-06060-PSG, 2014 WL 3752108 (N.D. Cal. July 30, 2014) .....................................5, 10

**Statutes**

35 U.S.C. § 286 ....................................................................................................................................5

**Other Authorities**

Local Rule 3-1 ......................................................................................................................................5
    Local Rule 3-1(e) ..........................................................................................................................7
    Local Rule 3-6 ...........................................................................................................................8, 9

## I.     INTRODUCTION

BlackBerry fails to identify any deficiency in Facebook's showing of diligence and good cause to amend its infringement contentions. Facebook diligently reviewed the thousands of confidential documents BlackBerry produced in late May 2019 and supplemented its contentions for all six patents-in-suit only three weeks later—on the date that BlackBerry requested—based solely on BlackBerry's confidential discovery. Facebook has shown ample good cause to amend under the circumstances.

BlackBerry points to some high-level public discussions of the accused systems, but fails to identify any prior public disclosure of the relevant confidential details that Facebook's supplemental contentions rely upon. BlackBerry also does not demonstrate any undue prejudice that it would suffer from the timing or content of the supplementation. Facebook's motion should be granted.

## II.    REPLY ARGUMENT

### A. Facebook Diligently Supplemented Its Infringement Contentions Using The Confidential Technical Documents BlackBerry Produced In Late May 2019.

BlackBerry implies that there was "delay in seeking leave to amend" (Opp. at 1), but does not dispute the dispositive facts demonstrating Facebook's diligence. Facebook's initial January 2019 infringement contentions were based only on public information. (Open. Br. at 2.) In February 2019, BlackBerry produced only "several technical documents" along with an incomplete source code production. (Open. Br. at 2, Ex. B.)[1] BlackBerry requested that Facebook supplement its infringement contentions, and Facebook committed to do so after receiving a more fulsome technical document production. (Open. Br. at 2, Exs. E, F.) In late May 2019, BlackBerry produced thousands of confidential technical documents and additional relevant source code. (Open. Br. at 2:23-26, Ex. G; Opp. at 2.) Three weeks later, Facebook supplemented its contentions for all six patents by the date that BlackBerry requested (June 18, 2019). (Open. Br. at 3-4.)

Under these circumstances, there can be no question that Facebook acted with diligence after receiving BlackBerry's production in late May 2019. (*See id*.) The only remaining questions are (1)

---

[1] BlackBerry states that in February 2019 it "produced over 770 documents totaling over 21,000 pages" (Opp. at 2), but those were nearly all *non-technical* documents (*e.g.*, marketing). BlackBerry does not allege that it served any meaningful non-code *technical* document production prior to late May 2019.

could Facebook reasonably have learned the same relevant information from publicly-available sources prior to its original January 2019 contentions, and (2) would BlackBerry be unduly prejudiced by Facebook's supplementation. The answer to both questions is no.

### B. Facebook Has Good Cause For Each Item Where BlackBerry Objected.

#### 1. Facebook has good cause to supplement on the '432 Patent.

BlackBerry fails to show that any prior publicly-available information disclosed the relevant confidential details of the WDRM server functionalities that Facebook's supplemental contentions rely upon. (Opp. at 5-7.) BlackBerry cites documents that only mention at a high level that "Digital Rights Management (DRM) security" is embedded into files and files may be encrypted. (*Id.* (citing Exs. 3-6).) BlackBerry ignores the dispositive point: the publicly-available information did not disclose sufficient detail to accuse a WDRM server as a "dedicated security processor" that receives a request for a file and is used to access and validate the file as recited in '432 Patent claim 1. (Open. Br. at 5-7.) The public documents cited by BlackBerry never mention a "WDRM server," much less do they describe the claimed functions being performed by a WDRM server as described in the confidential documents cited in Facebook's supplemental contentions.[2] (*Id.* at 6-7.)

BlackBerry thus "fails to identify where these documents purportedly disclose the technical information [Facebook] added to its contentions." *Delphix Corp. v. Actifio, Inc.*, No. 13-CV-04613 BLF (HRL), 2015 WL 5693722, at *3 (N.D. Cal. Sept. 21, 2015). On the contrary, it requested that the Court maintain under seal the relevant document excerpts that Facebook's supplement relies upon. (Dkt. Nos. 57, 57-1 at 6-7.) BlackBerry's suggestion that this relevant information was publicly available "cannot be reconciled with" its designation of the documents as "Highly Confidential" and its request that the Court maintain the excerpts under seal. *Delphix*, 2015 WL 5693722, at *3.

#### 2. Facebook has good cause to supplement on the '698 Patent.

For the '698 Patent, BlackBerry fails to identify publicly available information disclosing the confidential source code-level details of the Guardian feature set forth in Facebook's supplemental

---

[2] BlackBerry asserts only that the documents mention a "Workspaces server" generally. (Opp. at 5-7 & n.1.) But Workspaces is the name of the overall accused product/system. A mere reference to a "Workspaces server" does not disclose a distinct "WDRM server" within the accused system that maps to the claimed "dedicated security processor" performing the functions required by the claim language.

1  contentions. (Opp. at 7-8; Open. Br. at 9-10.) BlackBerry argues that the Guardian feature was
2  publicly disclosed along with a few high-level summaries of its operations. (Opp. at 7-8.) However,
3  BlackBerry misstates the issue. The question is not whether the "Guardian" feature was publicly
4  disclosed as a general matter. The question is whether "[t]he additional detail contained in the
5  infringement charts" relevant to asserted '698 Patent claims 1 and 20 was publicly known.
6  *ProconGPS, Inc. v. Skypatrol, LLC*, No. C 11-3975 SI, 2013 WL 1788049, at *1 (N.D. Cal. Apr. 26,
7  2013).

8       Specifically, Facebook relied upon highly confidential source code to map the Guardian
9  component to the "monitoring component" feature of asserted '698 Patent claims, including their
10  required functions. (Ex. L (under seal) at 66, 72.) In addition to narrative discussion, Facebook
11  provided a detailed description of the relevant source code, which is reproduced below for reference:



23  (*Id.* at 72.) BlackBerry asserts that Facebook's "amended contentions describe the Guardian 'process
24  flow' at the same level of detail as the publicly available documentation relating to Guardian" (Opp.
25  at 8), but that is incorrect. The higher-level public documents do not describe these specific code files
26  (with ".c" extensions) or the specific function names and functions that Facebook's supplementation
27  identifies by specific lines of source code. (*See* Open. Br. at 9-10.) Facebook has more than sufficient
28  good cause to amend its contentions in view of these confidential details obtained from discovery.

BlackBerry suggests that Facebook's supplementation on the '698 Patent did not need the source code BlackBerry belatedly produced in May 2019. (Opp. at 8.) That is immaterial. BlackBerry asked Facebook to supplement its contentions, and Facebook committed to do so for all six patents—and timely did so—after BlackBerry provided its technical document production. (Open. Br. at 2-3.) Under these circumstances, Facebook properly provided a "comprehensive update" for its contentions as a whole. *Advanced Micro Devices, Inc. v. LG Elecs., Inc.*, Case No. 14-cv-01012-SI, 2017 WL 732896, at *4 (N.D. Cal. Feb. 24, 2017) (granting leave to amend for good cause shown: "The Court is not troubled by AMD's choice to wait and package a single, comprehensive update.").

### 3. Facebook has good cause to supplement on the '231 Patent.

For the '231 Patent, BlackBerry again fails to identify any prior public disclosure of the relevant confidential information. Asserted claim 1 requires a "generic signaling interface channel" that is *used to establish voice communication*. (Open. Br. at 10.) Based on confidential discovery, Facebook's supplemental contentions cite source code identifying a SIP channel that performs this function in BlackBerry's accused BBM Enterprise messaging system. (*See id*. at 10-11.)

BlackBerry does not identify any prior public disclosure that a SIP channel is used to establish voice communications. (Opp. at 9.) At most, it identifies cursory mentions that SIP is used for sending messages. (*Id*. (citing documents).) Those high-level statements, however, do not describe a SIP channel being *used to establish voice communication*. Only after BlackBerry's confidential technical discovery revealed the relevant SIP channel functionality, Facebook properly supplemented its contentions based on that new information. (Open. Br. at 11.) Again, the public information did not disclose the confidential details that Facebook relies upon, including extensive specific citations to source code regarding the SIP channel as well as extensive confidential technical documentation. (*Id*.; Ex. I at 53-54 (under seal) (citing and discussing source code files), 43-53 (technical documents).)

Nevertheless, BlackBerry complains that the supplementation is not specific enough because it states that BBM Enterprise uses "a" Session Initiation Protocol (SIP) channel which is used to initiate and set up voice communications. (Opp. at 8-9; Ex. I at 42.) BlackBerry is elevating form over substance, quibbling over the wording of Facebook's supplement accusing "a" SIP channel. Tellingly, however, after Facebook's opening brief observed that "BlackBerry has not identified any ambiguity

between multiple different SIP channels in the source code cited by Facebook" (Open. Br. at 12), BlackBerry did not attempt to demonstrate that the cited source code implicates multiple different SIP channels. In fact, the detailed source code citations in Facebook's supplementation provide ample notice for purposes of infringement contentions. *Tech. Licensing Corp. v. Grass Valley USA, Inc.*, No. 12-cv-06060-PSG, 2014 WL 3752108, at *2 (N.D. Cal. July 30, 2014) (Patent Local Rule 3-1 does not "require a plaintiff to prove its infringement case"). Moreover, even if the source code arguably implicated multiple different SIP channels (which BlackBerry does not attempt to show), BlackBerry does not dispute that Facebook's contentions may properly accuse multiple or alternative channels under the Patent Local Rules and precedent of this District. (*See* Open. Br. at 12.)

**4. Facebook has good cause to supplement on the '575 Patent.**

For the '575 Patent, BlackBerry fails to identify any prior public disclosure of the confidential relevant details about the SIP and P2E protocol functionalities set forth in Facebook's supplemental contentions. (Open. Br. at 13-14; Opp. at 9-10.)

BlackBerry first points to obscure, unexplained references to the letters "p2e" contained in lengthy port address names that are mentioned in two documents. (Opp. at 9 (citing Exs. 14, 21).) But those oblique references provide no substantive discussion about the use of any SIP or P2E protocol that could have meaningfully informed Facebook's original infringement contentions.

Next, BlackBerry points to a cursory mention of SIP on pages 234-235 of an irrelevant old 342-page product manual. (Opp. at 9-10 (citing Ex. 15).) The manual is dated June 16, 2010, more than two years before any possible infringement liability under 35 U.S.C. § 286 for this case filed in September 2018. (*Id.*; Ex. 15.) It relates to an old Version 5 of the product that is now at Version 12.10[3], and it is found only on a third-party website (www.manualslib.com), not on a BlackBerry website. In fact, BlackBerry has not even produced a copy of that document pursuant to its discovery obligations in this case. BlackBerry cannot seriously contend that Facebook reasonably should have discovered and relied upon this obscure mention buried in an irrelevant old document from a third-party website.

---

[3] *See* https://docs.blackberry.com/en/endpoint-management/blackberry-uem/12_10.

In any event, none of those cited documents disclose the specific relevant confidential details that Facebook cited regarding SIP and P2E in its supplemental contentions, all from documents designated "Highly Confidential" by BlackBerry. (Ex. K at 18-19, 37-38, 41-46, 49-51, 53-58, 62-64.) In contrast with the high-level publicly-available information BlackBerry cites, Facebook's supplement relies exclusively upon confidential discovery of additional protocols and data flow in the context of the accused system architecture. (*See id.*) "The additional detail contained in the infringement charts is . . . based on discovery recently produced" by BlackBerry. *ProconGPS,* 2013 WL 1788049, at *1; *DCG Sys. v. Checkpoint Techs., LLC*, No. C 11-03792 PSG, 2012 WL 1309161, at *3 (N.D. Cal. Apr. 16, 2012).

BlackBerry further argues that Facebook is attempting to "flip the burden of diligence." (Opp. at 10.) That is incorrect. Facebook diligently reviewed BlackBerry's late May 2019 production and promptly supplemented its contentions based on the confidential discovery, by the June 18, 2019 date that BlackBerry requested, which amply demonstrates good cause. BlackBerry seeks to dispute Facebook's showing of good cause, but fails to show that the relevant technical details that Facebook's supplementation relies upon were reasonably publicly available prior to Facebook's original contentions. *Delphix*, 2015 WL 5693722, at *3 ("Delphix fails to identify where these documents purportedly disclose the technical information Actifio added to its contentions.").

### C. Facebook Has Good Cause For Its DOE Theories.

Prior to the filing of this motion, the parties engaged in extensive correspondence and a meet-and-confer regarding Facebook's contentions supplementation. Among other things, BlackBerry complained that Facebook's original contentions did not sufficiently identify infringement under the doctrine of equivalents ("DOE") and requested that Facebook supplement its contentions. (Ex. E at 3-4.) Facebook agreed to supplement its contentions after receiving BlackBerry's technical document production, and on June 18, 2019 provided its supplement which specified several DOE theories.

Prior to the filing of the instant motion, BlackBerry never disputed Facebook's good cause to specify those DOE theories in view of BlackBerry's confidential technical discovery. (*See* Open. Br. at 3; Ex. O.) In its opposition brief, BlackBerry raises a cursory new complaint that Facebook did not show good cause to assert these DOE theories. (Opp. at 10-11.) However, each theory is amply

1  supported by good cause in view of BlackBerry's confidential technical discovery.

2  For example, for the "dedicated security processor" limitation in the '432 Patent, Facebook's supplement cites extensive confidential discovery regarding the WDRM server and its functions, as well as a ███████████████████████████ associated CPU(s)/microprocessor(s), and associated process functionality. (Ex. J at 15-22.) In addition, based on the confidential discovery, Facebook asserts that to the extent the limitation is not literally present, it is present under DOE, with a substantive discussion of the equivalent "function, way, result" between the claim requirements and the confidential accused functionality. (*Id*. at 16.) This is more than sufficient to show good cause under the circumstances. *Radware, Ltd. v. A10 Networks, Inc.*, Nos. C13-02021, -02024 RMW (HRL), 2014 WL 1350230, at *3 (N.D. Cal. Apr. 4, 2014) ("the Court finds that Radware exhibited the requisite diligence in amending its infringement contentions to include some DOE theories").

The same observations apply to the other DOE theories ("mobile device transmission profile" for the '575 Patent, "monitoring component" and "second data processor" for the '698 Patent, and "central location" for the '841 Patent). (Ex. K at 41-46; Ex. L at 66-72; Ex. N at 6-10.) Each theory is based upon the confidential discovery that BlackBerry produced. (*See id*.) Each theory articulates the substantial equivalence of the function, way, and result between the literal claim requirements and the accused functionality as evidenced by BlackBerry's confidential discovery. (*See* Ex. K at 46; Ex. L at 66; Ex. N at 6.)

BlackBerry does not contend that any of Facebook's DOE theories are insufficiently disclosed under the Patent Local Rules. The rules require only an indication as to "[w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality." Patent L.R. 3-1(e). For each DOE theory, Facebook provides not only the indication required by the rule but also a substantial discussion of the theory of equivalence.

In sum, Facebook has ample good cause under the circumstances, as reflected by the fact that BlackBerry never complained about the DOE supplements until it filed its opposition to this motion.

**D.  Blackberry Will Not Be Unduly Prejudiced By The Proposed Amendment**

Finally, BlackBerry fails to demonstrate any undue prejudice in either the timing or the content of Facebook's supplementation. (Open. Br. at 14-15; Opp. at 11-14.)

### 1. The timing of Facebook's supplementation is not unduly prejudicial.

BlackBerry argues that the timing of Facebook's supplement is unduly prejudicial. (Opp. at 11-13.) This argument is baseless for multiple reasons. As an initial matter, BlackBerry's suggestion that this case is allegedly at a "late stage in litigation" is misleading at best. (*Id.* at 11, 14.) The Court has only set a case schedule through the *Markman* hearing, and that hearing is not set to occur until October 24, 2019—more than four months after BlackBerry received on June 18, 2019 the supplemental contentions it requested from Facebook. (Dkt. Nos. 31, 47.) The Court has not yet scheduled any deadlines for the close of discovery or trial. (*See id.*)

Furthermore, BlackBerry cannot show any "*undue*" prejudice under Patent Local Rule 3-6 when BlackBerry failed to produce its technical documents until late May 2019 and then received Facebook's supplement only three weeks later, on the very date BlackBerry requested. If BlackBerry wanted to receive the supplementation earlier, it should have produced its relevant documents earlier.

BlackBerry further suggests that it "may well have identified additional terms for construction" if it had received an earlier supplement (Opp. at 13), but this claim is entirely conclusory and unsupported. As an initial matter, again, BlackBerry has only itself to blame for delaying its technical production until late May 2019, thereby delaying Facebook's ability to supplement based on that production. BlackBerry also fails to substantiate any meaningful issue regarding claim construction. It identifies only one claim term that it hypothetically "*may*" have sought to construe ("providing a control channel . . ."). (*Id.*) But BlackBerry has had Facebook's supplement for two months now. It fails to explain how, if at all, the supplement *actually* impacts any claim construction position. *Advanced Micro Devices*, 2017 WL 732896, at *5 (rejecting arguments by defendant LG that supplemental infringement theories "will *likely* raise new claim construction disputes . . . *potentially* requiring a second round of claim construction"—"Given the lack of specificity in LG's opposition, the Court is not persuaded.") (italics in original). BlackBerry does not argue, let alone demonstrate, that Facebook's supplementation raises a new claim construction issue for the term "providing a control channel . . ." (or for any other term) that was not previously apparent, especially given that claim construction relies primarily on the patent itself and not on a patentee's infringement allegations. *See generally Philips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005). BlackBerry's claim of prejudice

thus fails because it "does not identify any actual impact that [Facebook]'s supplemental contentions would have on claim construction." *Advanced Micro Devices*, 2017 WL 732896, at *5; *see also ProconGPS*, 2013 WL 1788049, at *2 (rejecting claim of undue prejudice regarding claim construction despite the fact that the *Markman* hearing was already completed: "SkyPatrol does not state what, if anything, it would have done differently").

BlackBerry's proclamation that it "may well have" done something different for claim construction also rings hollow because BlackBerry has not, in fact, done anything based on Facebook's June 18, 2019 supplementation. The claim construction hearing is not scheduled to occur until October 24, 2019. If BlackBerry believed that its own failure to timely produce its technical documents (so that Facebook could supplement its contentions based on those materials) provided good cause to modify the pre-*Markman* proceedings, it could have filed a motion to modify the schedule.

Similarly, while BlackBerry claims that it might have contended that the term "generic signaling interface channel" was invalid for indefiniteness and might have sought more prior art for the '432 Patent, BlackBerry fails to meaningfully support these cursory suggestions with any specific facts or explanations. (Opp. at 13.) Moreover, if it believed that Facebook's June 18, 2019 supplementation provided sufficient good cause for BlackBerry to amend its invalidity contentions (which it did not), BlackBerry has been free to file a timely motion to amend its invalidity contentions under Patent Rule 3-6.

**2.   Facebook's supplemental contentions are sufficiently specific.**

Finally, BlackBerry fails to identify any unduly prejudicial deficiency in the content of Facebook's supplemental claim charts. (Opp. at 14.) As an initial matter, even if Facebook's supplementation allegedly left uncured a few deficiencies in its original contentions (which it did not), "the relevant inquiry now" on this motion under Patent Local Rule 3-6 is whether the proposed supplementation itself causes any undue prejudice, "not whether the amendments adequately cure any and all purported deficiencies" in Facebook's original contentions. *Radware*, 2014 WL 1350230, at *4. "Here, the Court's focus is on the amendments themselves." *Id*. BlackBerry does not argue, let alone demonstrate, that any undue prejudice would be caused by the additional content in Facebook's supplemental contentions.

Furthermore, BlackBerry does not identify any material uncured deficiency in Facebook's supplemental contentions. For the '698 Patent, BlackBerry alleges that the contentions do not sufficiently identify the accused "second data processor" and "second memory," but Facebook sufficiently explains its theory as follows: "*The 'second data processor' and 'second memory' are present alternatively including (1) the HAM's data processing functionality and its associated memory, and (2) the Guardian's data processing functionality and its associated memory. The comments provided in connection with BlackBerry's source code identify illustrative portions of source code that indicate 'memory' resources used by the HAM and Guardian respectively.*" (Ex. L at 66.) The source code evidence, as noted, further shows corresponding data processing and "memory" resources. (*Id*. at 69-72.) This disclosure is more than sufficient to provide notice under the Patent Local Rules. *Tech. Licensing Corp.*, 2014 WL 3752108, at *2.

Contrary to BlackBerry's argument, Facebook also sufficiently contends that the accused "states" (including "conditions" and "kernel states" monitored by the HAM as well as HAM states monitored by the Guardian) use corresponding physical and logical resources, with reference to extensive technical documentation and source code. (Ex. L at 72-98.) Facebook accuses the HAM which monitors entities including entities' threads with conditions and kernel states, quoting technical documentation describing how threads correspond to physical and logical resources including memory spaces that are allocated and accessed (*id*. at 82-83) and "processor-specific register context" including instruction pointers and stack pointers as well as "stacks" that are "stored within the address space" (*id*. at 83-84). The accused states also correspond to particular resources including CPU processing and "heartbeat" functions. (*Id*. at 79-80 ("RUNNING state simply means that the thread is not actively consuming the CPU," "READY state means that this thread could run right now—except that it's not…," "blocked" states including where "states simply indicate which queue (and which resource the thread is blocked on"), 80-82 (describing different kernel states and corresponding thread resource usage).) Facebook's supplement also accuses the Guardian which monitors the HAM, and cites source code reflecting various states of the HAM, which use different HAM processes that are reflected in the source code and comprise the different physical and logical resources implementing that code. (*Id*. at 95-98.)

For the '231 Patent, BlackBerry claims that it is "left to guess which 'SIP channel' is being accused." (Opp. at 14.)  However, BlackBerry never identifies any ambiguity between multiple different potentially accused SIP channels, as discussed previously.  The detailed source code and technical evidence and related discussion in Facebook's supplementation provides ample notice of the accused functionality, as discussed previously.

Finally, for the '575 Patent, Facebook's amendments provide ample detail providing notice of Facebook's infringement theories.  Regarding "mobile device transmission profile," the amendments include references to ████████████████████████████████████████████ to transmit data. (Ex. K at 46.)  They also describe parameters for the establishment of secure tunnels used for data transmission.  (*Id.* at 41-45.)  BlackBerry further alleges that the contentions do not specify the transmission of "multimedia data," but ignores the cited evidence depicting the flow of data as it moves from an organization's network to the device through the BlackBerry infrastructure.  (*Id.* at 58-64 (evidence and discussion supporting contention that "*BlackBerry UEM infrastructure components provide the multimedia data to the mobile device via the multimedia server.*").)  BlackBerry apparently complains that the evidence cited in the supplemental contentions does not specify that the "data" comprises "multimedia" data *per se*, but the '575 Patent confirms that "multimedia" data broadly encompasses any image, audio, or video data.  ('575 Patent (Dkt. 1-2), col. 9:31-46.)  The accused "data" flowing through BlackBerry's system as set forth in Facebook's contentions includes multimedia data (*e.g.*, image data) as claimed.

### III. CONCLUSION

For the foregoing reasons, Facebook respectfully requests that the Court grant its motion.

| | | |
|---|---|---|
| 1 | Dated: August 23, 2019 | COOLEY LLP |
| 2 | | |
| 3 | | /s/ *Heidi L. Keefe* |
| 4 | | HEIDI L. KEEFE (178960)<br>(hkeefe@cooley.com) |
| 5 | | MARK R. WEINSTEIN (193043)<br>(mweinstein@cooley.com) |
| 6 | | MATTHEW J. BRIGHAM (191428)<br>(mbrigham@cooley.com) |
| 7 | | LOWELL D. MEAD (223989)<br>(lmead@cooley.com) |
| 8 | | BENJAMIN S. LIN (232735)<br>(blin@cooley.com) |
| 9 | | MARK A. ZAMBARDA (314808)<br>(mzambarda@cooley.com) |
| 10 | | 3175 Hanover Street<br>Palo Alto, CA  94304-1130 |
| 11 | | Telephone:   (650) 843-5000<br>Facsimile:     (650) 849-7400 |
| 12 | | |
| 13 | | COOLEY LLP<br>MICHAEL G. RHODES (116127) |
| 14 | | (rhodesmg@cooley.com)<br>MATTHEW D. CAPLAN (260388) |
| 15 | | (mcaplan@cooley.com)<br>101 California Street |
| 16 | | San Francisco, CA  94111-5800<br>Telephone:   (415) 693-2000<br>Facsimile:     (415) 693-2222 |
| 17 | | |
| 18 | | Attorneys for Plaintiff<br>FACEBOOK, INC. |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |