UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>BLACKBERRY LIMITED, et al.,<br><br>    Defendants. | Case No. 18-cv-05434-JSW   (JSC)<br><br>**REPORT AND RECOMMENDATION RE: PLAINTIFF'S MOTION TO AMEND INFRINGEMENT CONTENTIONS**<br><br>Re: Dkt. No. 52, 53, 61 |

Plaintiff Facebook, Inc. ("Facebook") sues BlackBerry Limited and BlackBerry Corporation (together, "BlackBerry") alleging infringement of six patents. (Dkt. No. 1 at ¶ 2.)[1] This matter is on referral from the district court for a report and recommendation. (Dkt. No. 56.) Facebook moves to amend its infringement contentions for each of the six patents-in-suit pursuant to Patent Local Rule 3-6 based on "confidential discovery recently produced by the BlackBerry defendants." (Dkt. No. 52-4 at 4 (unredacted version of Dkt. No. 53).)[2] BlackBerry opposes the motion. (Dkt. No. 59.) In conjunction with the instant motion, Facebook submits administrative motions to seal portions of its briefing and exhibits in support. (Dkt. Nos. 52 & 61.) After careful consideration of the parties' briefing, and having had the benefit of oral argument on September 12, 2019, the Court recommends that the district court GRANT Facebook's motion to amend and GRANT Facebook's administrative motions to seal.

## BACKGROUND

Facebook filed its complaint in September 2018, alleging infringement of U.S. Patent Nos. 6,356,841 ("the '841 Patent"),  6,744,759 ("the '759 Patent"), 7,228,432 ("the '432 Patent"),

---

[1] Record citations are to material in the Electronic Case File ("ECF"; pinpoint citations are to the ECF-generated page numbers at the top of the documents.
[2] The Court cites to the unredacted briefing and exhibits in support for purposes of this report and recommendation.

7,302,698 ("the '698 Patent"), 7,567,575 ("the '575 Patent"), and 8,429,231 ("the '231 Patent") by certain BlackBerry products. (Dkt. No. 1 at ¶ 2.) The complaint identified the accused products and related functionality as "including without limitation": BBM Enterprise software ("BBM Enterprise"); Unified Endpoint Manager ("UEM"), formerly BlackBerry Enterprise Server ("BES"); "Radar products, including Radar-L and Radar-M" ("Radar products"); Workspaces; and QNX Neutrino Realtime Operating System ("QNX"). (*Id.* at ¶¶ 24-29, 41-46, 57-62, 74-79, 95-101, 111-116.) On January 8, 2019, Facebook served its initial infringement contentions pursuant to Patent Local Rule 3-1. (Dkt. Nos. 52-4 at 5 & 59 at 6.) It is undisputed that the initial infringement contentions "were based on publicly available information because BlackBerry had not yet produced any discovery." (Dkt. No. 52-4 at 5.)

Pursuant to Patent Local Rule 3-3, BlackBerry served its invalidity contentions on February 25, 2019. (Dkt. No. 59-2 at ¶ 2.) That same day BlackBerry "made source code for the accused products available for inspection and produced over 770 documents totaling 21,000 pages as part of its document production" under Patent Local Rule 3-4. (*Id.*) On March 7, 2019, Facebook sent correspondence to BlackBerry regarding its production. (Dkt. No. 53-2, Ex. A.) The letter states, in pertinent part:

> [T]he produced documents appear to be mostly marketing-related documents and other product-related and sales-related documents that do not describe the underlying technical details of the accused products and features. The production generally does not contain the types of technical documents that we expect should exist for the accused products, such as technical specifications, schematics, architecture descriptions, product manuals and user guides, programming guides, and other documents describing the detailed structure and operation of each accused product and related system, beyond a few isolated documents.

(*Id.* at 2.) Facebook further noted that the technical documents "may be relevant for purposes of Facebook supplementing its infringement contentions in view of nonpublic technical information produced by BlackBerry." (*Id.* at 3.) BlackBerry responded to Facebook's letter on March 12, 2019, asserting that Facebook mischaracterized BlackBerry's technical document production and citing examples of "several technical documents corresponding to the accused products." (Dkt. No. 53-3, Ex. B at 2.) BlackBerry further asserted:

2

> [A]s you recognize in the March 7 Letter, BlackBerry has produced source code for each of the accused instrumentalities. The source code contains technical details sufficient to show operation of the accused products and any accused functionalities therein. Accordingly, we disagree that BlackBerry's production is deficient.

(*Id.* at 3.) BlackBerry noted, however, that "discovery is ongoing and BlackBerry is continuing to investigate and identify relevant documents for production on a rolling basis." (*Id.*)

The parties continued to correspond in March and April regarding BlackBerry's technical document production, (*see* Dkt. Nos. 53-4 – 53-5, Exs. C-D), and agreed to continue the filing date for the Patent Local Rule 4-3 statement to May 24, 2019, (Dkt. No. 53-5, Ex. D at 2-3). On April 17, 2019, BlackBerry sent Facebook a letter regarding Facebook's January 2019 infringement contentions. (Dkt. No. 53-6, Ex. E.) BlackBerry's letter asserts that the "infringement contentions are deficient and violate the . . . Local Patent Rules" because they: (1) lack specificity and "fail to provide BlackBerry with fair notice of Facebook's infringement theories"; and (2) "do not identify specific limitations that are met under the doctrine of equivalents" ("DOE"). (*Id.* at 2-5.) The letter requests that Facebook "provide supplemental infringement contentions correcting these deficiencies by the end of [the] month." (*Id.* at 5.) Facebook responded to BlackBerry's letter by email on April 23, 2019, agreeing to "supplement its contentions within a reasonable time period after BlackBerry completes its supplementation of technical document production and source code." (Dkt. No. 53-7, Ex. F at 2.)

On May 3, 2019, "BlackBerry made additional source code available for inspection for the BlackBerry Radar and . . . [BBM] Enterprise accused products." (Dkt. No. 59-2 at ¶ 3.) On May 21 and 22, BlackBerry gave Facebook "access to trial version of BBM Enterprise, [UEM], Workspaces, and Radar." (*Id.* at ¶ 4.) "On May 24, BlackBerry made additional source code available for inspection for the BlackBerry QNX accused product." (*Id.* at ¶ 3.) "On May 24 and 29, BlackBerry produced over 5,000 additional technical documents totaling over 15,900 pages." (*Id.* at ¶ 5.)

On June 12, 2019, BlackBerry sent Facebook correspondence regarding, in pertinent part, Facebook's "deficient infringement contentions." (Dkt. No. 53-9, Ex. H at 2.) The letter requests that Facebook provide its "proposed supplemental infringement contentions by . . . June 18,

3

1  2019." (*Id.* at 3.) The letter notes that "[a]ny proposed supplementation . . . would have still have
2  to be supported by good cause under the local rules," and clarifies that "BlackBerry does not agree
3  there is any such good cause, but nevertheless requests that Facebook provide its proposed
4  supplementation in the interest of moving forward with the claim construction process in a timely
5  manner." (*Id.* at 3 n.1.) On June 18, 2019, Facebook sent BlackBerry its supplemental
6  infringement contentions as requested. (*See* Dkt. No. 60-1, Ex. 1 at 2.)

7  Facebook then responded to BlackBerry's June 12 letter by correspondence dated June 24,
8  2019. (Dkt. No. 53-8, Ex. G at 2.) Facebook's letter states, in pertinent part:

> We are continuing our review and inspection of the substantial volume of material and code recently produced by BlackBerry, and it appears that the production may still be incomplete in certain respects. Nevertheless, BlackBerry's recent production provides substantial information beyond the source code that is important to help understand the accused functionalities, such as confidential diagrams and explanations.

(*Id.* at 3.) The letter further states:

> In compliance with BlackBerry's requests, Facebook provided supplemental infringement contentions disclosures on June 18, 2019 that addressed the alleged deficiencies in BlackBerry's April 17, 2019 letter. Facebook's proposed supplementation extensively cites the confidential technical documents that BlackBerry started producing in late May 2019.

(*Id.*) The letter notes that after receipt of Facebook's June 18 proposed supplemental contentions, BlackBerry objected to specific contentions regarding the '432 Patent, the '698 Patent, the '575 Patent, and the '231 Patent. (*Id.*) Facebook requested that BlackBerry provide details regarding the basis for any objection by June 27, 2019, and also requested that the parties "meet and confer on these issues promptly after BlackBerry provides [the] requested information." (*Id.*)

On July 12, 2019, BlackBerry responded to Facebook's June 24 letter. (Dkt. No. 53-16, Ex. O.) BlackBerry's letter states, in pertinent part:

> The new theories [in the proposed supplemental infringement contentions] are not ones that could not have been raised in Facebook's initial infringement contentions or, as you allege, arose from your review of the additional materials produced by BlackBerry. Rather, the theories are directed to functionalities described in publicly-available documentation and information that were available when Facebook served its original infringement contentions. As a

4

> result, we maintain our objection to the proposed supplementation which attempts to fundamentally alter several of its original infringement theories.

(*Id.* at 2.) The letter then provides specific objections to the proposed supplemental contentions regarding the '432 Patent, the '698 Patent, the '575 Patent, and the '231 Patent. (*Id.* at 2-4.)

The parties met and conferred regarding Facebook's supplemental infringement contentions on July 23, 2019 but were unable to resolve their dispute. (*See* Dkt. No. 59-2 at ¶ 6.) Facebook filed the instant motion to amend on August 2, 2019. (Dkt. Nos. 52-4 & 53.) The motion is fully briefed, (*see* Dkt. Nos. 59 & 62), and the Court heard oral argument on September 12, 2019.

**DISCUSSION**

**I.     Motion to Amend Infringement Contentions**

As an initial matter, BlackBerry's opposition does not address Facebook's supplemental infringement contentions regarding the '759 Patent or the '841 Patent. (*See generally*, Dkt. No. 59.) Because those supplemental contentions are unopposed (with exception of the DOE theory for the '841 Patent)—and, as discussed below, Facebook has demonstrated good cause to amend its infringement contentions—the Court recommends granting leave to amend as to those patents. This report and recommendation therefore addresses only the supplemental contentions challenged by BlackBerry; specifically, those concerning the '432 Patent, the '698 Patent, the '575 Patent, the '231 Patent, and Facebook's "new infringement theories based on [the] DOE." (*Id.* at 9-18.)

**A.     Legal Standard**

The Patent Local Rules "exist to further the goal of full and timely discovery and to provide all parties with adequate notice and information with which to litigate their cases." *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l Inc.*, No. C 03-1431 SBA, 2006 WL 1329997, at *4 (N.D. Cal. May 15, 2006). "The [R]ules are designed to require parties to crystallize their theories of the case early in litigation and to adhere to those theories once they have been disclosed." *Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D. Cal. 2006). Thus, the Rules "require both the plaintiff and the defendant . . . to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in

1    amending those contentions when new information comes to light in the course of discovery." *O2*
2    *Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365-66 (Fed. Cir. 2006).
3    "Although federal courts are generally lenient in allowing parties to amend pleadings, such is not
4    the case with amending preliminary infringement contentions." *Berger v. Rossignol Ski Co., Inc.*,
5    No. 05-02523, 2006 WL 1095914, at *3 (N.D. Cal. Apr. 25, 2006).

6          Patent Local Rule 3-6 allows a party to amend its infringement contentions "only by order
7    of the Court upon a timely showing of good cause." The Rule provides "[n]on-exhaustive
8    examples of circumstances that may, absent undue prejudice to the non-moving party, support a
9    finding of good cause," including as asserted here, "[r]ecent discovery of nonpublic information
10   about the Accused Instrumentality which was not discovered, despite diligent efforts, before the
11   service of the Infringement Contentions." Patent L.R. 3-6(c). The moving party has the burden of
12   demonstrating good cause. *02 Micro*, 467 F.3d at 1366.

13         "[A]s a general rule, mistakes or omissions are not by themselves good cause." *Symantec*
14   *Corp. v. Acronis Corp.*, No. 11-5310 EMC (JSC), 2013 WL 5368053, at *4 (N.D. Cal. Sept. 25,
15   2013). The good cause inquiry is instead two-fold, asking: (1) "whether the moving party was
16   diligent in amending its contentions"; and (2) "whether the non-moving party would suffer
17   prejudice if the motion to amend were granted." *Fujifilm Corp. v. Motorola Mobility LLC*, No.
18   12-cv-03587-WHO, 2014 WL 491745, at *3 (N.D. Cal. Feb. 5, 2014). Diligence is "the critical
19   issue" in the good cause determination. *See Sunpower Corp. Sys. v. Sunlink Corp.*, No. C-08-2807
20   SBA (EMC), 2009 WL 1657987, at *1 (N.D. Cal. June 12, 2009). "[T]he diligence required for a
21   showing of good cause has two phases: (1) diligence in discovering the basis for amendment; and
22   (2) diligence in seeking amendment once the basis for amendment has been discovered." *Positive*
23   *Techs., Inc. v. Sony Elecs., Inc.*, No. C 11-2226 SI, 2013 WL 322556, at *2 (N.D. Cal. Jan. 28,
24   2013). The moving party "bears the burden of establishing diligence." *CBS Interactive, Inc. v.*
25   *Etilize, Inc.*, 257 F.R.D. 195, 201 (N.D. Cal. 2009).

26         If the court determines that the moving party was not diligent, the inquiry may end there.
27   *See Acer, Inc. v. Tech. Props. Ltd.*, 08-cv-00877 JF/HRL, 2010 WL 3618687, at *5 (N.D. Cal.
28   Sept. 10, 2010). However, the court retains discretion to grant leave to amend in the absence of

diligence if there is no prejudice to the opposing party. *See, e.g., U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. C 10-3724 CW, 2013 WL 5609325, at *3 (N.D. Cal. Oct. 11, 2013); *Apple Inc. v. Samsung Elecs. Co., Ltd.*, No. CV 12-00630 LHK, 2012 WL 5632618, at *6 (N.D. Cal. Nov. 15, 2012).

### B. Good Cause

As previously discussed, Facebook bears the burden of demonstrating good cause to amend its infringement contentions. *See 02 Micro*, 467 F.3d at 1366. Facebook has met its burden.

#### 1. Diligence in Discovering Basis for Proposed Amendments

In addressing diligence, the court must first determine whether Facebook was diligent in discovering the basis for its proposed amendments. *See Positive Techs.*, 2013 WL 322556, at *2. The primary issue in this regard "is not *when* [the moving party] discovered this information, but rather, whether they *could have* discovered it earlier had it acted with the requisite diligence." *Google, Inc. v. Netlist, Inc.*, Nos. C 08-4144 SBA, 2010 WL 1838693, at *2 (N.D. Cal. May 5, 2010). Facebook argues that it was diligent because its proposed amendments are based on the "confidential technical discovery" provided in BlackBerry's May 2019 productions. (Dkt. No. 52-4 at 4.) BlackBerry counters that Facebook's "new theories of infringement are not ones that Facebook could have only raised after receiving BlackBerry's production of internal, confidential documents and source code." (Dkt. No. 59 at 5.) The Court addresses the first step of the diligence inquiry as it applies to each of the patents at issue in turn.

##### a. The '432 Patent

Facebook's supplemental infringement contentions identify for the first time BlackBerry's Workspaces Digital Rights Management ("WDRM") server as meeting the "dedicated security processor" limitation of claim 1 of the '432 Patent. (*See* Dkt. No. 52-8, Ex. J at 16.) Facebook argues that publicly-available information did not disclose the technical details of the WDRM server as relevant to claim 1 of the patent, and the supplemental contention is instead "based entirely on the confidential documents that BlackBerry produced only three weeks before Facebook disclosed its supplement." (Dkt. No. 52-4 at 9-10.)

1    BlackBerry argues that Facebook's supplemental infringement theory regarding the
2    WDRM server is based on publicly-available information, citing several publicly-available
3    websites "relating to Workspaces [that] describe its DRM capabilities, including the encrypting
4    and securing operations performed by a Workspaces server." (Dkt. No. 59 at 9 (citing Dkt. Nos.
5    60-3 – 60-6, Exs. 3-6).) The Court disagrees. Rather than asserting an entirely new infringement
6    theory based on previously-available public information, the supplemental contentions regarding
7    the WDRM server provide confidential technical details to support the "dedicated security
8    processor" claim limitation discussed in the initial contentions. (*See* Dkt. No. 52-8, Ex. J at 15-51
9    (supplemental contentions identified by green box).)[3] BlackBerry produced the documents
10   containing that nonpublic information through confidential discovery. Thus, Facebook was
11   diligent in discovering the basis for the proposed amendments. *See ProconGPS, Inc. v. Skypatrol,*
12   *LLC*, No. C 11-3975 SI, 2013 WL 1788049, at *1 (N.D. Cal. Apr. 26, 2013) (finding good cause
13   for amendment where "additional detail contained in the infringement charts is largely based on
14   discovery recently produced by [the defendant]").

15   Accordingly, the Court recommends that the district court find that Facebook was diligent
16   in discovering the basis for the proposed amendment to the infringement contentions for the '432
17   Patent because the supplemental contentions are largely based on contemporaneous, confidential
18   discovery. *See DCG Sys. v. Checkpoint Techs., LLC*, No. C 11-03792 PSG, 2012 WL 1309161, at
19   *3 (N.D. Cal. Apr. 16, 2012) (granting amendment where "the manuals giving rise to the proposed
20   amendment were not publicly available" and the plaintiff "tendered its proposed amendments a
21   few weeks after it received [the manuals]").

22   **b.    The '698 Patent**

23   Facebook's supplemental contentions identify for the first time BlackBerry's QNX
24   Guardian product as meeting the "monitoring component" limitation of claims 1 and 20 of the
25   '698 Patent. (*See* Dkt. No. 52-12, Ex. L at 67.) Facebook asserts that this supplementation is

---

[3] Facebook asserts that "the copies of the supplemental claim charts submitted . . . as Exhibits I-N" include a "green box annotation" to identify "the supplemental content while the remaining content was maintained from Facebook's original contentions." (Dkt. No. 52-4 at 6.) BlackBerry does not dispute Facebook's assertion.

8

based on source code and technical documents produced by BlackBerry through confidential discovery. (Dkt. No. 52-4 at 12; see also Dkt. No. 52-1 at ¶ 7 (attesting that the supplemental infringement claim chart for the '698 Patent "discusses and excerpts from documents designated Highly Confidential by . . . BlackBerry").) BlackBerry objects to the supplemental contention because Facebook "knew or should have known about the Guardian component and its capabilities based on public materials available at the time of its original contentions." (Dkt. No. 59 at 11.) BlackBerry cites a publicly-available description of the Guardian that tracks the Guardian "process flow" included in Facebook's supplemental contentions. (*Compare* Dkt. No. 52-12, Ex. L at 73 (alleging "[w]hen the HAM starts, it also creates a guardian"; "[t]he Guardian monitors the HAM"; and "[t]he Guardian takes over HAM duties upon HAM death, starting in the same state") *with* Dkt. No. 60-9, Ex. 9 at 2 ("A mirror process called the Guardian perpetually stands ready and waiting to take over the HAM's role. Since all state information is maintained in shared memory, the Guardian can assume the exact same state that the original HAM was in before the failure.").)[4]

BlackBerry's arguments fail to persuade, however, because—as with the '432 Patent— Facebook bases its proposed amendment on confidential technical documents and source code that were previously unavailable. *See Skypatrol*, 2013 WL 1788049, at *1. As with the '432 Patent, the supplemental language includes source code and technical details that BlackBerry seeks to seal because it is "highly confidential." (*See* Dkt. Nos. 57 at 3 & 57-5, Ex. L at 70-73, 96-99, 142, 176-79, 188-90, 200-02, 231-34.) The Court is not persuaded that the publicly-disclosed information disclosed enough about the Guardian to permit Facebook to allege in its initial contentions that the Guardian satisfies the monitoring component limitation.

Because Facebook's proposed amendment is based on nonpublic information obtained through confidential discovery, the Court recommends that the district court find that Facebook was diligent in asserting the basis for its supplemental theory that BlackBerry's QNX Guardian product meets the "monitoring component" limitation of claims 1 and 20 of the '698 Patent.

---

[4] Exhibit 9 is excerpted from "an article titled 'Using the High Availability Manager,' which is publicly available at http://www.qnx.com/developers/docs.6.5.0SP1.update/com.qnx.doc.ham_en_ham/hamover.html." (Dkt. No. 60 at ¶ 16.)

9

### c. The '575 Patent

Facebook's supplemental contentions regarding the '575 Patent include details about Session Initial Protocol ("SIP") and P2E protocol functionalities with respect to the UEM that are not included in Facebook's initial contentions. (*See* Dkt. No. 52-10, Ex. K at 8-9, 14-16, 19-20, 27-28, 30, 33-34, 38-39, 43-47, 50-52, 54-59, 63-65.) Facebook asserts that this supplementation is based on confidential technical documents produced by BlackBerry through discovery. (Dkt. No. 52-4 at 16.) BlackBerry objects to the supplemental contention because Facebook "should have known that UEM supports SIP and P2E at the time of its original contentions based on publicly-available documents." (Dkt. No. 59 at 13.)

BlackBerry cites several publicly-available documents as providing discussion of the accused products' use of the SIP and P2E protocols. BlackBerry first cites two ports identified in the Installation and Upgrade Guide for the UEM: (1) com.rim.p2e.snmp.monitoring.udpport, which is described as serving the purpose of allowing "SNMP clients [to] use this port to query monitoring data for BlackBerry Secure Connect Plus"; and (2) com.rim.p2e.monitoringservice.listenerPort, which is described as being used by "BlackBerry UEM Core . . . to check the status of BlackBerry Secure Connect Plus." (*See* Dkt. No. 60-14, Ex. 14 at 4-5.)[5] BlackBerry next cites a Policy Reference Guide for BlackBerry Enterprise Service Version 5.0, which "identif[ies] a port number that a BlackBerry device would list for incoming SIP messages and SIP domain that shares authentication information with the SIP server and requiring, among others, a BlackBerry Enterprise Server version 4.0 SP1." (Dkt. No. 59 at 14-15 (citing Dkt. No. 60-15, Ex. 15 at 4-5).)[6]

Facebook counters that the cited references to "p2e" contained in the port addresses "provide no substantive discussion about the use of any SIP or P2E protocol that could have

---

[5] The Installation and Upgrade Guide is publicly available at https://docs.blackberry.com/content/dam/docs-blackberry-com/release-pdfs/en/blackberry-uem/12_8/installation-and-configuration/BlackBerry-UEM-12.8-Maintenance-Release-1-Installation-and-Upgrade-Guide-en.pdf.

[6] The Policy Reference Guide is publicly available at https://data2.manualslib.com/pdf4/80/7908/790709-blackberry/infinity_b1367wd.pdf?72a9406069a7cebfcf3e14e4c594852e&take=binary.

meaningfully informed Facebook's original infringement contentions." (Dkt. No. 61-4 at 8.) The Court agrees. The supplemental contentions include substantive discussion of "P2E System Architecture Overview" based on "illustrative BlackBerry source code evidence including . . . files regarding operation, with non-limiting descriptive notes," and "illustrative BlackBerry evidence and disclosures therein" consisting of technical documents and evidence concerning the functionality of the P2E protocol. (*See* Dkt. No. 52-10, Ex. K at 8-9, 14-16, 18-20, 27-28, 30, 39, 43, 45-46, 50-52, 57-59, 63-65.) The mere listing of "p2e" in two port addresses could not realistically serve as the basis for Facebook's infringement theory based on P2E protocol functionalities.

As for the Policy Reference Guide's reference to SIP, Facebook argues that it "is dated June 16, 2010, more than two years before any possible infringement liability under 35 U.S.C. § 286 for this case," and the Guide is "found only on a third-party website (www.manualslib.com), not on a BlackBerry website." (Dkt. No. 61-4 at 8.) Facebook further argues that the Guide "relates to an old Version 5 of the product that is now at Version 12.10." (*Id.* (citing https://docs.blackberry.com/en/endpoint-management/blackberry-uem/12_10).) The Court agrees that Facebook's failure to consult an outdated reference guide on a third-party website that contains brief mention of SIP does not constitute a lack of diligence.

Accordingly, the Court recommends that the district court find that Facebook was diligent in discovering the bases for its proposed amendments to the '575 Patent.

### d. The '231 Patent

Facebook's supplemental contentions identify for the first time a SIP channel as meeting the "generic signaling interface channel" limitation of claim 1 of the '231 Patent. (Dkt. No. 52-6, Ex. I at 43-44 ("BBM Enterprise uses a general signaling interface channel in the form of a [SIP] channel, which is used to initiate and set up voice communications.") Facebook asserts that the supplementation "relies exclusively on relevant confidential discovery that was not previously publicly available." (Dkt. No. 52-4 at 13.) The supplemental contentions support that contention, as they cite "illustrative BlackBerry evidence and disclosures therein, including" technical documents and source code. (*See* Dkt. No. 52-6, Ex. I at 44-55.)

11

In opposition, BlackBerry first argues that Facebook's supplemental contentions regarding the SIP channel are insufficient because Facebook fails to identify "which SIP channel they are referring to," and the "source code citations [do not] identify what SIP channels it is accusing." (Dkt. No. 59 at 12-13.) However, that argument goes to the *sufficiency* of the amendment; it does not concern whether Facebook was diligent in discovering the bases for amendment or in seeking amendment. Thus, the argument is not relevant to the diligence inquiry. *See Radware, Ltd. v. A10 Networks, Inc.*, No. C13-02021, 2014 WL 1350230, at *2 (N.D. Cal. Apr. 4, 2014) (noting that to the extent the sufficiency of the amended infringement contentions is even relevant to the "good cause" inquiry, it is "more appropriately addressed under the prejudice prong of the analysis").

As relevant to the diligence inquiry, BlackBerry argues that Facebook fails to show good cause for the proposed amendment because "Facebook should have known that SIP was being utilized and thus could have alleged at the outset of this case that a 'SIP Channel' satisfies the 'generic signaling interface channel.'" (Dkt. No. 59 at 13.) BlackBerry cites two sources of publicly-available information: (1) a BlackBerry "support article identifying SIP server for messaging capabilities," (*see* Dkt. No. 60-11, Ex. 11)[7]; and (2) an academic article published in 2014 by the University of Amsterdam noting that "SIP is the underlying protocol used for sending messages with BBM, (*see* Dkt. No. 60-12, Ex. 12 at 3), and "identifying an internal server sip.voip.blackberry.com as an internal server to which messages are forwarded, (see Dkt. No. 59 at 13 (citing https://www.os3.nl/_media/2013-2014/courses/ssn/projects/bbm_report.pdf).)

The support article, entitled "How to configure corporate firewalls to support BBM Enterprise," merely references the "SIP-TLS" protocol as providing a "[m]essaging function. (*See* Dkt. No. 60-11 at 3.) It provides no further detail regarding SIP functionality, much less whether it is "used to initiate and set up voice communications," as alleged in Facebook's supplemental contentions. (*See* Dkt. No. 52-6, Ex. K at 43.) The article is thus insufficient to serve as the basis for Facebook's supplemental infringement theory.

The academic article, entitled "Security Assessment of BlackBerry Messenger for

---

[7] The article is available at https://support.blackberry.com/kb/articleDetail?language=en_US&articleNumber=000045300.

Android," is a closer call. The article notes, in pertinent part, that "[t]he messages are forwarded to an internal server at sip.voip.blackberry.com, which probably handles the messages." *See* Cedric Van Bockhaven et al., *Security Assessment of BlackBerry Messenger for Android: Analyzing BBM Communication Security*, UNIVERSITY OF AMSTERDAM, 16 (2014), https://www.os3.nl/_media/2013-2014/courses/ssn/projects/bbm_report.pdf. However, the article does not discuss in detail the SIP functionality that serves as the basis for the infringement theory set forth in Facebook's supplemental contentions. Further, the article's author merely guesses that the internal SIP server handles messages. *See id.* (stating that the identified server "*probably* handles the messages") (emphasis added). While it can be inferred that the server handles "voice-over-internet messages," it is still a guess rather than a sufficient basis for an infringement contention.

Accordingly, the Court recommends that the district court find that Facebook was diligent in asserting the basis for this proposed amendment because the public information cited by BlackBerry does not disclose the type of confidential details—including citations to specific source code and technical documents—Facebook relies on its supplemental contentions to assert its infringement theory regarding the '231 Patent.

### e.  DOE Infringement Theories

Patent Local Rule 3-1(e) requires a patentee to state "[w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality." A patentee cannot rely on a boilerplate statement that the DOE applies and must instead "explain why the [DOE] might lead to infringement in the absence of direct infringement." *Blue Spike, LLC v. Adobe Sys., Inc.*, No. 14-cv-01647-YGR (JSC), 2015 WL 335842, at *6 (N.D. Cal. Jan. 26, 2015).

BlackBerry objects to several DOE theories Facebook includes in its proposed amendments that it did not assert in its initial contentions. (*See* Dkt. No. 59 at 14 (citing supplemental DOE theories in redacted versions of Dkt. Nos. 52-8, Ex. J at 17 ("dedicated security processor"); 52-10, Ex. K at 47 ("mobile device transmission profile"); 52-12, Ex. L at 67 ("monitoring component" and "second data processor"); 52-16, Ex. N at 7, 15, 37 ("central

13

location")).) Facebook argues that the proposed DOE theories are based on "BlackBerry's confidential technical discovery" and also in response to BlackBerry's April 2019 letter wherein BlackBerry requested that Facebook supplement its initial contentions in part because Facebook "did not sufficiently identify infringement under the [DOE]." (Dkt. No. 61-4 at 9 (citing Dkt. No. 53-6, Ex. E at 3-4).) BlackBerry argues that Facebook fails to show good cause for the amendments because it "fails to explain how nonpublic information led to the new arguments." (Dkt. No. 59 at 15.) Not so.

Each of Facebook's DOE theories discusses the theory of equivalence in the context of specific "illustrative BlackBerry evidence and disclosures therein." (*See* Dkt. Nos. 52-8, Ex. J at 17-23 ("dedicated security processor"); 52-10, Ex. K at 42-47 ("mobile device transmission profile"); 52-12, Ex. L at 67-73 ("monitoring component" and "second data processor"); 52-16, Ex. N at 7-11, 15-16, 37-40 ("central location").) Thus, contrary to BlackBerry's argument, Facebook's proposed amendments identify "specific nonpublic information" as it relates to the Facebook's "new DOE theories." (*See* Dkt. No. 59 at 15 (citing *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 236 F. Supp. 3d 1110, 1114 (N.D. Cal. 2017)).) Accordingly, the Court recommends that the district court find that the challenged DOE theories are supported by good cause.

### 2. Diligence in Seeking Amendment

It is undisputed that Facebook served its supplemental infringement contentions by the date requested by BlackBerry (June 18, 2019), which was three weeks after BlackBerry's late May 2019 production of "over 5,000 additional technical documents totaling over 15,900 pages." (Dkt. No. 59-2 at ¶ 5.) The parties last met and conferred over BlackBerry's objections to Facebook's proposed supplemental contentions July 23, 2019 and Facebook filed the instant motion ten days after that meeting. Facebook's actions do not suggest that it engaged in litigation gamesmanship or otherwise prolonged filing the instant motion to amend. Accordingly, the Court recommends that the district find that Facebook was diligent in seeking amendment.

### 3. Prejudice

BlackBerry argues that it would be unduly prejudiced by Facebook's proposed

14

amendments because the "belated amendments": (1) "would require BlackBerry to investigate additional prior art to supplement its own contentions in this case, as well as to potentially seek the construction of additional claim terms whose meaning may be called into question by new theories," and are thus prejudicial "with respect to claim construction proceedings"; and (2) do not cure the deficiencies in the initial contentions. (Dkt. No. 59 at 15-18.) The Court disagrees on both scores that the potential for prejudice overcomes Facebook's diligence.

First, as to claim construction proceedings, the parties stipulated on May 24, 2019—before BlackBerry's June 12, 2019 letter requesting that Facebook provide its supplemental contentions by June 18—to extend "certain of the claim construction deadlines . . . for the parties to conduct certain discovery, including review of documents and source code being produced by BlackBerry." (Dkt. No. 46 (extending "deadlines for the parties' submission of their Joint Claim Construction and Prehearing Statement and respective claim construction briefs under Patent L.R. 4-3, 4-4, and 4-5").) The district court granted that stipulation on May 31, 2019. (Dkt. No. 47.) BlackBerry then requested Facebook's supplemental contentions by June 18, 2019; Facebook provided its supplemental contentions on that date after receiving BlackBerry's last production on May 29, 2019. Thus, the timing of Facebook's proposed amendments is not prejudicial because BlackBerry was aware that its technical document and source code discovery could affect the claim construction proceedings and more importantly, BlackBerry controlled the production of that discovery and set the date for Facebook's supplemental contentions. *See DCG*, 2012 WL 1309161, at *3 (granting amendment where doing so "may force [defendant] to research further prior art, amend its invalidity contentions, and perhaps supplement its claim construction briefing").

Further, any potential prejudice regarding the timing of Facebook's proposed amendments would be cured by granting BlackBerry "leave to supplement its invalidity contentions and to propose additional terms for construction by the Court in an additional round of claim construction." (Dkt. No. 59 at 18.) Granting such leave would not conflict with the current schedule, given that the district court has already continued by approximately one month both the technology tutorial and claim construction hearing in light of the instant motion. (*See* Dkt. No. 65

(continuing the tutorial from October 4, 2019 to November 7, 2019 and the claim construction hearing from October 24, 2019 to November 21, 2019).) Further, the district court has not set any deadlines beyond the claim construction hearing. (*See* Dkt. Nos. 31, 47, 65.)

Second, as to the sufficiency of Facebook's proposed amendments, opposition to a motion to amend is "not the appropriate vehicle for challenging the sufficiency of the [amended infringement contentions] as a whole." *See Radware*, 2014 WL 1350230, at *2, 4 (noting that the relevant inquiry at this stage "is only whether [d]efendants will be prejudiced by the additions of citations to source code, citations to other documents, and the assertion of new DOE theories; not whether the amendments adequately cure any and all purported deficiencies of the [initial infringement contentions]"). Thus, BlackBerry's argument that "Facebook has failed to fix many of the deficiencies" BlackBerry identified in its April 2019 letter is not relevant to the "good cause" inquiry. The Court's focus at this stage is instead on the alleged deficiencies BlackBerry cites in "the amendments themselves." *See Radware*, 2014 WL 1350230, at *4. BlackBerry cites two alleged deficiencies that it did not previously raise in its April 2019 letter—the claimed "generic signaling interface channel" limitation of the '231 Patent and the claimed "mobile device transmission profile" limitation of the '575 Patent. The Court addresses each in turn.

BlackBerry argues that Facebook's proposed amendment to the '231 Patent "merely identifies a type of channel allegedly used in the accused product but fails to specify which channel satisfies the claimed 'generic signaling interface channel' limitation." (Dkt. No. 59 at 18.) BlackBerry asserts that it "is left to guess which 'SIP channel' is being accused of infringement." (*Id.*) Facebook counters that BlackBerry "never identifies any ambiguity between multiple different potentially accused SIP channels," and "the detailed source code and technical evidence . . . in Facebook's supplementation provides ample notice of the accused functionality." (Dkt. No. 61-4 at 14.) The Court agrees; on this record it does not appear that Facebook's failure to specify an SIP channel will *unduly* prejudice BlackBerry.

BlackBerry next argues that Facebook's claimed "mobile device limitation profile" limitation of the '575 Patent "merely repeats the claim language without specifying what it alleges meets the "mobile device transmission profile." (Dkt. No. 59 at 18.) The proposed amendment,

however, includes excerpts of technical documents and references "to illustrative BlackBerry evidence and disclosures therein" describing how the accused instrumentalities transmit data. (*See* Dkt. No. 52-10, Ex. K at 42-47.) Again, because the proposed amendment includes technical details providing notice of Facebook's infringement theory, it does not appear that the challenged amendment will *unduly* prejudice BlackBerry.

In sum, BlackBerry fails to demonstrate undue prejudice in light of Facebook's diligence in bringing its proposed amendments based on source code and technical documents obtained through contemporaneous, confidential discovery.

\*\*\*

Accordingly, the Court recommends that the district court find that Facebook has met its burden of establishing good cause to amend its infringement contentions. Facebook was diligent in discovering the bases for its proposed amendments and in seeking amendment, and BlackBerry will not be unduly prejudiced by the proposed amendments.

## II.     Administrative Motions to Seal

Plaintiff submits administrative motions to seal in conjunction with the instant motion to amend infringement contentions. (Dkt. Nos. 52 & 61.) Pursuant to Civil Local Rule 79-5(e), Plaintiff's motions include declarations explaining that the material sought to be sealed contains information designated by BlackBerry as "Highly Confidential." (*See* Dkt. Nos. 52-1 & 61-1.) BlackBerry has filed supporting declarations pursuant to Local Rules 79-5(d)(1)(A), (e)(1), specifying which portions of the material warrant sealing and providing proposed redactions. (Dkt. Nos. 57 & 63.) The Court has reviewed the material and BlackBerry's proposed redactions and finds the redactions narrowly tailored and warranted. Accordingly, the Court recommends that the district court GRANT Facebook's administrative motions to file under seal, consistent with BlackBerry's proposed redactions.

**CONCLUSION**

For the reasons set forth above, the Court recommends that the district court GRANT Facebook's motion to amend its infringement contentions and GRANT Facebook's administrative motions to file designated material under seal. Should Blackberry believe in good faith that

Facebook's amendments necessitate amendment of Blackberry's invalidity contentions, or an additional term for claim construction, then the parties should meet and confer on that score.

Any party may file objections to this report and recommendation with the district court judge within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file an objection may waive the right to review of the issue in the district court.

**IT IS SO ORDERED.**

Dated: September 17, 2019

JACQUELINE SCOTT CORLEY
United States Magistrate Judge