1  COOLEY LLP
   HEIDI L. KEEFE (178960)
2  (hkeefe@cooley.com)
   MARK R. WEINSTEIN (193043)
3  (mweinstein@cooley.com)
   MATTHEW J. BRIGHAM (191428)
4  (mbrigham@cooley.com)
   LOWELL D. MEAD (223989)
5  (lmead@cooley.com)
   BENJAMIN S. LIN (232735)
6  (blin@cooley.com)
   MARK A. ZAMBARDA (314808)
7  (mzambarda@cooley.com)
   3175 Hanover Street
8  Palo Alto, CA  94304-1130
   Telephone:   (650) 843-5000
9  Facsimile:   (650) 849-7400

   COOLEY LLP
   MICHAEL G. RHODES (116127)
   (rhodesmg@cooley.com)
   MATTHEW D. CAPLAN (260388)
   (mcaplan@cooley.com)
   101 California Street
   San Francisco, CA  94111-5800
   Telephone:   (415) 693-2000
   Facsimile:   (415) 693-2222

10 Attorneys for Plaintiff
   FACEBOOK, INC.

11
12                     UNITED STATES DISTRICT COURT
13                    NORTHERN DISTRICT OF CALIFORNIA
14                           OAKLAND DIVISION
15

16 | FACEBOOK, INC.,                    | Case No.  4:18-cv-05434-JSW
17 | a Delaware corporation,             |
   |                                     | **FACEBOOK'S OPPOSITION TO
18 |              Plaintiff,             | BLACKBERRY'S MOTION FOR LEAVE TO
   |                                     | AMEND INVALIDITY CONTENTIONS**
19 |        v.                           |
   |                                     | Date:   February 13, 2020
20 | BLACKBERRY LIMITED,                 | Time:   9:00 a.m.
   | a Canadian corporation, and         | Ctrm:   E, 15th Floor
21 | BLACKBERRY CORPORATION,             | Judge:  Hon. Jacqueline Scott Corley
   | a Delaware corporation,             |
22 |                                     |
   |              Defendants.            |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................... 1

II. FACTUAL BACKGROUND ................................................................................................ 1

III. LEGAL STANDARD ........................................................................................................... 2

IV. ARGUMENT ........................................................................................................................ 3

    A. BlackBerry Fails To Demonstrate the Requisite Diligence. ........................................ 3

        1. BlackBerry Was Not Diligent in Identifying the Tygar and Palladium References ................................................................................................ 4

            a. Microsoft Palladium was well-known and easily discoverable using the '432 Patent's terminology. ...................................................... 5

            b. Tygar was also easily discoverable using the '432 Patent's terminology. ................................................................................................ 7

            c. The Tygar and Palladium references are not rendered relevant only by DRM, which BlackBerry addressed in its original contentions. ............................................................................................... 7

        2. BlackBerry was not Diligent in Identifying the Mills, Jr. and Umeno References ............................................................................................................ 9

            a. Mills, Jr. and Umeno are both old U.S. patents that both extensively use the same terminology as the '698 Patent. .................... 9

            b. Facebook accused "software data processing functionality" and "virtual memory" in its original contentions. .................................... 10

        3. BlackBerry Was Not Diligent in Filing Its Motion to Amend ....................... 13

    B. Facebook Would Be Unduly Prejudiced By BlackBerry's Lack of Diligence .......... 15

V. CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Acer, Inc. v. Tech. Props. Ltd.*,
  No. 5:08-cv-00877 JF/HRL, 2010 WL 3618687 (N.D. Cal. Sept. 10, 2010) ............................... 13

*Altera Corp. v. PACT XPP Techs, AG*,
  No. 14-cv-02868-JD, 2015 WL 3832389 (N.D. Cal. June 19, 2015) ......................................... 4

*Apple, Inc. v. Samsung Elecs. Co.*,
  No. 11-cv-01846-LHK, 2012 WL 1067548 (N.D. Cal. Mar. 27, 2012) ..................................... 13

*Brilliant Instruments, Inc. v. Guidetech, Inc.*,
  No. C. 09-5517 CW 2011 WL 1628017 (N.D. Cal. Apr. 29, 2011) ........................................... 4

*Catch a Wave Techs., Inc. v. Sirius XM Radio, Inc.*,
  No. C 12-05791 WHA, 2014 WL 186405 (N.D. Cal. Jan. 16, 2014) ............................. 9, 14, 15

*CBS Interactive, Inc. v. Etilize, Inc.*,
  No. C 06-05378 MHP, 257 F.R.D. 195 (N.D. Cal. 2009) ......................................................... 3

*EON Corp IP Holdings LLC v. Aruba Networks Inc.*,
  No. 12-cv-01011-JST, 2013 WL 6001179 (N.D. Cal. Nov. 12, 2013) ..................................... 13

*Google, Inc. v. Netlist, Inc.*,
  No. C 08-4144 SBA, 2010 WL 1838693 (N.D. Cal. May 5, 2010) ....................................... 3, 5

*Icon-IP Pty, Ltd. v. Specialized Bicycle Components, Inc.*,
  No. 12-cv-03844-JST, 2014 WL 5361643 (N.D. Cal. Oct. 20, 2014) ....................................... 3

*Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*,
  No. 14-cv-0876-RS (JSC), 2016 WL 2855260 (N.D. Cal. May 13, 2016) ............................... 7

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
  467 F.3d 1355 (Fed. Cir. 2006) ................................................................................ 2, 3, 13, 14

*Positive Techs., Inc. v. Sony Elecs., Inc.*,
  No. C 11-2226 SI, 2013 WL 322556 (N.D. Cal. Jan. 28, 2013) ............................................... 3

*SAGE Electrochromics Inc. v. View Inc.*,
  No. C-12-06441 JST (DMR), 2014 WL 1998049 (N.D. Cal. May 15, 2014) ......................... 7, 9

*Symantec Corp. v. Acronis Corp.*,
  No. 11-5310 EMC (JSC), 2013 WL 5368053 (N.D. Cal. Sept. 25, 2013) ................................ 3

*Synopsys Inc. v. Mentor Graphics Corp.*,
  No. c-12-06467-MMC (DMR), 2014 WL 1477917 (N.D. Cal. April 14, 2014) ................. 7, 10, 14

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

ii.

FACEBOOK'S OPP. TO MOTION TO AMEND
4:18-CV-5434-JSW

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*,
 278 F.R.D. 505 (N.D. Cal. 2011), *aff'd*, 475 F. App'x 334 (Fed. Cir. 2012) ................................. 3

*Twilio, Inc. v. TeleSign Corporation*,
 No. 16-cv-06925-LHK-SVK, 2018 WL 732723 (N.D. Cal. Feb. 6, 2018) ..................................... 4

*Verinata Health, Inc. v. Sequenom, Inc.*,
 No. 12-cv-000865-SI, 2014 WL 789197 (N.D. Cal. Feb. 26, 2014) ............................................ 13

*Word to Info Inc., v. Facebook Inc.*,
 No. 15-cv-03485-WHO, 2016 WL 6276956 (N.D. Cal. Oct. 27, 2016), *aff'd*, 700
 F. App'x 1007 (Fed. Cir. 2017) ................................................................................................. 13

**Other Authorities**

Pat. L.R.
 3-3 ................................................................................................................................................ 2
 3-6 ........................................................................................................................................ 2, 3, 13

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iii.

FACEBOOK'S OPP. TO MOTION TO AMEND
4:18-CV-5434-JSW

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

BlackBerry fails to show good cause to add four new references that BlackBerry could have, and should have, diligently included in its original invalidity contentions.[1] BlackBerry points to Facebook's amended infringement contentions only as a pretext to backfill its contentions. None of these references first became relevant or discoverable only in response to Facebook's amendments.

For the '432 Patent, BlackBerry suggests that the Tygar and Microsoft Palladium references respond to Facebook's accusation against BlackBerry's DRM (Digital Rights Management) server, but Tygar does not even mention DRM and Palladium does not focus on any DRM server. In fact, these references disclose a "*security coprocessor*" and "*secure coprocessor*" using nearly identical language as the "*security co-processor*" in the '432 Patent and discussed in Facebook's original September 2018 complaint, and are readily publicly available online with a quick search. BlackBerry easily could have found both with a reasonably diligent search before its original contentions.

Similarly for the '698 Patent, BlackBerry argues that the Mills, Jr. and Umeno references became relevant only after Facebook accused software "data processing functionality" and "virtual" memory in BlackBerry's accused QNX software. (Mot. at 8-9.) But Facebook has accused "software data processing functionality" and virtual memory since its original January 2019 contentions. Moreover, both references are U.S. patents that use the same relevant terminology as the asserted '698 Patent claims. BlackBerry easily should have found both patents in a reasonably diligent search.

In addition, BlackBerry did not file this motion until more than six months after Facebook disclosed its amended contentions in June 2019, with an inexplicable lengthy delay after providing its proposed amendments on October 4, 2019. Finally, although BlackBerry's lack of diligence alone is dispositive, Facebook would be unduly prejudiced if BlackBerry were permitted to inject these untimely new references into this case at this post-*Markman* stage.

## II. FACTUAL BACKGROUND

On September 4, 2018, Facebook filed this action against BlackBerry for infringement of six patents including U.S. Patent Nos. 7,228,432 ("'432 Patent") and 7,302,698 ("'698 Patent"). (Dkt. 1.)

---

[1] In the spirit of cooperation and to reduce the issues for the Court, Facebook does not oppose the motion for six of the ten references (Exhibits I, J, L, P, Q, and R). (*See* Mot. (Dkt. No. 91) at 6-7.)

On January 8, 2019, Facebook served its infringement contentions. (Declaration of Lowell D. Mead ("Mead Decl."), Ex. 1 ('432), Ex. 2 ('698).) BlackBerry served its invalidity contentions on February 25, 2019. (Tse Decl. ¶ 2.) On March 26, 2019, BlackBerry served supplemental invalidity contentions that did not rely upon any of the four disputed references at issue in this motion.

On June 18, 2019, Facebook served its proposed first supplemental infringement contentions for the '432 and '698 Patents in view of BlackBerry's confidential technical discovery. (Tse Decl. ¶ 3; Dkt. Nos. 53-11, 53-13.) The parties completed claim construction briefing on August 15, 2019. (Dkt. No. 58.) The Court held a hearing on Facebook's motion to amend its contentions on September 12, 2019 and ruled on the motion on September 17, 2019. (Dkt. No. 72.) Facebook provided further detail for the '698 Patent on September 24, 2019.

On October 4, 2019, BlackBerry provided a copy of its proposed Second Supplemental Invalidity Contentions at issue in this motion, without any explanation as to any alleged good cause. (Tse Decl. Ex. G (bottom email in string).) That day, Facebook asked that BlackBerry explain its good cause on an item-by-item basis. (*Id*. (10/4/2019 email from L. Mead).) On October 7, 2019, BlackBerry responded only with a blanket high-level assertion that its amendments were responsive to Facebook's amended contentions. (*Id*. (10/7/2019 email from J. Tse).) On October 8, 2019, Facebook advised BlackBerry that for certain references it appeared that BlackBerry was citing Facebook's amended contentions only as a pretext, and asked BlackBerry to explain its good cause on an item-by-item basis. (*Id*. (10/8/2019 email from L. Mead).) Not until November 13, 2019 did BlackBerry respond with its substantive position. (*Id*. (11/13/2019 email from J. Tse).) On December 5, 2019, the parties met and conferred. On December 6, 2019, Facebook confirmed that it would not oppose amendment as to all but four references. (*Id*. (12/6/2019 email from L. Mead).)

The Court issued its final claim construction order on December 13, 2019. (Dkt. No. 90.)

**III.   LEGAL STANDARD**

The Patent Local Rules require parties to disclose invalidity theories early in the case. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1359 (Fed. Cir. 2006); Patent L.R. 3-3, 3-6. "In contrast to the more liberal policy for amending pleadings, 'the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the "shifting sands" approach to claim

construction.'" *Positive Techs., Inc. v. Sony Elecs., Inc.*, No. C 11-2226 SI, 2013 WL 322556, at *2 (N.D. Cal. Jan. 28, 2013) (citation omitted); *CBS Interactive, Inc. v. Etilize, Inc.*, No. C 06-05378 MHP, 257 F.R.D. 195, 202 (N.D. Cal. 2009) ("The Patent Local Rules were designed to prevent the parties from shuffling or re-framing their theories . . . ."). Patent Local Rule 3-6 permits amendment of invalidity contentions "only by order of the Court upon a timely showing of good cause." Pat. L.R. 3-6. "Good cause" requires a showing of diligence. *O2 Micro Int'l Ltd.*, 467 F.3d at 1366. "The burden is on the movant to establish diligence rather than on the opposing party to establish a lack of diligence." *Id*. "Carelessness is not compatible with a finding of diligence and offers no reason for grant of relief." *Symantec Corp. v. Acronis Corp.*, No. 11-5310 EMC (JSC), 2013 WL 5368053, at *4 (N.D. Cal. Sept. 25, 2013) (citation omitted).

As BlackBerry previously acknowledged when opposing Facebook's motion to amend its contentions, "[t]here is no need to address the question of prejudice once a lack of diligence has been found." Dkt. 59 at 4, citing *O2 Micro Int'l Ltd.*, 467 F.3d at 1368.[2]

## IV.  ARGUMENT

### A.  BlackBerry Fails To Demonstrate the Requisite Diligence.

BlackBerry fails to demonstrate that the four disputed references could not reasonably have been discovered with diligence prior to its initial invalidity contentions. BlackBerry claims that it did not discover the new art until after September 12, 2019. But "[t]he critical issue is not *when*" they discovered the new art, "but rather, whether they *could have* discovered it earlier had it acted with the requisite diligence." *Google, Inc. v. Netlist, Inc.*, No. C 08-4144 SBA, 2010 WL 1838693, at *2 (N.D. Cal. May 5, 2010) (emphasis in original); *Symantec Corp.*, 2013 WL 5368053, at *5 ("[T]he critical issue is not what the party did after they discovered the prior art; rather, the critical issue is whether or not [the moving party] exercised diligence in discovering the prior art.") (internal citations omitted).

Courts in this district have repeatedly denied amendment of invalidity contentions where, as

---

[2] *See also, e.g., Icon-IP Pty, Ltd. v. Specialized Bicycle Components, Inc.*, No. 12-cv-03844-JST, 2014 WL 5361643, at *2 (N.D. Cal. Oct. 20, 2014) ("If the Court finds that the moving party was not diligent, the Court need not consider the question of prejudice."); *Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*, 278 F.R.D. 505, 509-10 (N.D. Cal. 2011), *aff'd*, 475 F. App'x 334 (Fed. Cir. 2012) (noting that without a showing of diligence, a showing of prejudice is not required under Pat. L.R. 3-6).

here, parties should have been aware of a prior art reference with reasonable diligence. *See also, e.g., Twilio, Inc. v. TeleSign Corporation*, No. 16-cv-06925-LHK-SVK, 2018 WL 732723, at *4 (N.D. Cal. Feb. 6, 2018); *Altera Corp. v. PACT XPP Techs, AG*, No. 14-cv-02868-JD, 2015 WL 3832389, at *2-*3 (N.D. Cal. June 19, 2015); *Brilliant Instruments, Inc. v. Guidetech, Inc.*, No. C. 09-5517 CW 2011 WL 1628017, at *2 (N.D. Cal. Apr. 29, 2011).

Here, BlackBerry does not provide any information detailing what efforts it undertook between the filing of this case in September 2018, the service of Facebook's original infringement contentions on January 10, 2019, and the service of BlackBerry's original invalidity contentions on February 25, 2019. BlackBerry asserts that the four disputed references were "not 'so obvious and straightforward to discovery that a diligent search necessarily would have revealed them'—mainly because they were found in response to new theories raised in Facebook's First Supplemental Infringement Contentions." (Mot. at 6.) In fact, however, all four references easily could have been discovered in a reasonably diligent search prior to BlackBerry's original contentions, as discussed below.

### 1. BlackBerry Was Not Diligent in Identifying the Tygar and Palladium References

The '432 Patent describes a system and related techniques for implementing a "security co-processor" in a computer system in addition to an existing processor (such as a standard CPU) to perform certain functions. *See* '432 Patent (Dkt. No 1-4) at 2:31-34 ("the disclosed embodiments may enable a computer system to operate in a more efficient manner by having a <u>security co-processor</u> that protects against defeat by thread models or technologies"), 2:37-40 ("By having a <u>security co-processor</u> examine code and activities that are independent of the operating system, the threaded programs are unable to defeat the security of the computer system"), 4:17-20 ("Because the <u>security co-processor 111</u> performs the security functions and activities, it frees the use of the CPU cycles on the processor complex **102** for other computing activities."), 6:33-8:24 (underlining added).)

Facebook's complaint filed on September 4, 2018 explained in detail how the exemplary "security co-processor" in the '432 Patent provides certain benefits. (Dkt. No. 1, ¶¶ 71-72 (discussing, *inter alia*, how "a security co-processor (designated as item **111**) may examine code independent of the operating system of a computer system (item **100**) and a processor complex (item **102**)").) The

security co-processor is an embodiment of the "dedicated security processor" that is recited in asserted claim 1 of the '432 Patent and asserted dependent claims 3-6. ('432 Patent, claims 1 and 3-6.)

Now, fifteen months later, BlackBerry belatedly seeks to add two new references—Microsoft Palladium and Tygar—that use essentially the same language to describe a "security co-processor." The Palladium references comprise many publications and a U.S. Patent, while Tygar is a formal publication from Carnegie Mellon University. (Tse Decl. Ex. M (Palladium chart); Mead Decl. Ex. 3 (Tygar paper).) BlackBerry has no good cause since it easily could have discovered these references with reasonable diligence before its original invalidity contentions.

        **a.**    **Microsoft Palladium was well-known and easily discoverable using the '432 Patent's terminology.**

Palladium was well-known, and its associated documents use the same terminology as the '432 Patent and are widely publicly available. The documents describe a "*security coprocessor*" that BlackBerry relies upon as disclosing the "dedicated security processor" claim element. (Tse Decl. Ex. M at 125-126, 178-179, 238-239.) They describe, for example: "The security coprocessor is one of the more interesting aspects of the TCPA/Palladium system. . . ." (*Id.* at 136; *id.* at 203 ("We anticipate that a common implementation will be a cheap cryptographic processor, which we call a *security coprocessor*.") (italics in original); *id.* at 147 (quoting discussion of "security coprocessor").)

BlackBerry fails to show that it could not have discovered Palladium with reasonable diligence prior to its February 25, 2019 invalidity contentions. BlackBerry claims that it did not discover Palladium until sometime after the September 12, 2019 hearing. (Mot. at 7 ("BlackBerry diligently searched for and found these references promptly after the September 12 hearing . . . ."); Tse Decl. ¶ 5.) That claim is unavailing for multiple reasons. As an initial matter, it is highly suspect. The very next day, September 13, 2019, in support of a petition for *inter partes* review ("IPR") of the '432 Patent at the Patent Office, BlackBerry filed a 36-page expert declaration signed on September 12 that extensively discussed the Palladium system. (Mead Decl. Ex. 4 at ¶¶ 25-30.)

More fundamentally, "[t]he critical issue is not *when*" they discovered the reference, "but rather, whether they *could have* discovered it earlier had it acted with the requisite diligence." *Google*, 2010 WL 1838693, at *2. BlackBerry easily could have, and should have, discovered Palladium

before its initial contentions, such as by searching for references describing security coprocessors and related terminology. Palladium was described in many different publications that remain readily available online, including the numerous documents and a U.S. Patent cited in BlackBerry's proposed claim chart. (Tse Decl. Ex. M at 2.) For example, a straightforward Google search for "security coprocessor" and the year 2002 (the year before the '432 Patent was filed) yields among its first results an article about Palladium discussing its security processor:

> Palladium: Safe or Security Flaw? | WIRED
> https://www.wired.com › 2002/07 › palladium-safe-or-security-flaw ▾
> Dec 7, 2002 - The CPU is augmented by a **security coprocessor**, which holds a unique pair of crypto keys. The coprocessor is a separate component not for ...

(Mead Decl. Ex. 5 (Google search screenshot).) Other Palladium results follow in the same Google search, including a detailed Wikipedia page describing the "Security CoProcessor." (*See id*.; Ex. 6 (Wikipedia page discussing "a new hardware component designed by the TCPA called the 'Trusted Platform Module' (referred to as a 'Security Support Component,' 'Security CoProcessor' or 'Security Support Processor' in early Microsoft NGSCB documentation").) Palladium is also associated with the named inventors of a Microsoft patent, U.S. Patent No. 7,225,333 to Peinado, that BlackBerry charted in its original invalidity contentions and relies upon as its sole primary reference in its *inter partes* review petition. As BlackBerry's own expert declares:

> **Microsoft's Palladium initiative was controversial among Microsoft users and technology practitioners and was widely discussed**. Microsoft researchers, **including the named inventors of the '333 patent**, published a technical paper outlining Microsoft's vision for a Next-Generation Secure Computing Base (NGSCB) addressing the DRM goals of Palladium and other security goals that Microsoft had at the time. This paper (England, et. al., A Trusted Open Platform, IEEE Computer) appeared in July 2003 and **received hundreds of citations in the computer science literature**.

(Mead Decl. Ex. 4 at ¶ 30 (emphasis added).) Consistent with these observations, searching "Microsoft Palladium" in Google yields nearly 4 million search results. (Mead Decl. Ex. 7.)[3]

---

[3] Contrary to BlackBerry's characterization, Palladium is not some obscure "historical" product "for which documentation is no longer readily available." (Mot. at 6.) Googling "Microsoft Palladium PDF," for example, yields over 1.2 million results including countless PDF documents from Microsoft's website, universities, and elsewhere describing Palladium. (Mead Decl. Ex. 8.)

6.  FACEBOOK'S OPP. TO MOTION TO AMEND
4:18-CV-5434-JSW

Under all of these circumstances, it is difficult to imagine a riper "low-hanging fruit" reference that BlackBerry could have discovered with reasonable diligence prior to its original contentions. "[A] diligent search should reveal well-known prior art references." *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-cv-0876-RS (JSC), 2016 WL 2855260, at *5 (N.D. Cal. May 13, 2016).[4]

### b. Tygar was also easily discoverable using the '432 Patent's terminology.

Tygar is a publication from Carnegie Mellon University (well known for its computer science strength) that is entirely devoted to discussing the use, benefits, and implementation of a "*secure coprocessor*." (*See* Mead Decl. Ex. 3 (Tygar paper); Tse Decl. Ex. M (Tygar chart) (over 90 citations quoting excerpts with the term "secure coprocessor").) "Courts have recognized that it is more difficult to establish diligence when attempting to add prior art references that are publicly available." *SAGE Electrochromics Inc. v. View Inc.*, No. C-12-06441 JST (DMR), 2014 WL 1998049, at *3 n.4 (N.D. Cal. May 15, 2014) (citation omitted). The paper is readily available online with a quick search using terms similar to the "*security co-processor*" of the '432 Patent. Indeed, the key term "*secure coprocessor*" is in the paper's title: "Dyad: A System for Using Physically <u>Secure Coprocessors</u>." (Mead Decl. Ex. 3 (underlining added).) For example, searching "secure coprocessor" in Google or in Google Scholar yields Tygar plus related work by the same author J. D. Tygar in the first few results. (Mead Decl. Exs. 9 and 10.) BlackBerry fails to show that it could not have discovered Tygar earlier in a reasonably diligent search. *Synopsys Inc. v. Mentor Graphics Corp.*, No. c-12-06467-MMC (DMR), 2014 WL 1477917, at *4 (N.D. Cal. April 14, 2014) (denying motion to amend: "the court is not persuaded that the new references could not have been discovered in an earlier diligent search").

### c. The Tygar and Palladium references are not rendered relevant only by DRM, which BlackBerry addressed in its original contentions.

BlackBerry suggests that Tygar and Palladium first became relevant and discoverable only in

---

[4] The facts in *Karl Storz* are distinguishable. In that case, the only cited basis that the moving party might have been able to locate the two disputed references earlier were mere "hints" insofar as those references were cited by or related to other references. *Karl Storz*, 2016 WL 2855260, at *5. Here, all four disputed references describe systems using verbatim or near-verbatim the same relevant terminology as the patents-in-suit, and easily could have been found online with such search terms.

7.  FACEBOOK'S OPP. TO MOTION TO AMEND
4:18-CV-5434-JSW

1  view of Facebook's amended infringement contentions accusing a "digital rights management (DRM)
2  features provided by a server" (or a "DRM server") as the "dedicated security processor."  (Mot. at 1,
3  2-3, 7-8.)  BlackBerry asserts that Facebook's amended contentions "necessitated amendment and
4  supplementation of BlackBerry's invalidity contentions to identify additional prior art references that
5  disclose DRM servers," including Palladium and Tygar.  (*Id*. at 1.)

6        BlackBerry's position is meritless, for multiple reasons.  First, the Tygar reference does not
7  even mention DRM.  (Mead Decl. Ex. 3.)  Nowhere does Tygar reference "DRM," a DRM server, or
8  "digital rights management."  Searching for prior art using those search terms would not yield this
9  reference.  Similarly, BlackBerry does not identify any particular "DRM server" disclosed in the
10 Palladium papers.  As described in the documents, Palladium was an independent technology that was
11 not necessarily concerned with DRM.  Some documentation notes that one potential application could
12 be DRM, but the documents emphasize that "Palladium will not require digital rights management
13 (DRM) technology, and DRM will not require Palladium."  (Tse Decl. Ex. N at 90 (quoting "Palladium
14 Overview" document explaining that DRM and Palladium "are separate technologies").)  In any event,
15 BlackBerry easily could have and should have discovered Tygar and Palladium by searching using
16 terminology nearly identical to the '432 Patent as discussed previously, regardless of whether some
17 documents also happen to discuss DRM as one potential application.

18       In addition, BlackBerry cannot credibly claim that it originally had no basis to rely on DRM-
19 related references in view of Facebook's original contentions, because BlackBerry did just that.
20 Indeed, a DRM reference, the Microsoft Peinado '333 patent, was charted in BlackBerry's original
21 invalidity contentions for DRM and encryption features and is the primary basis for BlackBerry's IPR
22 petition.  BlackBerry's contentions cited DRM features for the "dedicated security processor"
23 limitation. (Mead Decl. Ex. 11 at 54 (citing Peinado '333 for disclosure that "the present invention
24 relates to an architecture for a secure processor on a computing device having <u>digital rights
25 management (DRM) system</u> thereon" for the "dedicated security processor" claim element)
26 (underlining added); *id.* at 14-15, 22-28, 91-105, *passim* (quoting disclosures regarding DRM and
27 encryption functions including for "validating" function, such as "To implement 'trust', the DRM
28 system is equipped with a 'black box' that performs decryption and encryption functions for such

DRM system").) Thus, BlackBerry already understood prior to its original contentions that DRM-related references with encryption functions could be relevant to the '432 Patent, so it could have included—and did include—that type of art in its initial searching and contentions charting.

### 2. BlackBerry was not Diligent in Identifying the Mills, Jr. and Umeno References

BlackBerry also fails to demonstrate diligence and good cause to add the new Mills, Jr. and Umeno references for the '698 Patent. (Mot. at 6-9.) The asserted claims recite a technique for "*monitoring*" the "*state*" of a computer platform having a "*data processor*" and "*memory*" using a monitoring component with a second "*data processor*" and second "*memory*," including "*recording state data*" describing a current operating state. ('698 Patent (Dkt. No. 1-6), asserted claims 1, 3, 20.) Facebook's September 4, 2018 Complaint discussed these features in detail. (Dkt. No. 1, ¶¶ 109-116.)

BlackBerry argues that Mills, Jr. and Umeno only became relevant in response to theories that Facebook first raised in its amended infringement contentions. (Mot. at 8-9.) BlackBerry argues that "Facebook's current infringement theories are that the High Availability Manager ('HAM') or Guardian data processing functionalities and allocated memory space satisfy the 'second data processor' and 'second memory' limitations," while Facebook's initial infringement theories "appeared to assert separate data processors and memories for the computing platform and monitoring component." (*Id*. at 8.) According to BlackBerry, Mills, Jr. and Umeno "are directed to virtual processing functionality and virtual memory space—concepts that Facebook first introduced in its supplemental infringement contentions." (*Id*. at 9.)

However, BlackBerry's position has no support in the record, as discussed further below.

### a. Mills, Jr. and Umeno are both old U.S. patents that both extensively use the same terminology as the '698 Patent.

Both the Mills, Jr. and Umeno references are U.S. patents, which are freely publicly available and searchable online. *SAGE Electrochromics* 2014 WL 1998049, at *3 n.4 (denying amendment to add "patent prior art"). Both patents are decades old: Mills, Jr. issued in 1985 and Umeno issued in 1995. (Tse Decl. Ex. T at 1, Ex. U at 1.) *Catch a Wave Techs., Inc. v. Sirius XM Radio, Inc.*, No. C 12-05791 WHA, 2014 WL 186405, at *2 (N.D. Cal. Jan. 16, 2014) (denying amendment: "The Moose

1   reference is a patent issued in 1991, more than ten years before this action commenced.").

2   Both patents also use language nearly identical to the asserted '698 Patent claims that make them even more easy to find, such that BlackBerry should have found them in a diligent search before its original contentions. Mills, Jr. describes a computer system with a "*data processor*" and "*memory*" that are used in connection with "*state*" information, including "*stored state information*"—nearly verbatim terminology as the "*data processor*" and "*memory*" recited in the asserted '698 Patent claims for monitoring "*state*" information and "*recording state data*." (Tse Decl. Ex. T, *passim*; '698 Patent, claims 1, 3, and 20.) Similarly, the Umeno patent describes a "*monitor*" function performed by a component relating to "*state*" information, such as "*State Description*" and information regarding the "*current state*," again highly similar to the '698 Patent claim recitations of a "*monitoring component*" for monitoring "*state*" information and "*recording state data describing a current operating state*" (Ex. U, *passim*; '698 Patent, claims 1, 3, and 20.)

The highly similar terminology between these U.S. patents and the asserted patent claims made these patents eminently easy to find with a reasonably diligent search before BlackBerry's original contentions. *Synopsys*, 2014 WL 1477917, at *4 ("the court is not persuaded that the new references could not have been discovered in an earlier diligent search"). There is no good cause now.

    **b.  Facebook accused "software data processing functionality" and "virtual memory" in its original contentions.**

Even if these patents only gained relevance in view of Facebook's infringement contentions—which is not the case because both patents use near-verbatim the same terminology as the asserted patent claims—the relevant aspects of Facebook's contentions have remained unchanged throughout this litigation. BlackBerry claims that its good cause is that Facebook did not previously provide notice that "Facebook may be arguing that a software component can satisfy the 'second data processor' (which is a physical component), and that allocated memory space may satisfy the 'second memory' (which is also a physical component)." (Tse Decl. Ex. G at 10 (email from BlackBerry counsel).) But Facebook has accused software for the "second data processor," and allocated memory space and "virtual" memory for the "second memory," from the outset of this case.

Facebook's original September 4, 2018 Complaint pointed to software data processing

functionality in the QNX operating system, including its High Availability Manager (HAM) software component, including its "process of monitoring states (and associated memory)" as the "second data processor" and second memory:

> - 1[c]. *a monitoring component comprising a second data processor and a second memory;*
>
> QNX Neutrino, such as in the BlackBerry 10 OS and other implementations, contains a monitoring component comprising a ==second data processor== and memory space. For example, the ==High Availability Manager== including associated components "provides a ==mechanism== for monitoring processes and services on your system." (Source: http://support7.qnx.com/download/download/26183/QNX_Neutrino_RTOS_System_Architecture.pdf) ==The process of monitoring states (and associated memory)== is separate and distinct from other data processing and memory.

(Dkt. No. 1 at 105 (highlighting added).)

Facebook's January 2019 contentions then explicitly accused "software data processing functionality" and "virtual memory" for the claimed "data processor" and "memory" features, including the accused "second data processor" and "second memory." (Mead Decl. Ex. 2 at 44-54, 66-72, 84-104, 106-110, 112-140, 157-201.) The record thus directly undermines BlackBerry's claim that Facebook only first accused "software or source code modules performing the data processing functionality" in its amended contentions DOE theory. (Mot. at 9.) Facebook stated, for example:

> QNX Neutrino implementations include physical and logical resources including **data processors** (hardware and/or **software data processing functionality**) and **memory**. . . . QNX Car uses **both virtual and physical memory** to store its processes. . . .
>
> BlackBerry 10 OS contains a **"software watchdog" that is a monitoring component comprising a second data processor and a second memory** . . . The **High Availability Manager** in QNX Neutrino RTOS, including in QNX Car, **comprises a second data processing functionality and a second memory** . . .

(Mead Decl. Ex. 2 at 8, 44 (emphasis added).) For the "second data processor" and "second memory" claim elements, Facebook's contentions cited extensive supporting evidence from BlackBerry

documents, including evidence discussing HAM as a software "watchdog" and part of a High Availability "software infrastructure" and describing software data processing functionality and virtual memory, such as in the following illustrative excerpts among many others:

> The High Availability Manager (HAM) provides a mechanism for monitoring processes and services on your system.
>
> The goal is to provide a resilient manager (or "smart watchdog") that can perform multistage recovery whenever system services or processes fail, no longer respond, or are detected to be in a state where they cease to provide acceptable levels of service.

> QNX Neutrino High Availability Framework provides a reliable software infrastructure on which to build highly effective HA systems. In addition to support for hardware-oriented HA solutions (e.g., CompactPCI as well as custom hardware), you also have the tools to isolate and even repair software faults before they occur throughout your entire system.

> When the process manager creates a thread, it reserves the full stack in virtual memory, but not in physical memory. Instead, the process manager requests additional blocks of physical memory only when your program actually needs more stack memory. As one function calls another, the state of the calling function is pushed onto the stack. When the function returns, the local variables and parameters are popped off the stack.
>
> The used portion of the stack holds your thread's state information and takes up physical memory. The unused portion of the stack is initially allocated in virtual address space, but not physical memory:

> "Private virtual memory
>
> In the full-protection model, each process is given its own private virtual memory.

> The full memory protection means that almost all the memory addresses your program encounters are *virtual addresses*. The process manager maps your program's virtual memory addresses to the actual physical memory;

(*Id*. at 45, 47, 54, 58, 62; *see also generally id*. at 44-54, 66-72, 84-104, 106-110, 112-140, 157-201.)

In view of those extensive and specific disclosures, BlackBerry was fully on notice from the outset that Facebook's infringement allegations encompassed "software" data processing functionality and virtual memory space for the "second data processor" and "second memory" elements. Facebook's later supplementation to cite confidential discovery, as well as the articulation of a doctrine of equivalents theory, did not change the fact that BlackBerry had more than ample notice from the beginning. If BlackBerry wanted to rely upon prior art similar to BlackBerry's accused QNX software monitoring components, such as software (or "virtual") data processing functionality and

1   virtual memory, it needed to diligently investigate and identify that art in its original contentions by
2   February 25, 2019. And in any event, as shown previously, both Mills, Jr. and Umeno are old U.S.
3   Patents that use wording nearly verbatim to the asserted '698 Patent claims, so BlackBerry easily could
4   have and should have discovered both references with reasonable diligence before its original
5   contentions, regardless of Facebook's infringement contentions.

### 3. BlackBerry Was Not Diligent in Filing Its Motion to Amend.

BlackBerry's motion should be denied for the additional, independent reason that BlackBerry did not file the present motion until December 20, 2019—more than three months after the September 12, 2019 hearing and six months after BlackBerry received Facebook's amended contentions on June 18, 2019. The courts in this district have repeatedly found that similar months-long delays in moving to amend contentions are not diligent.[5] *Apple, Inc. v. Samsung Elecs. Co.,* No. 11-cv-01846-LHK, 2012 WL 1067548, at *2 (N.D. Cal. Mar. 27, 2012) (finding "over two and a half months" too long); *Word to Info Inc., v. Facebook Inc.*, No. 15-cv-03485-WHO, 2016 WL 6276956, at *4 (N.D. Cal. Oct. 27, 2016), *aff'd*, 700 F. App'x 1007 (Fed. Cir. 2017) (collecting cases finding that a three-to-four month delay in moving to amend contentions is not diligent); *Verinata Health, Inc. v. Sequenom, Inc.*, No. 12-cv-000865-SI, 2014 WL 789197, at *3 (N.D. Cal. Feb. 26, 2014) (nearly three months to move to amend invalidity contentions was not diligent); *EON Corp IP Holdings LLC v. Aruba Networks Inc.*, No. 12-cv-01011-JST, 2013 WL 6001179, at *2 (N.D. Cal. Nov. 12, 2013) ("Three months is beyond whatever time should have been required to prepare these amendments . . .").

While BlackBerry asserts that it waited until after the September 12, 2019 hearing to start investigating more prior art, it acknowledges that "[o]n June 18, 2019, Facebook served its First Supplemental Infringement Contentions for all Asserted Patents." (Tse Decl. ¶ 3.) To the extent there was relevant new information in Facebook's amended disclosures, BlackBerry needed to promptly

---

[5] The date the motion is filed is the operative date for the completion of diligence, as proposed amended contentions cannot become operative until the movant makes a "timely showing" of good cause. N.D. Cal. Pat. L.R. 3-6; *O2 Micro Int'l Ltd.*, 467 F.3d at 1367-68 (addressing plaintiff's "delay in moving to amend its infringement contentions" and noting that plaintiff "waited almost three months . . . to serve its proposed amended contentions and two more weeks to formally move to amend"); *Acer, Inc. v. Tech. Props. Ltd.*, No. 5:08-cv-00877 JF/HRL, 2010 WL 3618687, at *3 (N.D. Cal. Sept. 10, 2010) (the diligence inquiry looks at "how quickly the party moves to amend its contentions").

1    consider it. "If the parties were not required to amend their contentions promptly after discovering
2    new information, the contentions requirement would be virtually meaningless as a mechanism for
3    shaping the conduct of discovery and trial preparation." *O2 Micro Int'l Ltd.*, 467 F.3d at 1366. Here,
4    as explained previously, BlackBerry had ample relevant information from Facebook's original
5    September 2019 Complaint and January 2019 infringement contentions to locate the four disputed
6    references, all of which use essentially the same relevant terminology as the asserted patents and were
7    easily locatable online. But even assuming *arguendo* that these references had not become relevant
8    until Facebook's amended contentions, BlackBerry should have diligently started investigating
9    promptly after receiving the new information on June 18, 2019. The inquiry focuses on diligence in
10   "moving to amend when new information is discovered." *Synopsys*, 2014 WL 1477917, at *2.

11   Furthermore, even if BlackBerry were justified in waiting until after the September 12, 2019
12   hearing, BlackBerry still did not file this motion until more than three months later. BlackBerry took
13   a particularly lackadaisical approach after disclosing its proposed amendments on October 4, 2019,
14   which is laid bare in the email chain attached to BlackBerry's motion as Exhibit G. After receiving
15   the disclosure on October 4, 2019, Facebook immediately asked BlackBerry to explain its purported
16   good cause on an item-by-item basis. (Tse Decl. Ex. G.) On October 7, 2019, BlackBerry provided
17   only a cursory, non-substantive response. (*Id.*) Facebook responded the next day reiterating its request
18   that BlackBerry substantively explain its good cause for each item. (*Id.*) Not until November 13,
19   2019—*more than five weeks later*—did BlackBerry finally respond with its substantive position. (*Id.*)

20   Facebook's counsel then immediately responded on November 13, asking if BlackBerry's
21   email could be shared with Facebook in-house personnel (due to potential confidential information)
22   in order to discuss the issues. (*Id.*) Not until November 22, 2019, after multiple inquiries from
23   Facebook, did BlackBerry finally respond. (*Id.*) The parties met and conferred thereafter.

24   BlackBerry simply was not sufficiently diligent under these circumstances. BlackBerry took
25   a dilatory approach, sitting on the issue without responding to Facebook for weeks on end, showing
26   no serious interest in diligently moving to amend. *Catch a Wave*, 2014 WL 186405, at *2 ("Even if
27   defendant was diligent in its prior art search, no acceptable explanation has been provided for why
28

defendant waited, in some cases two months, after it 'discovered' the references to move to amend its invalidity contentions. A conclusory and self-serving statement of 'diligence' does not suffice.").

### B. Facebook Would Be Unduly Prejudiced By BlackBerry's Lack of Diligence.

Finally, though there is no need to consider prejudice since BlackBerry has failed to demonstrate the required diligence, the motion can be denied on the additional basis that Facebook would be unduly prejudiced if BlackBerry were permitted to add these four untimely new references. The Patent Local Rules are set up for the specific purpose of narrowing issues early for the Court and the parties and avoiding the circumstances present here—an expansion of the issues and resource expenditure long after the deadline for contentions. Facebook would be prejudiced by having to address new and untimely invalidity defenses some 15 months after this case was filed, after the completion of claim construction proceedings. *Catch a Wave*, 2014 WL 186405, at *2 ("[I]t would be prejudicial to plaintiff to allow such a late-stage addition to defendant's invalidity theory.").

BlackBerry argues that Facebook would not be prejudiced because the Court's "claim construction order issued just last week." (Mot. at 9.) To the contrary, the completion of the claim construction process only exacerbates the prejudice to Facebook. For context, Facebook provided its supplemental infringement contentions in June 2019, long *before* BlackBerry's claim construction brief was filed in August 2019, so BlackBerry had ample time to consider Facebook's disclosures in developing its claim construction briefing. By contrast, BlackBerry did not disclose its proposed new invalidity references until nearly four months later in October 2019, long *after* the parties completed claim construction briefing in August 2019. Facebook would be prejudiced because it had no opportunity to consider the belated new disclosures when formulating its claim construction positions and briefing. To permit BlackBerry's untimely amendment "would amount to rewarding a delay in disclosure now that claim construction briefs are on file." *Catch a Wave*, 2014 WL 186405, at *2.

### V. CONCLUSION

For the foregoing reasons, BlackBerry's motion should be denied as to the four disputed references.

| | | |
|---|---|---|
| 1 | Dated: January 10, 2020 | COOLEY LLP |
| 2 | | |
| 3 | | /s/ *Heidi L. Keefe* |
| 4 | | HEIDI L. KEEFE (178960) |
| | | (hkeefe@cooley.com) |
| 5 | | MARK R. WEINSTEIN (193043) |
| | | (mweinstein@cooley.com) |
| 6 | | MATTHEW J. BRIGHAM (191428) |
| | | (mbrigham@cooley.com) |
| 7 | | LOWELL D. MEAD (223989) |
| | | (lmead@cooley.com) |
| 8 | | BENJAMIN S. LIN (232735) |
| | | (blin@cooley.com) |
| 9 | | MARK A. ZAMBARDA (314808) |
| | | (mzambarda@cooley.com) |
| 10 | | 3175 Hanover Street |
| | | Palo Alto, CA  94304-1130 |
| 11 | | Telephone:   (650) 843-5000 |
| | | Facsimile:    (650) 849-7400 |
| 12 | | |
| | | COOLEY LLP |
| 13 | | MICHAEL G. RHODES (116127) |
| | | (rhodesmg@cooley.com) |
| 14 | | MATTHEW D. CAPLAN (260388) |
| | | (mcaplan@cooley.com) |
| 15 | | 101 California Street |
| | | San Francisco, CA  94111-5800 |
| 16 | | Telephone:   (415) 693-2000 |
| | | Facsimile:    (415) 693-2222 |
| 17 | | |
| 18 | | Attorneys for Plaintiff |
| | | FACEBOOK, INC. |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |