QUINN EMANUEL URQUHART & SULLIVAN, LLP
James R. Asperger (Bar No. 83188)
jamesasperger@quinnemanuel.com
Yury Kapgan (Bar No. 218366)
yurykapgan@quinnemanuel.com
Pushkal Mishra (Bar No. 298695)
pushkalmishra@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Jordan R. Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
Iman Lordgooei (Bar No. 251320)
imanlordgooei@quinnemanuel.com
Jonathan Tse (Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Attorneys for Defendants
BlackBerry Limited and BlackBerry Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| FACEBOOK, INC.,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>BLACKBERRY LIMITED, and BLACKBERRY CORPORATION,<br><br>　　　Defendants. | Case No. 4:18-cv-05434-JSW<br><br>**BLACKBERRY'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO AMEND INVALIDITY CONTENTIONS**<br><br>Hearing: February 13, 2020<br>Time: 9:00 am<br>Place: Courtroom E, 15th Floor<br>Judge: Hon. Jacqueline Scott Corley |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT .........................................................................................................................2

    A. BlackBerry's Earlier Search For Prior Art Was Diligent, But Did Not Uncover Any Of The Four References At Issue ........................................................2

    B. The Prior Art References At Issue Are Not Well Known References That Would Have Necessarily Been Revealed By A Diligent Search ...............................5

    C. BlackBerry's Tygar And Microsoft Palladium Supplementations Are Responsive To Facebook's Supplemental '432 Patent Contentions ..........................6

    D. BlackBerry's Mills, Jr. And Umeno Supplementations Are Responsive To Facebook's Supplemental '698 Patent Contentions ....................................................7

    E. BlackBerry Timely Served Its Supplemental Contentions And Filed Its Motion .........................................................................................................................9

    F. The Court Should Exercise Its Discretion To Allow BlackBerry's Supplemental Contentions Regardless Of Its Findings On Diligence .....................11

    G. BlackBerry's Supplemental Contentions Will Not Unduly Prejudice Facebook ...................................................................................................................12

III. CONCLUSION ....................................................................................................................14

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Adv. Micro Devices, Inc. v. LG Elecs., Inc.*,
    No. 14-CV-01012-SI, 2017 WL 2774339 (N.D. Cal. June 26, 2017) ....................... 5, 6, 11

*Adv. Micro Devices, Inc. v. LG Elecs., Inc.*,
    No. 14-CV-01012-SI, 2017 WL 732896 (N.D. Cal. Feb. 24, 2017) ................................. 12

*Altera Corp. v. PACT XPP Techs., AG*,
    No. 14-cv-02868-JD, 2015 WL 3832389 (N.D. Cal. June 19, 2015) .............................. 5, 6

*Apple Inc. v. Samsung Elecs. Co.*,
    No. CV 12–00630 LHK, 2012 WL 5632618 (N.D. Cal. Nov. 15, 2012) .......................... 11

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
    No. 11-cv-01846-LHK, 2012 WL 1067548 (N.D. Cal. Mar. 27, 2012) ............................ 10

*Brilliant Instruments, Inc. v. Guidetech, Inc.*,
    No. C 09-5517 CW, 2011 WL 1628017 (N.D. Cal. Apr. 29, 2011) ............................... 4, 5

*Catch a Wave Techs., Inc. v. Sirius XM Radio, Inc.*,
    No. C 12-05791 WHA, 2014 WL 186405 (N.D. Cal. Jan. 16, 2014) ......................... 3, 4, 5

*Fujifilm Corp. v. Motorola Mobility LLC*,
    No. 12-cv-03587-WHO, 2014 WL 491745 (N.D. Cal. Feb. 5, 2014) ........................ *passim*

*Intri-Plex Techs., Inc. v. NHK Int'l Corp.*,
    No. 15-CV-01097-EMC-EDL, 2019 WL 920206 (N.D. Cal. Jan. 15, 2019)
    *report and recommendation adopted*, No. 17-CV-01097-EMC, 2019 WL 917059
    (N.D. Cal. Feb. 25, 2019) ................................................................................................ 12

*Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*,
    No. 14-cv-0876-RS(JSC), 2016 WL 2855260 (N.D. Cal. May 13,
    2016) ........................................................................................................................ *passim*

*Monolithic Power Sys., Inc. v. Silergy Corp.*,
    No. 14-CV-01745-VC(KAW), 2015 WL 5440674 (N.D. Cal. Sept. 15, 2015) ................ 13

*Network Prot. Scis., LLC v. Fortinet, Inc.*,
    No. C 12-01106 WHA, 2013 WL 1949051 (N.D. Cal. May 9, 2013) ............................... 2

*Positive Techs., Inc. v. Sony Elecs., Inc.*,
    No. 11–cv–02226 SI, 2013 WL 322556 (N.D. Cal. Jan. 28, 2013) .................................... 2

*Radware Ltd. v. F5 Networks, Inc.*,
    No. C-13-2024 RMW, 2014 WL 3728482 (N.D. Cal. Jan. 1, 2014) ............................... 10

*Synchronoss Techs., Inc. v. Dropbox Inc.*,
    No. 4:16-cv-00119-HSG(KAW), 2018 WL 5619743 (N.D. Cal. Oct. 29, 2018) .. 11, 12, 13

*Synopsys Inc. v. Mentor Graphics Corp.*,
   No. C-12-06467-MMC(DMR), 2014 WL 1477917 (N.D. Cal. Apr. 14, 2014) .................. 7

*The Bd. Of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
   No. C 05-04158 MHP, 2008 WL 624771 (N.D. Cal. Mar. 4, 2008) ................................. 10

*The EON Corp IP Holdings LLC v. Aruba Networks Inc.*,
   No. 12-cv-01011-JST, 2013 WL 6001179 (N.D. Cal. Nov. 12, 2013) ............................. 11

*THX, Ltd. v. Apple, Inc.*,
   No. 13-CV-01161-HSG, 2016 WL 1718137 (N.D. Cal. Apr. 29, 2016) ........................... 12

*Trans Video Elecs., Ltd. v. Sony Elecs.*,
   278 F.R.D. 505 (N.D. Cal. 2011), *aff'd*, 475 F. App'x 334 (Fed. Cir. 2012) ...................... 13

*Twilio, Inc. v. TeleSign Corp.*,
   No. 16-cv-06925-LHK(SVK), 2018 WL 732723 (N.D. Cal. Feb. 6, 2018) ........................ 4

*Twilio, Inc. v. TeleSign Corp.*,
   No. 16-CV-06925-LHK-SVK, 2017 WL 3581186 (N.D. Cal. Aug. 18, 2017) ................. 13

*U.S. Ethernet Innovations, LLC v. Acer, Inc.*,
   No. 10–cv–3724 CW, 2013 WL 5609325 (N.D. Cal. Oct. 11, 2013) ................................ 11

*Vasudevan Software, Inc. v. Int'l Bus. Machines Corp.*,
   No. C09-05897 RS HRL, 2011 WL 940263 (N.D. Cal. Feb. 18, 2011) ............................ 10

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
   No. C 12-05501 SI, 2014 WL 1648175 (N.D. Cal. Apr. 23, 2014) ................................... 11

*Verinata Health, Inc. v. Sequenom, Inc.*,
   No. 12-cv-000865-SI, 2014 WL 789197 (N.D. Cal. Feb. 26, 2014) ........................... 10, 11

*WhatsApp Inc. v. Intercarrier Commc'ns, LLC*,
   No. 13-cv-04272 JST, Dkt. No. 81 (N.D. Cal. Sept. 3, 2014) ........................................... 12

*Word to Info Inc. v. Facebook Inc. is*,
   No. 15-cv-03485-WHO, 2016 WL 6276956 (N.D. Cal. Oct. 27, 2016) ............................ 10

## I. INTRODUCTION

In granting Facebook leave to supplement its infringement contentions, this Court noted that "any potential prejudice regarding the timing of Facebook's proposed amendments would be cured by granting BlackBerry 'leave to supplement its invalidity contentions . . . .'" Dkt. 72 at 15. Now Facebook seeks to undo BlackBerry's remedy against prejudice by opposing the very supplemental invalidity contentions BlackBerry served in response to Facebook's supplemental infringement contentions. BlackBerry's supplementation was triggered by Facebook's supplementation and indication from the Court that BlackBerry would be allowed to supplement its invalidity contentions in response. BlackBerry did not and could not have found the additional prior art references being added until Facebook elucidated its infringement theories for the '432 and '698 patents. It was not until Facebook's supplementation that it became clear, for example, that Facebook was accusing a DRM server for the "dedicated security processor" limitation and sealing, securing, and encrypting functionalities for the "validate" limitation of the '432 patent, or "data processing functionality and its associated memory" for the "second data processor" and "second memory" limitations of the '698 patent. As Facebook's theories became clear, BlackBerry diligently searched for and identified additional prior art references and served supplemental invalidity contentions. Courts routinely grant motions for leave to amend invalidity contentions under such circumstances.

Moreover, Facebook has not identified any prejudice from BlackBerry's supplemental contentions. A schedule still has not been entered in this case, and though claim construction has been completed, Facebook has not identified a single claim construction issue affected by BlackBerry's supplementation. Indeed, Facebook could have but did not raise any such issues while claim construction proceedings were still ongoing, despite service of BlackBerry's supplemental contentions more than a month prior to the November 21 *Markman* hearing. There is no good reason to deny BlackBerry's motion for leave, which was timely, is responsive to Facebook's supplementation of its infringement contentions, and will not result in any prejudice to Facebook.

At a minimum, since Facebook does not oppose BlackBerry's motion for leave to add six of the supplemental invalidity charts (*i.e.*, Exhibits I, J, L, P, Q, R to BlackBerry's Motion), the Court should grant the Motion at least as to those references and charts. *See* Dkt. 91 at 6-7; Dkt. 100 at 2.

## II. ARGUMENT

"[T]he diligence required for a showing of good cause has two subparts: (1) diligence in discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for amendment has been discovered." *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-cv-0876-RS (JSC), 2016 WL 2855260, at *5 (N.D. Cal. May 13, 2016) (quoting *Positive Techs., Inc. v. Sony Elecs., Inc.*, No. 11–cv–02226 SI, 2013 WL 322556, at *2 (N.D. Cal. Jan. 28, 2013)).

Here, the basis for BlackBerry's amendment was the Court's September 12, 2019 hearing and subsequent order granting Facebook's supplemental infringement contentions—*i.e.*, Facebook's June 18, 2019 First Supplemental Infringement Contentions, which contained the first allegation of a WDRM server as satisfying the "dedicated security processor" and "validate" limitations of the '432 patent, and Facebook's later September 24, 2019 Second Supplemental Infringement Contentions, which contained the first identification of the "data processing functionality and its associated memory" for Guardian and HAM as satisfying the "second data processor" and "second memory" limitations of the '698 patent (*but see* Dkt. 91 at 8 n.2). BlackBerry promptly and diligently served its amended invalidity contentions after the September 12, 2019 hearing, on October 4, 2019.

### A. BlackBerry's Earlier Search For Prior Art Was Diligent, But Did Not Uncover Any Of The Four References At Issue

Facebook's primary argument against diligence boils down to an allegation that BlackBerry's earlier prior art search was not diligent and that the Tygar, Microsoft Palladium, Mills, Jr., and Umeno prior art references "easily could have been discovered in a reasonably diligent search prior to BlackBerry's original contentions." Dkt. 100 at 4. As recognized by this Court and others, however, "[u]nsuccessful prior art searches, standing alone, do not demonstrate an absence of diligence." *Karl Storz*, 2016 WL 2855260, at *5 (quoting *Network Prot. Scis., LLC v. Fortinet, Inc.*, No. C 12-01106 WHA, 2013 WL 1949051, at *2 (N.D. Cal. May 9, 2013)); *see also Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587-WHO, 2014 WL 491745, at *4-5 (N.D. Cal. Feb. 5, 2014) (explaining that "perfect diligence" is not required in order to find good cause).

Here, BlackBerry's original contentions were based on a prior art search directed to 34 patent claims across six asserted patents, and ultimately led to 16 prior art references charted against the '432

patent and 16 prior art references charted against the '698 patent, out of a total of 83 prior art systems, patents, and publications charted against all of the asserted patents—hardly showing a lack of diligence on BlackBerry's part. Indeed, in *Karl Storz*, this Court acknowledged that an earlier prior art search involving dozens of asserted patent claims and requiring evaluation of hundreds of prior art references does not, standing alone, demonstrate an absence of diligence. 2016 WL 2855260, at *5 (citing, with approval, *Fujifilm Corp.*, 2014 WL 491745, at *4 for "permitting amendment to add prior art references found later in discovery even though they might have been found earlier where the defendant was evaluating 'hundreds of other references' for the five patents at issue in the case").

Moreover, though Facebook presents a hindsight reconstruction of prior art searches based on search terms that it purports could have led BlackBerry to discover the four prior art references at issue (Dkt. 100 at 4-5, 7, 9-10), it fails to show that "a diligent search **necessarily would have** revealed" those references. *Karl Storz*, 2016 WL 2855260, at *5 (emphasis added); *see also infra* § II.B (explaining that the references were not well-known such that a diligent search should have revealed them). For example, Facebook argues that the Palladium and Tygar references could have been found based on a search for the terms "secure coprocessor" or "security coprocessor," which relate to the '432 patent (Dkt. 100 at 5, 7). Facebook similarly argues that the Mills, Jr. and Umeno references could have been found based on searching for various terms from the '698 patent (*id.* at 9-10). Fatal to its argument, however, is Facebook's failure to acknowledge how many other hundreds, if not thousands, of references would have also been found as part of such a search—effectively tasking BlackBerry with picking a needle out of a haystack to find the references at issue here. At bottom, Facebook assumes only a perfect search is a diligent one, but that is not the standard. *Fujifilm*, 2014 WL 491745, at *4 ("perfect diligence" not required for good cause).

Contrary to Facebook's assertions, mere public availability of the references is not enough to establish that they could and would have been found by a diligent search. *See* Dkt. 100 at 5-7, 9-10. For example, Facebook cites *Catch a Wave Techs., Inc. v. Sirius XM Radio, Inc.* for support, but there Judge Alsup denied movant's motion for leave to add a patent not just because it was publicly available, but because it was cited on the face of a patent cited by the asserted patent in the case. No. C 12-05791 WHA, 2014 WL 186405, at *2 (N.D. Cal. Jan. 16, 2014). Similarly, Judge Alsup denied

leave to add two college-level textbooks not just because they were publicly available, but because they were well-known and movant had not explained why they were not discovered. *Id.*

Even assuming that a prior search would have revealed the four references at issue, however, Facebook nevertheless fails to explain why BlackBerry would have recognized the significance of those references without the benefit of Facebook's supplemental infringement contentions. For example, in *Fujifilm*, the movant attempted to add, *inter alia*, a publication it had found on or around the time of its initial invalidity contentions. 2014 WL 491745, at *1. The movant argued that despite having previously discovered the publication, it could not have recognized its relevance until after speaking with one of the authors. *Id.* at *1, *5. Based on the movant's later recognition of the publication's relevance, Judge Orrick granted leave to supplement invalidity contentions, recognizing that "[a]lthough hindsight is often '20/20,' identifying and evaluating prior art can be difficult, and new information learned in discovery can lead a party to understandably reevaluate evidence found earlier." *Id.* at *4-5. Here, BlackBerry had not found the four prior art references despite its earlier diligent search. Yet even if it had, just as in *Fujifilm*, BlackBerry would not have recognized the significance of the references until receipt of Facebook's new infringement theories.

Thus BlackBerry acted diligently. The cases Facebook cites for support of a contrary conclusion are inapposite. In *Twilio*, for example, the court found the movant had not acted with diligence to amend its contentions because the amendments were based on a claim construction that the parties should have reasonably anticipated earlier. *Twilio, Inc. v. TeleSign Corp.*, No. 16-cv-06925-LHK (SVK), 2018 WL 732723, at *4 (N.D. Cal. Feb. 6, 2018). Here, BlackBerry could not have reasonably anticipated Facebook's new infringement theories, which Facebook admits were derived from confidential documents produced after the parties' initial contentions. Dkt. 91 at 7-9. Further, in *Brilliant Instruments*, the court found the movant was not diligent in seeking to add a prior art system to its contentions because the system was explicitly identified and described as the underlying system in an issued patent the movant already "knew of and believed to be 'relevant prior art.'" *Brilliant Instruments, Inc. v. Guidetech, Inc.*, No. C 09-5517 CW, 2011 WL 1628017, at *2 (N.D. Cal. Apr. 29, 2011). Here, there is no suggestion that any of the four references at issue were specifically identified and described in any reference that BlackBerry knew of and believed to be

relevant prior art.[1]  And in *Altera*, the movant was denied leave to add a prior art reference based on a new priority date for the asserted patent, which would have had no effect on the substantive scope of the earlier prior art search—unlike a new infringement theory, which is the case here.  *Altera Corp. v. PACT XPP Techs., AG*, No. 14-cv-02868-JD, 2015 WL 3832389, at *2-3 (N.D. Cal. June 19, 2015).

### B. The Prior Art References At Issue Are Not Well Known References That Would Have Necessarily Been Revealed By A Diligent Search

As this Court has noted, "a diligent search should reveal ***well-known*** prior art references." *Karl Storz*, 2016 WL 2855260, at *5 (emphasis added).  Here, Facebook does not allege that the Tygar, Mills, Jr., or Umeno references are well known.  For all three of these references, Facebook merely suggests that they would have been discoverable because they are publicly available and use similar "terminology" as the '432 and '698 patents.  Dkt. 100 at 7, 9-10.  Thus there is no allegation that Tygar, Mills, Jr., or Umeno were discoverable based on being well-known—and, as described above in § II.A, these references also were not revealed despite BlackBerry's earlier diligent search.

Microsoft Palladium is the only reference Facebook alleges was purportedly so well-known that it would necessarily have been revealed in a diligent search.  Dkt. 100 at 5-7.  But Facebook overlooks the possibility that, even if a reference is well-known, its significance or relevance to the claims at issue may not have been apparent until the underlying infringement theory was fully elucidated.  Unlike in *Catch a Wave Techs.*, 2014 WL 186405, at *2, where the Court determined that there was ***no*** acceptable explanation for why well-known textbooks were not previously discovered, here there is an explanation: the Microsoft Palladium system was not previously discovered because its relevance only became clear based on Facebook's new infringement theory.  *See, e.g.*, *Adv. Micro Devices, Inc. v. LG Elecs., Inc.*, No. 14-CV-01012-SI, 2017 WL 2774339, at *6 (N.D. Cal. June 26, 2017) (recognizing it is "generally permissible for a party to amend its invalidity contentions in response to the patentee amending its infringement contentions"); *Altera*, 2015 WL 3832389, at *2

---

[1] Facebook argues that the Palladium system is "associated with the named inventors" of one of the patents BlackBerry charted in its initial contentions.  Dkt. 100 at 6.  However, the patent itself makes no reference to Palladium, and there is no reason BlackBerry would have searched for a prior art system corresponding to this particular patent—one of the many analyzed by BlackBerry.

(permitting proposed amendments to invalidity contentions that "can fairly be characterized as responsive to [the] changes" in the patentee's infringement contentions). And BlackBerry served its Palladium contentions soon after the September 12 hearing in which the Court granted Facebook leave to assert its new infringement theory and intimated that it would be appropriate to grant BlackBerry leave to amend its invalidity contentions in response. Thus there was no lack of diligence in presenting Palladium, even if it is a well-known system.

### C. BlackBerry's Tygar And Microsoft Palladium Supplementations Are Responsive To Facebook's Supplemental '432 Patent Contentions

Facebook is mistaken that that the Tygar and Palladium references are not responsive to its new infringement theories for the '432 patent. As an initial matter, Facebook does not dispute that both the Tygar and Palladium references are responsive to Facebook's new infringement theory that sealing, securing, or encrypting functionalities allegedly satisfy the "validate" limitation. Instead, Facebook incorrectly alleges that the Tygar reference does not disclose DRM functionalities. Dkt. 100 at 8. Though Tygar does not recite the magic words, DRM, it does disclose functionalities associated with digital rights management. *See, e.g.*, Dkt. 91-15 (Ex. M) at 18 ("Tygar teaches the same functionality that Facebook alleges is infringing. For example, Tygar discloses using the security coprocessor to seal the audit trail or encrypt the executable to ensure that the file is not accessed without authorization."); *id.* at 22 ("When a user pays for the use of a program, a digitally signed certificate of the public key used by his secure coprocessor is sent to the software vendor."); *id.* ("The secure coprocessor-resident code should not, of course, consist of just access control . . . .").) As for the Palladium reference, Facebook appears to concede that DRM functionality is disclosed. Dkt. 100 at 8. Tellingly, Facebook is silent as to how Tygar and Palladium[2] would have been responsive to its initial infringement theories for the "dedicated security processor" and "validate" limitations in the '432 patent such that BlackBerry should have discovered them and recognized their relevance. Facebook's case, *Synopsys*, is distinguishable because the movant there initially alleged

---

[2] For the Palladium reference in particular, Facebook claims that there are millions of search results based on arbitrary search parameters, (Dkt. 100 at 6, n.3), but does not identify any of those search results that would have been relevant in view of Facebook's initial infringement contentions.

-6-  
CASE NO. 4:18-CV-05434-JSW  
REPLY ISO MOTION FOR LEAVE TO AMEND INVALIDITY CONTENTIONS

that its new prior art references became relevant due to the court's claim construction order, but eventually conceded that they were also relevant to its own proposed constructions. *Synopsys Inc. v. Mentor Graphics Corp.*, No. C-12-06467-MMC (DMR), 2014 WL 1477917, at *4 (N.D. Cal. Apr. 14, 2014). In contrast, the significance of the Tygar and Palladium references only became clear upon receipt of Facebook's new infringement theories.

Facebook also attempts to allege without support that BlackBerry should have been aware of the relevance of the DRM server earlier since the Peinado reference—charted in BlackBerry's initial contentions—disclosed DRM functionalities. But Peinado was not charted initially for its DRM disclosures—rather, it was charted because it separately discloses a secure coprocessor and rendering digital content, which are responsive to Facebook's initial infringement theories for the '432 patent. For example, the narrative descriptions of Peinado provided in BlackBerry's earlier invalidity contentions neither discussed DRM functionality with respect to the "dedicated security processor" limitation nor sealing, securing, or encrypting files with respect to the "validate" limitation. *See, e.g.*, Tse Decl., Ex. CC at 49, 68, 93-94. Only in BlackBerry's proposed supplemental Peinado invalidity chart—which Facebook does not oppose—did BlackBerry update its narrative responses to identify the DRM and encryption functionalities in response to Facebook's new infringement theories. *See, e.g.*, Dkt. 91-14 (Ex. L) at 30-31, 50, 70-71, 97, 125. Thus, the Peinado reference has no bearing on BlackBerry's diligence with respect to the Palladium reference.

### D. BlackBerry's Mills, Jr. And Umeno Supplementations Are Responsive To Facebook's Supplemental '698 Patent Contentions

Throughout the parties' briefing on Facebook's motion for leave to amend its '698 patent infringement contentions, BlackBerry consistently complained that Facebook had not adequately put BlackBerry on notice of what Facebook accused for the claimed "second data processor" and "second memory" limitations. Dkt. 59 at 1, 14; *see also* Dkt. 91-7 (Ex. E) at 15:6-17:17. Indeed, the parties met and conferred immediately after the September 12 hearing on Facebook's motion, where BlackBerry again explained that it had no idea what Facebook was accusing for those limitations— tellingly, Facebook acknowledged by agreeing to provide additional specificity. Dkt. 91-8 (Ex. F). Eventually, on September 24, 2019, Facebook served its Second Supplemental Infringement

Contentions, in which it explained that HAM or Guardian data processing functionalities and allocated memory space satisfy the "second data processor" and "second memory" limitations. *See, e.g*, Tse Decl., Ex. DD at 66-67 (explaining for the first time Facebook's infringement theory that "the accused 'second data processor' with respect to the HAM monitoring component is present in the HAM *software* that processes data" and "the accused 'second memory' for HAM is present in the ***memory reserved*** for the HAM process" (emphases added)). Though BlackBerry was still unsure as to Facebook's precise theory, Facebook's opposition confirms, at least at a high level, that it accuses "software" for the "second data processor" limitation and "allocated memory space and 'virtual' memory" for the "second memory" limitation. Dkt. 100 at 10.

Contrary to Facebook's allegations, this theory was not at all apparent in Facebook's initial contentions. Indeed, Facebook's own citations to its initial contentions (*id.* at 11) show the lack of clarity of Facebook's position. In the cited excerpt on page 11 of Facebook's opposition, for example, Facebook cherry picks a statement made with respect to the claimed "computer platform" limitation (Facebook's Ex. 2 at 8) and attempts to correlate it to a statement made nearly 30 pages later regarding an entirely different claim element: the second processor and memory (*Id.* at 44). Yet, it is clear that, in context, all Facebook had alleged regarding the second processor and memory was that the HAM "comprises a second data processing functionality and a second memory." *See, e.g.*, *id.* It was precisely this vague assertion that HAM comprises a second processor and memory that failed to put BlackBerry on fair notice of Facebook's theory. Indeed, claim 1 of the '698 patent is an apparatus claim that requires physical components, including a "monitoring component" comprising both "second data processor" and a "second memory"—not "software" or "allocated memory space." Moreover, the '698 patent teaches that a monitoring component having its own separate physical data processor and memory is a key aspect of the purported invention[3]—*n.b.*, HAM does not have its own

---

[3] *See, e.g.*, Dkt. 1-6 ('698 patent) at Abstract ("A computing entity comprises a trusted monitoring component having a first processing means and a first memory means, the trusted monitoring component being a self-contained autonomous data processing unit, and a computer platform having a main processing means and a main memory area . . . ."), 8:10-17 (explaining the best mode of the invention is a trusted monitoring component with its own processor and memory "physically and

separate processor or memory. Thus BlackBerry could not reasonably have understood Facebook's contentions to mean that computer software and virtual memory somehow meet the physical "second data processor" and "second memory" limitations. Even now, it strains credulity that this is Facebook's theory of infringement. Nevertheless, as soon as BlackBerry suspected that this might be Facebook's theory, it searched for and uncovered the Mills, Jr. and Umeno references and, on October 4, promptly served its proposed supplemental contentions.

### E. BlackBerry Timely Served Its Supplemental Contentions And Filed Its Motion

It was not until the September 12, 2019 hearing on Facebook's motion for leave to amend its infringement contentions that the Court intimated it would be appropriate to allow BlackBerry to serve supplemental invalidity contentions in response to Facebook's supplemental infringement contentions. Dkt. 91-7 (Ex. E) at 12:14-14:20; *see also* Dkt. 72 at 15. Accordingly, it was the September 12 hearing and the Court's subsequent order that triggered BlackBerry to assemble supplemental contentions and serve the same on Facebook—all of which it did within a matter of weeks.

Facebook also improperly takes issue with the December 20, 2019 filing date of BlackBerry's motion for leave, arguing that the delay in moving shows lack of diligence. Dkt. 100 at 13-14. Facebook is wrong. Indeed, Facebook's argument ignores the fact that BlackBerry diligently served its proposed supplementation on October 4, 2019, and the only reason the filing of BlackBerry's motion was delayed until December 20, 2019 was because the parties were engaged in ongoing meet and confer efforts. Facebook's own background summary (*id.* at 2) acknowledges that the parties were engaged in back-and-forth correspondence and meet and confers regarding the supplemental contentions and the scope of what Facebook would oppose. It was not until December 6, 2019 that "Facebook confirmed that it would not oppose amendment as to all but four references [in

---

logically distinct from the first data processor and first memory means [of the computer platform]"), 9:64-10:26 (explaining the importance of a separate trusted monitoring component with its own processor and memory, including, *inter alia*, that it is "tamper resistant" and "cannot be physically subverted by a local user, and cannot be logically subverted by either a local user or a remote entity"), 10:34-47 ("The computer entity comprises a user space 501 being a logical space which is physically resident on the computer platform (the first processor and first data storage means) and a trusted component space 502 being a logical space which is physically resident on the trusted component 202 ... supported by the second data processor and second memory area of the trusted component.").

1  BlackBerry's supplemental contentions]." *Id.*  And the only reason the actual motion was not filed
2  immediately thereafter was because BlackBerry agreed to accommodate Facebook's counsel with a
3  briefing schedule that avoided Facebook's counsel having to file an opposition during the holidays.
4  Dkt. 91-9 at 2-5.  Now Facebook kicks a gift horse in the mouth, alleging that BlackBerry was not
5  diligent in filing the motion sooner and seeking to have it dismissed on that basis.
6        Regardless, courts in this District have found that a delay of just a few months in moving to
7  amend contentions is sufficient to show diligence.  *See, e.g.*, *Karl Storz*, 2016 WL 2855260, at *6
8  (finding delay of more than four months diligent); *see also Radware Ltd. v. F5 Networks, Inc.*, No. C-
9  13-2024 RMW, 2014 WL 3728482, at *2 (N.D. Cal. Jan. 1, 2014) (finding three months diligent);
10 *Vasudevan Software, Inc. v. Int'l Bus. Machines Corp.*, No. C09-05897 RS HRL, 2011 WL 940263, at
11 *3 (N.D. Cal. Feb. 18, 2011) (finding four months diligent); *The Bd. Of Trustees of Leland Stanford
12 Junior Univ. v. Roche Molecular Sys., Inc.*, No. C 05-04158 MHP, 2008 WL 624771, at *3 (N.D. Cal.
13 Mar. 4, 2008) (same).  Moreover, Facebook's cited cases (Dkt. 100 at 13 (citing cases)) are inapposite,
14 as none dealt with similar circumstances as here, where the supplemental contentions were served
15 much earlier and the parties' own meet and confer efforts delayed the ultimate filing—all in the
16 context of a case schedule that posed no impending deadlines.  For example, in *Apple, Inc. v. Samsung
17 Elecs. Co., Ltd.*, the court found lack of diligence because the parties were on an expedited case
18 schedule, yet movant waited months to serve and move to amend its contentions.  No. 11-cv-01846-
19 LHK, 2012 WL 1067548, at *2-3 (N.D. Cal. Mar. 27, 2012).  And *Word to Info Inc. v. Facebook Inc.*
20 is wholly inapposite, as there the court denied patentee's motion for leave to amend its infringement
21 contentions because the patentee had waited over four months to even investigate its new infringement
22 theories, which were based on earlier claim constructions proposed by the other party.  No. 15-cv-
23 03485-WHO, 2016 WL 6276956, at *4-6 (N.D. Cal. Oct. 27, 2016).  Here, BlackBerry's amendments
24 were not triggered by proposed claim constructions, nor did BlackBerry wait over four months from
25 the triggering event to conduct its investigation.  Similarly, in *Verinata Health, Inc. v. Sequenom, Inc.*,
26 the movant waited over a year after it became aware of proposed claim constructions to seek
27 amendments that were responsive to those constructions, further delayed several months after the
28 court's claim construction order adopting those constructions before serving its amendments, and

waited another month to file its motion without *any* explanation for its delays. No. 12-cv-000865-SI, 2014 WL 789197, at *3 (N.D. Cal. Feb. 26, 2014).  Here, BlackBerry promptly served its contentions after the triggering event and has provided a clear explanation for any delays in filing the instant motion (*see supra*, §§ II.C-E).  Finally, in *EON Corp IP Holdings LLC v. Aruba Networks Inc.*, the court denied leave to amend the infringement contentions with nominal and "unnecessary" changes that the court determined should not have taken three months to prepare.  No. 12-cv-01011-JST, 2013 WL 6001179, at *2 (N.D. Cal. Nov. 12, 2013).  Here, BlackBerry's supplementation does not introduce "unnecessary" changes—it seeks to add several new prior art references directly responsive to Facebook's new infringement theories.

### F. The Court Should Exercise Its Discretion To Allow BlackBerry's Supplemental Contentions Regardless Of Its Findings On Diligence

Facebook also improperly argues that "there is no need to consider prejudice since BlackBerry has failed to demonstrate the required diligence." Dkt. 100 at 15.  This argument ignores the Court's "discretion to grant leave to amend even in the absence of diligence so long as there is no prejudice to the opposing party." *Karl Storz*, 2016 WL 2855260, at *3 (citing *Apple Inc. v. Samsung Elecs. Co.*, No. CV 12–00630 LHK, 2012 WL 5632618, at *5–6 (N.D. Cal. Nov. 15, 2012); *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. 10–cv–3724 CW, 2013 WL 5609325, at *3 (N.D. Cal. Oct. 11, 2013)).  "Courts have allowed amendments when the movant made an honest mistake, the request to amend did not appear to be motivated by gamesmanship, or where there was still ample time left in discovery." *Apple*, 2012 WL 5632618, at *5.  Here, the request is not motivated by gamesmanship—rather, it is in response to Facebook amending its infringement contentions and the Court intimating that it would be appropriate to grant BlackBerry leave to amend its invalidity contentions in response (*see supra*)—and there is still ample time left in discovery.  Indeed, "[i]t is generally permissible for a party to amend its invalidity contentions in response to the patentee amending its infringement contentions"—which is precisely the case here. *Synchronoss Techs., Inc. v. Dropbox Inc.*, No. 4:16-cv-00119-HSG (KAW), 2018 WL 5619743, at *6 (N.D. Cal. Oct. 29, 2018) (quoting *Adv. Micro Devices*, 2017 WL 2774339, at *6); *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. C 12-05501 SI, 2014 WL 1648175, at *2 (N.D. Cal. Apr. 23, 2014).  And, as explained below, there are no

impending deadlines or other scheduling issues that would prejudice Facebook.

Thus even assuming *arguendo* that the Court finds no diligence, it can and should exercise its discretion to grant BlackBerry's motion for leave.

### G. BlackBerry's Supplemental Contentions Will Not Unduly Prejudice Facebook

There is no prejudice to Facebook from BlackBerry's supplementation. "Prejudice is typically found when amending contentions stand to disrupt the case schedule or other court orders." *Karl Storz*, 2016 WL 2855260, at *3 (citing *WhatsApp Inc. v. Intercarrier Commc'ns, LLC*, No. 13-cv-04272 JST, Dkt. No. 81, at 7 (N.D. Cal. Sept. 3, 2014)). Here, there would be no such disruption because the initial case management conference is scheduled for February 28, and no discovery deadlines or trial date have been set. Thus Facebook will have "ample time to conduct any further discovery necessitated by [BlackBerry's] amendments." *THX, Ltd. v. Apple, Inc.*, No. 13-CV-01161-HSG, 2016 WL 1718137, at *3 (N.D. Cal. Apr. 29, 2016); *see also Synchronoss Techs.*, 2018 WL 5619743, at *6. BlackBerry's supplementation also will not disrupt any court order—including the claim construction order.

Tellingly, Facebook has not identified any specific prejudice from BlackBerry's supplementation, and only alleges purported prejudice in the abstract. For example, Facebook alleges "it had no opportunity to consider the belated new disclosures when formulating its claim construction positions and briefing" (Dkt. 100 at 15), yet does not identify a single claim construction issue affected by the supplementation. Indeed, Facebook's allegation of prejudice is contradicted by the very arguments it raised in seeking to amend its infringement contentions. Facebook alleged then that there was no concrete prejudice from its supplementation because "[BlackBerry] fails to explain how, if at all, the supplement *actually* impacts any claim construction position." Dkt. 62 at 8 (emphasis in original) (citing *Adv. Micro Devices, Inc. v. LG Elecs., Inc.*, No. 14-CV-01012-SI, 2017 WL 732896, at *5 (N.D. Cal. Feb. 24, 2017)). This was despite that BlackBerry had identified specific terms potentially affected by Facebook's supplementation. Here, Facebook has not even gone that far, and its allegations are entirely in the abstract. Facebook's *ipse dixit* proclamation of prejudice is therefore insufficient. *See, e.g.*, *Intri-Plex Techs., Inc. v. NHK Int'l Corp.*, No. 15-CV-01097-EMC-EDL, 2019 WL 920206, at *7 (N.D. Cal. Jan. 15, 2019), *report and recommendation adopted*, No. 17-CV-

01097-EMC, 2019 WL 917059 (N.D. Cal. Feb. 25, 2019) ("As to the issue that these invalidity grounds were not raised in the course of the claim construction proceedings, Plaintiff does not articulate how the prior art references Defendants seek to add would have changed those proceedings. The Court cannot apprehend any prejudice based solely on Plaintiff's conclusory argument that it exists."); *see also Twilio, Inc. v. TeleSign Corp.*, No. 16-CV-06925-LHK-SVK, 2017 WL 3581186, at *4 (N.D. Cal. Aug. 18, 2017) ("[Non-movant] did not ... identify a single, specific detriment that it would suffer as a result of allowing [movant] to amend at this early stage of the case."); *Monolithic Power Sys., Inc. v. Silergy Corp.*, No. 14-CV-01745-VC (KAW), 2015 WL 5440674, at *3 (N.D. Cal. Sept. 15, 2015) ("[V]ague statements professing undue prejudice without articulating any substantive ways in which it will be prejudiced…is insufficient.").

Moreover, that Facebook would have to respond to additional invalidity defenses (*see* Dkt. 100 at 15) is also not a basis for undue prejudice. *See, e.g., Karl Storz Endoscopy-Am.*, 2016 WL 2855260, at *9 ("At bottom, [non-movant's] prejudice arguments boil down to a complaint that the amendment will cause [it] to perform more work than it would have to perform otherwise. . . . But that is not prejudice."); *Synchronoss Techs.*, 2018 WL 5619743, at *6 (same); *Fujifilm*, 2014 WL 491745, at *6 (explaining that "any tax on [the non-movant's] resources is outweighed by [the movant's] right to develop new information in discovery, as well as the interest in considering material information to secure the just resolution of this action"); *Trans Video Elecs., Ltd. v. Sony Elecs.*, 278 F.R.D. 505, 509 n.2 (N.D. Cal. 2011), *aff'd*, 475 F. App'x 334 (Fed. Cir. 2012).

To be sure, "for prejudice under Patent Local Rule 3-6, 'the issue is not whether the defendant would be required to engage in additional work in response to [new amendments] ... [but] what incremental prejudice results from the *delay* in asserting those [amendments] (*e.g.*, inability to complete discovery because of approaching trial date)." *Synchronoss Techs.*, 2018 WL 5619743, at *6 (quoting *Trans Video Elecs.*, 278 F.R.D. at 509 n.2) (emphasis in original). Here, there is no such prejudice because there are no impending deadlines, and Facebook will have ample time to address the supplementation.

III. **CONCLUSION**

For the foregoing reasons, BlackBerry respectfully requests that the Court grant it leave to amend its invalidity contentions with Exhibits H-V attached to BlackBerry's Motion (Dkt. 91).

DATED: January 17, 2020

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Iman Lordgooei*
Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Jordan R. Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
Iman Lordgooei (Bar No. 251320)
imanlordgooei@quinnemanuel.com
Jonathan Tse (Bar. No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: 415-875-6600
Facsimile: 415-875-6700

James R. Asperger (Bar No. 83188)
jamesasperger@quinnemanuel.com
Yury Kapgan (Bar No. 218366)
yurykapgan@quinnemanuel.com
Pushkal Mishra (Bar No. 298695)
pushkalmishra@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Defendants BLACKBERRY LIMITED and BLACKBERRY CORPORATION