UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC.,<br><br>             Plaintiff,<br><br>    v.<br><br>BLACKBERRY LIMITED, et al.,<br><br>             Defendants. | Case No. 18-cv-05434-JSW   (JSC)<br><br>**REPORT AND RECOMMENDATION RE: DEFENDANT'S MOTION FOR LEAVE TO AMEND INVALIDITY CONTENTIONS**<br><br>Re: Dkt. No. 91 |

Plaintiff Facebook, Inc. ("Facebook") sues BlackBerry Limited and BlackBerry Corporation (together, "BlackBerry") alleging infringement of six patents, including U.S. Patent Nos. 7,228,432 ("'432 Patent") and 7,302,698 ("'698 Patent"). (Dkt. No. 1 at ¶ 2.)[1]  This matter is on referral from the district court for a report and recommendation. (Dkt. No. 92.)  BlackBerry moves for leave to amend its invalidity contentions pursuant to Patent Local Rule 3-6 and in response to Facebook's second supplemental infringement contentions as to the '432 and '698 Patents. (Dkt. No. 91.)  Facebook opposes the motion. (Dkt. No. 100.)  After careful consideration of the parties' briefing and having had the benefit of oral argument on February 13, 2020, the Court recommends that the district court GRANT BlackBerry's motion.

**BACKGROUND**

**I.    The Parties' Supplemental Contentions**

On September 17, 2019, and after hearing oral argument on September 12, the undersigned issued a report and recommendation to the district court regarding Facebook's August 2019 motion to amend its infringement contentions. (Dkt. No. 72.)  The Court recommended granting Facebook's motion because Facebook was diligent in discovering the bases for its proposed

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

amendments and in seeking amendment, and BlackBerry would not be unduly prejudiced.  (*Id.* at 17.)  The Court's recommendation stated that the parties should meet and confer if BlackBerry "believe[d] in good faith that Facebook's amendments necessitate[d] amendment of BlackBerry's invalidity contentions."  (*Id.* at 18.)  The parties then stipulated to accept the Court's recommendation "as a binding order," (Dkt. No. 73), and the district court granted that stipulation, (Dkt. No. 76).  The Court's September 17 Order sets forth the relevant background of this case through the September 12 hearing, (*see* Dkt. No. 72 at 1-5), and the Court incorporates that background here.

BlackBerry served its initial invalidity contentions on February 25, 2019.  (*Id.* at 2.)  The initial contentions "included 160 references in 83 invalidity charts."  (Dkt. No. 91-1 at ¶ 2.)  BlackBerry served its first supplemental invalidity contentions on March 26, 2019.  (Dkt. No. 91-10, Ex. H at ¶ 2 n.1.)

Following the Court's September 17 Order, Facebook served its second supplemental infringement contentions on September 24, 2019.  (Dkt. No. 91-1 at ¶ 6.)  BlackBerry responded with its proposed second supplemental invalidity contentions on October 4, 2019.  (*Id.* at ¶ 7.)  BlackBerry's proposal contains 10 supplemental invalidity charts, three of which are amendments to existing invalidity charts from BlackBerry's initial invalidity contentions: session initial protocol ("SIP") chart;'261 Patent ("Gudjonsson") chart; and '333 Patent ("Peinado") chart.  (*Id.* at 7.)  Facebook does not oppose leave to amend as to those supplementations.  (*See* Dkt. No. 100 at 5 n.1.)

The other seven supplementations concern the following prior art references that BlackBerry attests were "discovered, analyzed, and charted" after the September 12, 2019 hearing: "A Video Gateway to Support Video Streaming to Mobile Clients" article ("Meggers"); "The MECCANO Internet Multimedia Conferencing Architecture" article ("MECCANO"); "Secure Communication Infrastructure for Mobile Computing" article ("Kawano"); "Dyad: A System for Using Physically Securing Coprocessors" article ("Tygar"); the Microsoft Palladium system ("Palladium"); U.S. Patent No. 4,524,415 ("Mills, Jr."); and U.S. Patent No. 5,437,033

2

("Umeno").[2]  (Dkt. No. 91-1 at ¶ 5.)  Facebook opposes leave to amend only as to the Tygar and Palladium references for the '432 Patent and the Mills, Jr. and Umeno references for the '698 Patent.  (Dkt. No. 91-9, Ex. G at 5; *see also* Dkt. No. 100 at 5 n.1.)

On October 4, 2019, Facebook emailed BlackBerry after receiving its supplemental invalidity contentions and requested that BlackBerry explain its good cause for the amendments "on an item-by-item basis."  (Dkt. No. 91-9, Ex. G at 13-14.)  BlackBerry responded by email on October 7, stating that its supplementations were based on "Facebook's new infringement theories presented in its supplemental infringement contentions as served on June 19, 2019 and September 24, 2019."  (*Id.* at 13.)  Facebook responded the next day and again requested an "item-by-item" explanation of good cause, citing the Tygar chart as an example of a reference "that BlackBerry could have included in its original invalidity contentions."  (*Id.* at 12.)

On November 13, 2019, BlackBerry emailed Facebook the requested item-by-item explanation.  (*Id.* at 8.)  Facebook's counsel responded 36 minutes later and asked whether it could share the email with its client given that the email contained potential "BlackBerry confidential information."  (*Id.*)  Facebook emailed BlackBerry with the same question on November 19 after BlackBerry failed to respond.  (*Id.* at 7-8.)  On November 22, Facebook emailed the following: "Following up again – can you please answer our questions from November 13 as to whether we can share your November 13 email with our client, or please let us know any redactions?"  (*Id.* at 7.)  BlackBerry responded that day and stated that Facebook's counsel could share the November 13 email with its client.  (*Id.*)

The parties met and conferred on December 5 regarding BlackBerry's proposed supplementations; after the meeting Facebook indicated that it would oppose BlackBerry's motion to amend only as to the four references noted above.  (*Id.* at 5-6; *see also* Dkt. No. 91-1 at ¶ 8.)  BlackBerry emailed Facebook on December 9 stating that it intended to file its motion for leave to amend its invalidity contentions.  (Dkt. No. 91-9, Ex. G at 5.)  The next day BlackBerry informed Facebook:

---

[2] The Court adopts the names used by the parties to identify the prior art references.

> [W]e received productions of documents from Microsoft in mid and late November that are relevant to the Palladium reference. We intend to serve a further supplemental chart that cites those documents as well, for which there is good cause due to the recent production from third party (i.e., Microsoft).

(*Id.* at 3.) BlackBerry sent the supplemental Palladium chart to Facebook on December 17, and two days later Facebook confirmed that it still opposed the Palladium reference. (*Id.* at 2.) BlackBerry filed the instant motion on December 20, 2019.

## II. District Court Proceedings Subsequent to the September 17 Order

On December 13, 2019, the district court issued its claim construction order following a *Markman* hearing on November 21. (Dkt. Nos. 87 & 90.) The district court has not issued a scheduling order in this case. (*See* Dkt. No. 99 at 2.) An initial case management conference is scheduled for February 28, 2020; there are no other hearing dates or deadlines pending. (*Id.*)

## DISCUSSION

As an initial matter, because Facebook opposes only four of BlackBerry's 10 proposed supplemental contentions, (*see* Dkt. No. 100 at 5 n.1), the Court recommends granting leave to amend as to the unopposed supplementations: the Gudjonsson, Kawano, MECANNO, Meggers, Peinado, and SIP charts. This report and recommendation addresses only the supplemental contentions opposed by Facebook.

### A. Legal Standard

The Patent Local Rules "exist to further the goal of full and timely discovery and to provide all parties with adequate notice and information with which to litigate their cases." *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l Inc.*, No. C 03-1431 SBA, 2006 WL 1329997, at *4 (N.D. Cal. May 15, 2006). "The [R]ules are designed to require parties to crystallize their theories of the case early in litigation and to adhere to those theories once they have been disclosed." *Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D. Cal. 2006). Thus, the Rules "require both the plaintiff and the defendant . . . to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365-66 (Fed. Cir. 2006).

Patent Local Rule 3-6 allows a party to amend its invalidity contentions "only by order of the Court upon a timely showing of good cause." The Rule provides the following "[n]on-exhaustive examples of circumstances that may, absent undue prejudice to the non-moving party, support a finding of good cause":

> (a)  A claim construction by the Court different from that proposed by the party seeking amendment;
>
> (b)  Recent discovery of material, prior art despite earlier diligent search; and
>
> (c)  Recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions.

Patent L.R. 3-6(a)-(c).

The moving party has the burden of demonstrating good cause. *02 Micro*, 467 F.3d at 1366. The good cause inquiry is two-fold, addressing: (1) "whether the moving party was diligent in amending its contentions"; and (2) "whether the non-moving party would suffer prejudice if the motion to amend were granted." *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587-WHO, 2014 WL 491745, at *3 (N.D. Cal. Feb. 5, 2014). If the court determines that the moving party was not diligent, the inquiry may end there. *See Acer, Inc. v. Tech. Props. Ltd.*, 08-cv-00877 JF/HRL, 2010 WL 3618687, at *5 (N.D. Cal. Sept. 10, 2010). However, the court retains discretion to grant leave to amend in the absence of diligence if there is no undue prejudice to the opposing party. *See, e.g., Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-cv-00876-RS (JSC), 2016 WL 7386136, at *3 (N.D. Cal. Dec. 21, 2016) (citing *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. C 10-3724 CW, 2013 WL 5609325, at *2 (N.D. Cal. Oct. 11, 2013)); *Apple Inc. v. Samsung Elecs. Co., Ltd.*, No. CV 12-00630 LHK, 2012 WL 5632618, at *6 (N.D. Cal. Nov. 15, 2012)).

**B.     Good Cause**

Courts in this Circuit have recognized that "[i]t is generally permissible for a party to amend its invalidity contentions in response to the patentee amending its infringement contentions." *See, e.g., Synchronoss Techs., Inc. v. Dropbox Inc.*, No. 4:16-cv-00119-HSG (KAW), 2018 WL 5619743, at *6 (N.D. Cal. Oct. 29, 2018) (internal quotation marks omitted)

5

(citing *Advanced Micro Devices, Inc. v. LG Elecs., Inc.*, No. 14-cv-01012-SI, 2017 WL 2774339, at *6 (N.D. Cal. June 26, 2017)). With that proposition in mind, the Court considers whether BlackBerry has met its burden of demonstrating good cause to amend its invalidity contentions and concludes that it has done so.

### 1. Diligence

"[T]he diligence required for a showing of good cause has two phases: (1) diligence in discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for amendment has been discovered." *Positive Techs., Inc. v. Sony Elecs., Inc.*, No. C 11-2226 SI, 2013 WL 322556, at *2 (N.D. Cal. Jan. 28, 2013). The moving party "bears the burden of establishing diligence." *CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 201 (N.D. Cal. 2009).

#### a. Diligence in discovering bases for proposed amendments

The critical issue in determining whether BlackBerry was diligent in discovering the bases for its proposed amendments is whether BlackBerry "could have discovered [the new information] earlier had it acted with the requisite diligence." *Symantec Corp. v. Acronis Corp.*, No. 11-5310 EMC (JSC), 2013 WL 5368053, at *4 (N.D. Cal. Sept. 25, 2013) (alteration in original) (internal quotation marks and citation omitted). BlackBerry asserts that it was diligent in discovering the prior art references at issue because it discovered those references "only in response to Facebook's identification of new infringement theories in its amended infringement contentions," and after the undersigned indicated at the September 12 hearing on Facebook's motion for leave to amend its infringement contentions that "she would grant Facebook's motion . . . and intimated that it would be appropriate for BlackBerry to serve responsive invalidity contentions." (Dkt. No. 91 at 10.) Facebook counters that "all four references easily could have been discovered in a reasonably diligent search prior to [the service of] BlackBerry's original [invalidity] contentions" in February 2019. (Dkt. No. 100 at 8.) The Court addresses the first step of the diligence inquiry as it applies to each of the prior art references at issue.

//

//

### i. Tygar

The Tygar reference is an academic article published by Carnegie Mellon University in 1991. (Dkt. No. 91-15, Ex. M at 2.) The Tygar chart states that Tygar anticipates the asserted claims of the '432 Patent: claim 1, and dependent claims 3-6. (*Id.*) The Tygar reference is available online. *See* https://people.eecs.berkeley.edu/~tygar/papers/Dyad/tygar91dyad.pdf.

As noted in the September 17 Order, Facebook's supplemental infringement contentions identified for the first time BlackBerry's Workspaces Digital Rights Management ("DRM") server as meeting the "dedicated security processor" limitation of claim 1 of the '432 Patent. (Dkt. No. 72 at 7.) BlackBerry asserts that it was diligent in discovering the Tygar reference because its significance "only became clear upon receipt of Facebook's new infringement theories" that the DRM server "allegedly satisfied the 'dedicated security processor' limitation and that sealing, securing, or encrypting functionalities allegedly satisfied the 'validate' limitation." (Dkt. No. 91 at 10-11.)

Facebook counters that BlackBerry could have discovered the Tygar reference with reasonable diligence because "[t]he '432 Patent describes a system and related techniques for implementing a 'security co-processor' in a computer system in addition to an existing processor (such as a standard CPU) to perform certain functions," and the Tygar reference is a publication that is "readily available online" and "entirely devoted to discussing the use, benefits, and implementation of a 'secure coprocessor.'" (*Id.* at 8 (citing Dkt. No. 1-4, Ex. D at 2:31-34, 2:37-40, 4:17-20, 6:33-8:24), 11 (emphasis omitted).) Facebook notes that its complaint "explained in detail how the exemplary 'security co-processor' in the '432 Patent provides certain benefits." (Dkt. No. 100 at 8 (citing Dkt. No. 1 at ¶¶ 71-72).) Facebook further argues that the Tygar reference is not relevant to Facebook's supplemental infringement contentions because Tygar does not even mention "'DRM,' a DRM server, or 'digital rights management.'" (Dkt. No. 100 at 12 ("Searching for prior art using those search terms would not yield this reference.").) In other words, Facebook asserts that BlackBerry is using Facebook's supplemental infringement contentions as a pretext to introducing a reference that could have been included in BlackBerry's previous invalidity contentions. The Court is not persuaded.

Facebook is correct that the title of the publication suggests it is relevant to the complaint's discussion of the examples taught by the '432 Patent involving a "security co-processor." (*See* Dkt. No. 1 at ¶¶ 71-72.)  However, the Court is not completely satisfied that Tygar would have been responsive to Facebook's initial infringement contentions such that BlackBerry should have discovered the reference earlier based solely on the "security co-processor" language.  That the reference was "easily discoverable using the '432 Patent's terminology" fails to show lack of diligence if the reference was not responsive to Facebook's infringement contentions prior to their supplementation.  *See Finjan, Inc. v. Symantec Corp.*, No. 14-cv-02998-HSG (JSC), 2018 WL 620169, at *1 (N.D. Cal. Jan. 30, 2018) (discussing the purpose of infringement and invalidity contentions "to require parties to crystallize their theories of the case early in the litigation," and "[o]nce served, the contentions constitute the universe of the parties' respective theories") (internal quotation marks and citation omitted); *see also Stryker Corp.*, 2016 WL 2855260, at *5 (noting that "the mere possibility that [defendant] might have discovered the references earlier does not defeat its diligence").  Further, "[t]he good cause requirement does not require perfect diligence." *See Fujifilm Corp.*, 2014 WL 491745, at *4.

As for Facebook's argument that Tygar does not mention "DRM" or "digital rights management," (*see* Dkt. No. 100 at 12), and Tygar is "not rendered relevant only by DRM," BlackBerry counters that Tygar "disclose[s] functionalities associated with digital rights management, (*see* Dkt. No. 102 at 10 (citing Dkt. No. 91-15, Ex. M at 18, 22 (Tygar chart)).). Whether Tygar does disclose such functionalities goes to the merits of BlackBerry's defense, not its diligence in discovering the Tygar reference based on Facebook's supplemental infringement contentions.  *See Symantec Corp.*, 2018 WL 620169, at *1 (noting that parties "need not 'prove up' their theories [of infringement or invalidity] by providing evidence beyond the material they have at the time they make their contentions") (internal quotation marks and citation omitted).

While the issue is close, the Court recommends that the district court find that BlackBerry was sufficiently diligent in discovering the Tygar reference.

//

//

### ii. Palladium

Microsoft Palladium was an operating platform that "was publicly known and used at least by June 2002." (Dkt. No. 91-16, Ex. N at 2.) The Palladium chart states that Palladium and its related references anticipate the asserted claims of the '432 Patent: claim 1, and dependent claims 3-6. (*Id.*) The Palladium reference comprises several publications and U.S. Patent No. 6,330,670. (*Id.* at 3.)

BlackBerry asserts that Facebook's supplementation identifying the DRM "features provided by a server as purportedly meeting the 'dedicated security processor' limitation of the '432 Patent" required BlackBerry to supplement its "invalidity contentions to identify additional prior art references that disclose DRM servers, including Microsoft's Palladium prior art system."[3] (Dkt. No. 91 at 4.) Facebook repeats the argument used in opposition to the Tygar reference: "Palladium was well-known and easily discoverable using the '432 Patent's terminology"; specifically, the "security coprocessor" language. (Dkt. No. 100 at 9.) Thus, Facebook argues that "BlackBerry fails to show that it could not have discovered Palladium with reasonable diligence prior to its February 25, 2019 invalidity contentions." (*Id.*)

That argument is unpersuasive for the reasons previously stated: even if Palladium was "easily discoverable using the '432 Patent's terminology," there is no lack of diligence if the reference was not responsive to Facebook's infringement contentions prior to their supplementation. *See Symantec Corp.*, 2018 WL 620169, at *1 (noting that "[o]nce served, the contentions constitute the universe of the parties' respective theories"). Similarly, Facebook's argument that "Palladium was an independent technology that was not necessarily concerned with DRM," (*see* Dkt. No. 100 at 12), goes to the merits of BlackBerry's defense, not its diligence in discovering the reference based on Facebook's infringement contentions, *see Symantec Corp.*,

---

[3] BlackBerry attests that it: "previously subpoenaed Microsoft on June 18, 2019 and contacted Microsoft on October 4 and 7 to set up a call for October 14 to discuss whether Microsoft possessed any documents related to the Palladium prior art. Microsoft agreed to look for documents related to the Palladium prior art. BlackBerry received Microsoft's first production on November 12, 2019 and its second production on November 27, 2019. BlackBerry served the proposed Palladium chart containing Palladium documents from Microsoft's production on December 17, 2019." (Dkt. No. 91-1 at ¶ 9.)

9

2018 WL 620169, at *1 (noting that parties "need not 'prove up' their theories [of infringement or invalidity] by providing evidence beyond the material they have at the time they make their contentions") (internal quotation marks and citation omitted).

Again, while the issue is close, the Court recommends that the district court find that BlackBerry was sufficiently diligent in discovering the Palladium reference.

### iii. Mills, Jr. and Umeno

The Mills, Jr. reference is a U.S. patent issued in 1985. (Dkt. No. 91-22, Ex. T at 2.) The Umeno reference is a U.S. patent issued in 1995. (Dkt. No. 91-23, Ex. U at 2.) The Mills, Jr. and Umeno charts respectively state that the patents anticipate the asserted claims of the '698 Patent: claims 1, 3, and 20. (*See* Dkt. Nos. 91-22, Ex. T at 2 & 91-23, Ex. U at 2.) Facebook accuses BlackBerry's QNX operating system of violating those claims. (Dkt. No. 102-3, Ex. DD at 2.)

BlackBerry argues that it was diligent in discovering the references because both Mills, Jr. and Umeno are responsive to "concepts that Facebook first introduced in its supplemental infringement contentions." (Dkt. No. 91 at 12.) Facebook counters that BlackBerry fails to demonstrate diligence because the Mills Jr. and Umeno patents were "decades old" and "publicly available," and both "use language nearly identical to the asserted '698 Patent claims." (Dkt. No. 100 at 13-14.) Facebook further asserts that its complaint and initial infringement contentions accused the same relevant features contained in its supplemental infringement contentions. (*Id.* at 14-17.) The Court agrees that BlackBerry could have discovered the references earlier through a reasonably diligent search.

BlackBerry does not dispute Facebook's contention that the asserted claims of the '698 Patent "recite a technique for '*monitoring*' the '*state*' of a computer platform having a '*data processor*' and '*memory*' using a monitoring component with a second '*data processor*' and second '*memory*,' including '*recording state data*' describing a current operating state." (*See* Dkt. No. 100 at 13 (quoting Dkt. No. 1-6, Ex. F ('698 Patent claims 1, 3, 20).) BlackBerry likewise does not dispute Facebook's characterization of the Mills Jr. patent as describing "a computer system with a '*data processor*' and '*memory*' that are used in connection with '*state*' information, including '*stored state information*.'" (*See id.* at 14 (quoting Dkt. No. 91-22, Ex. T.) Nor does

10

BlackBerry dispute Facebook's characterization of the Umeno patent as describing "a '*monitor*' function performed by a component relating to '*state*' information, such as '*State Description*' and information regarding the '*current state*.'" (*See id.* (quoting Dkt. No. 91-23, Ex. U.)

BlackBerry asserts that it "understands that Facebook's current infringement theories are that the High Availability Manager ('HAM') or Guardian data processing functionalities and allocated memory space satisfy the 'second data processor' and 'second memory' limitations"; specifically, Facebook "accuses 'software' for the 'second data processor' limitation and 'allocated memory space and "virtual" memory' for the 'second memory' limitation." (Dkt. No. 91 at 11-12.) Thus, BlackBerry asserts that in response to Facebook's supplemental infringement contentions, it discovered "the Mills Jr. and Umeno references, which are directed to virtual processing functionality and virtual memory space." (Dkt. No. 91 at 12.)

However, as Facebook notes, its initial infringement contentions "explicitly accused 'software data processing functionality' and 'virtual memory' for the claimed 'data processor' and 'memory' features, including the accused 'second data processor' and 'second memory.'" (Dkt. No. 100 at 15 (quoting Dkt. No. 100-3, Ex. 2 at 44-54, 66-72, 84-104, 106-110, 112-140, 157-201).) Indeed, Facebook's initial infringement contentions state, in pertinent part:

> QNX Neutrino implementations include physical and logical resources including ***data processors*** (hardware and/or ***software data processing functionality***) and ***memory***. . . . QNX Car uses ***both virtual and physical memory*** to store its processes.
>
> . . .
>
> BlackBerry 10 OS contains a ***"software watchdog" that is a monitoring component comprising a second data processor and a second memory*** . . . The ***High Availability Manager*** in QNX Neutrino RTOS, including in QNX Car, ***comprises a second data processing functionality and a second memory***.

(Dkt. No. 100-3, Ex. 2 at 8 (emphasis added).) That language indicates that as of January 8, 2019, BlackBerry was sufficiently on notice of, at the very least, that Facebook's high-level theory of infringement *could* involve the features BlackBerry asserts are relevant to the Mills Jr. and Umeno references—"virtual processing functionality and virtual memory space." (*See* Dkt. No. 91 at 12.) Thus, because the Mills Jr. and Umeno patents are publicly available and relevant to Facebook's

11

asserted claims for the '698 Patent, and BlackBerry was on notice of Facebook's theory of infringement underlying those claims, BlackBerry fails to demonstrate that it could not have discovered the references earlier through a diligent search. *See Google, Inc. v. Netlist, Inc.*, Nos. C 08-4144 SBA, C 09-5718 SBA, 2010 WL 1838693, at *2 (N.D. Cal. May 5, 2010) (noting that the "critical issue" in determining diligence "is not *when* [defendant] discovered this information, but rather, whether they *could have* discovered it earlier had it acted with reasonable diligence").

Accordingly, the Court recommends that the district court find that BlackBerry was *not* diligent in discovering the Mills, Jr. and Umeno patents, although this issue, too, is close. As previously discussed, however, a lack of diligence is not dispositive. *See, e.g., Stryker Corp.*, 2016 WL 7386136, at *5 ("[E]ven if the movant was arguably not diligent, the Court may still grant leave to amend.") (internal quotation marks omitted) (collecting cases). Thus, the Court addresses the remaining prongs of the good cause inquiry.

Plaintiff's reliance on *Synopsys Inc. v. Mentor Graphic Corp.*, No. C-12-06467-MMC (DMR), 2014 WL 1477917 (N.D. Cal. Apr. 14, 2014) for the proposition that the Court need not address the remaining prongs because BlackBerry fails to show diligence in discovering the prior art is unavailing. The defendant in *Synopsys* moved for leave to amend its invalidity contentions after the district court had issued a claim construction order and after the court had already denied in part and granted in part defendant's prior motion to amend. 2014 WL 1477917, at *1. The magistrate judge addressed defendant's second motion to amend on discovery referral from the district court after a case schedule had issued with fact and expert discovery deadlines and a trial date. *See id.* The court noted that "[w]here the moving party is unable to show diligence, there is no need to consider the question of prejudice, although a court in its discretion may elect to do so." *Id.* (internal quotation marks and citations omitted).

The defendant sought leave to amend in pertinent part to add six prior art references and argued "first and foremost that good cause to amend existed because the claim construction order adopted definitions different from those proposed by [the defendant]." *Id.* at *3. The court noted, however, that at the hearing on the motion the defendant "argued that its primary rationale for the existence of good cause is that it recently discovered the new prior art references despite its earlier

12

diligent search." *Id.* The court determined that "the totality of the circumstances weigh[ed] against granting leave to amend" for several reasons. *Id.* at *4. First, the court noted that despite the defendant's argument in the joint discovery letter "that five of the six proposed prior art references are only relevant as a result of the claim construction order, [the defendant] conceded at the hearing that all of the new prior art references [the defendant] seeks to add would have been relevant to [*the defendant's*] proposed construction." *Id.* Second, the defendant "filed a formal *inter partes* review" of the patent at issue that listed some of the prior art references; thus, the court determined that the defendant "could have proposed amendments to its invalidity contentions at least by that date." *Id.*; *see also* Defendant's Discovery Letter Brief, 12-cv-06467-MMC, (N.D. Cal. Feb. 19, 2014), Dkt. No. 129 at 1 (raising issue of defendant's "desire to amend its invalidity contentions"). Finally, the court noted that, at least with respect to one of the references, the product was "13 years old," was developed by the defendant's subsidiary, "and had been in [the defendant's] possession." 2014 WL 1477917, at *4. The court found that the defendant failed show diligence and thus declined to consider whether the plaintiff "[would] be prejudiced by the proposed amendments." *Id.*

The facts found by the *Synopsys* court are not present here. First, BlackBerry has explained that the bases for its proposed supplementations are Facebook's supplemental infringement contentions, not the district court's December 2019 claim construction order. And BlackBerry's position as to good cause did not change between its motion and oral argument. Second, as to the relevance of *inter partes* review, Facebook notes that on September 13, 2019, BlackBerry filed "in support of a petition for inter partes review . . . of the '432 Patent . . . a 36-page expert declaration . . . that extensively discussed the Palladium system," (*see* Dkt. No. 100 at 9). However, that fact alone does not suggest that BlackBerry "could have proposed amendments to its invalidity contentions at least by that date," *see Synopsys*, 2014 WL 1477917, at *4, because the Court indicated at the September 12 hearing that it was inclined to grant Facebook's motion to amend its infringement contentions and BlackBerry indicated that it would serve its amended invalidity contentions in response within three weeks. BlackBerry did so. Finally, there is no argument that any of one of the prior art references at issue were in BlackBerry's possession prior

13

to Facebook's initial service of its supplemental infringement contentions in June 2019.  To put it another way, the lack of diligence in *Synopsys* was clear, while here the question is much closer.

Because the Court retains discretion to consider the remaining good cause factors, *see, e.g., Stryker Corp.*, 2016 WL 7386136, at *5 (collecting cases), it will exercise that discretion.

### b. Diligence in seeking amendment

BlackBerry asserts that it was diligent in seeking amendment because it served its proposed supplementations roughly three weeks after the September 12 hearing wherein the undersigned "intimated that BlackBerry may amend its own contentions in response to Facebook's supplementation," and it filed the instant motion after meeting and conferring on the issue over the course of the next two and a half months. (Dkt. No. 91 at 7.)  Facebook counters that BlackBerry was not diligent because it "did not file the present motion until December 20, 2019—more than three months after the September 12, 2019 hearing and six months after BlackBerry received Facebook's amended contentions on June 18, 2019." (Dkt. No. 100 at 17.)  BlackBerry's reply asserts that the "September 12 hearing and the Court's subsequent order" were the "trigger[ing]" events for the instant motion.  The Court agrees that the "trigger for amending" BlackBerry's invalidity contentions is "undoubtedly" the Court's September 17 Order granting Facebook's motion to amend its infringement contentions, not the date Facebook originally served those contentions in June 2019.  *See Dropbox Inc.*, 2018 WL 5619743, at *5.

Facebook argues that "even if BlackBerry were justified in waiting until after the September 12, 2019 hearing, BlackBerry still did not file this until more than three months later." (Dkt. No. 100 at 18.)  In support of that argument, Facebook points to BlackBerry's "particularly lackadaisical approach after disclosing its proposed amendments on October 4, 2019." (*Id.*) Although it is a close call, the concludes that BlackBerry acted diligently in moving to amend after serving its proposed supplementations on October 4, 2019.

To recap: At the hearing on September 12, the Court indicated to BlackBerry that it would allow Facebook to serve its supplemental contentions and asked BlackBerry when it could serve its invalidity contentions in response. (*See* Dkt. No. 74 at 12:19-14:3, 21:14-16.)  BlackBerry stated that it would serve its supplemental invalidity contentions within three weeks. (*Id.* at 13:24-

25.) The Court issued its Order on September 17, and Facebook served its second supplemental infringement contentions a week later. BlackBerry then served its proposed second supplemental invalidity contentions on October 4. Facebook responded that day and requested an explanation of good cause for each of BlackBerry's ten proposed supplementations "to help the parties identify and narrow the issues for any meet and confer that may be required." (Dkt. No. 91-9, Ex. G at 14.) BlackBerry's response on October 7 did not provide the requested item-by-item explanation.

On October 8, 2019, Facebook reiterated its request for an item-by-item explanation of good cause. BlackBerry did not respond to that request until November 13—over five weeks later. When Facebook finally received BlackBerry's item-by-item explanation, its counsel immediately asked if it could share that information with its client. BlackBerry again delayed in responding to Facebook's inquiry.

After the parties met and conferred on December 5 and Facebook indicated that it would oppose BlackBerry's motion only as to Tygar, Palladium, Mills Jr., and Umeno references, BlackBerry emailed Facebook on December 9 stating that it intended to file its motion for leave to amend its invalidity contentions. However, BlackBerry informed Facebook the following day that it had received discovery from Microsoft regarding the Palladium reference in "mid and late November" and that BlackBerry would supplement the proposed Palladium chart accordingly. (Dkt. No. 91-9, Ex. G at 5.) BlackBerry sent the supplemental Palladium chart to Facebook on December 17, and two days later Facebook confirmed that it still opposed the Palladium reference. (*Id.* at 2.) BlackBerry filed the instant motion on December 20, 2019.

In total, 11 weeks passed between the time BlackBerry served its supplemental invalidity contentions and filed the instant motion. That period of time itself does not indicate a lack of diligence. *See, e.g., Stryker Corp.*, 2016 WL 2855260, at * 6 (finding delay of "four-plus months" diligent). However, the record demonstrates that after serving its proposed supplementations on October 4, BlackBerry ignored for five weeks Facebook's attempts to narrow the issues and was not responsive to Facebook's emails. The question then is whether BlackBerry's post-notice conduct demonstrates a lack of diligence in seeking amendment. The Court concludes that it does not because BlackBerry was diligent in providing *notice* of the proposed supplementations on

October 4, roughly three weeks after the September 12 hearing and roughly two weeks after the Court's September 17 Order. *See, e.g., Stryker Corp.*, 2016 WL 2855260, at *7 (recognizing with approval that "courts in this District have held that mere notice, short of an actual motion, can be sufficient for diligence") (citing *The Bd. of Tr. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, No. C 05-04158 MHP, 2008 WL 624771, at *3 (N.D. Cal. Mar. 4, 2008) (finding four-month delay diligent where "[plaintiff] was arguably not diligent in pursuing amendment with th[e] court," but was diligent in providing defendant with *notice* of amended contentions); *IXYS Corp. v. Advanced Power Tech., Inc.*, 321 F. Supp. 2d 1133, 1159 n.19 (N.D. Cal. 2004) ("While [defendant's] motion makes clear that it has not complied fully with the letter of the local rules, the court finds that [plaintiff] has long been on notice of these potential combination[s].")).[4]

Facebook had been on notice of the proposed supplementations for over one month prior to the claim construction hearing and over two months prior to BlackBerry filing the instant motion. Further, it bears emphasizing that the parties meet and confer efforts were not conducted under the time constraints of any impending case deadlines because there is no scheduling order. Thus, BlackBerry's conduct does not run afoul of the twin aims of the Patent Local Rules: "prevent[ing] the parties from shifting their theories in reaction to adverse substantive rulings, or late in discovery, leaving the opposing party with little time to conduct discovery on a new theory." *See Yodlee, Inc. v. CashEdge, Inc.*, No. C 05-01550 SI, 2007 WL 1454259, at *2 (N.D. Cal. May 17, 2007) (citations omitted).

Facebook's reliance on *Catch a Wave Techs., Inc. v. Sirius XM Radio, Inc.*, No. C 12-05791 WHA, 2014 WL 186405 (N.D. Cal. Jan. 16, 2014) is misplaced. There the court addressed the parties' respective motions to amend contentions that were filed nearly a year *after* the court issued a case management order setting fact and expert discovery deadlines and a trial date. *See*

---

[4] As the Court explained at oral argument, BlackBerry's five-week delay in responding to Facebook's request for an item-by-item explanation is not otherwise acceptable. The Court expects that if BlackBerry could not promptly provide Facebook with the information it was seeking, counsel would have the courtesy of acknowledging the request and letting Facebook know when it expected to be able to respond.

2014 WL 186405, at *1 ("Now, in December 2013 and January 2014, the parties seek to amend their contentions with less than a month remaining in fact discovery and when the trial is set to begin in May."). The court concluded, in pertinent part: "Even if defendant was diligent in its prior art search, no acceptable explanation has been provided for why defendant waited, in some cases two months, after it 'discovered' the references to move to amend its invalidity contentions. A conclusory and self-serving statement of 'diligence' does not suffice." *Id.* at 2.

Here, there is no scheduling order, so the overarching concern in *Catch a Wave* is not present. Further, BlackBerry has explained that it was waiting on third-party discovery to supplement the Palladium chart and engaging in meet and confer efforts with Facebook prior to filing the instant motion. Under such circumstances, BlackBerry has sufficiently demonstrated the requisite diligence in seeking amendment.

### 2. Prejudice

Courts typically find prejudice when amending contentions will "disrupt the case schedule or other court orders." *Id.* at *3; *see also Dropbox Inc.*, 2018 WL 5619743, at *6 ("As an initial matter, [defendant's] amendments do not appear to disrupt the case schedule or other court orders, and are therefore not prejudicial to [plaintiff], as far as the timing of the case goes."). As previously discussed, the district court has not issued a case scheduling order. Thus, there is no prejudice to Facebook in terms of case management because BlackBerry's proposed supplementations would not disrupt fact or expert discovery, or any other scheduling deadlines.

Further, the Court's recommendation to grant Facebook leave to amend its infringement contentions was based in part on the Court's determination that "any potential prejudice regarding the timing of Facebook's proposed amendments would be cured by granting BlackBerry leave to supplement its invalidity contentions." (Dkt. No. 72 at 15; *see also* Dkt. No. 74 at 12:19-14:12 (September 12, 2019 hearing on Facebook's motion to amend infringement contentions discussing BlackBerry's supplemental invalidity contentions in response to amended infringement contentions).) As the undersigned noted at the September 12 hearing, "what's good for the goose is good for the gander." (Dkt. No. 74 at 12:19-20.) Facebook's argument regarding undue prejudice does not counsel otherwise.

17

Facebook asserts that it "would be prejudiced by having to address new and untimely invalidity defenses some 15 months after this case was filed, [and] after the completion of claim construction proceedings." (Dkt. No. 100 at 19.) However, Facebook fails to identify any *specific* prejudice regarding any of the challenged supplementations in relation to the claim construction proceedings, and its conclusory statement that such prejudice exists is insufficient. *See Intri-Plex Techs., Inc. v. NHK Int'l Corp.*, No. 15-CV-01097-EMC-EDL, 2019 WL 920206, at *7 (N.D. Cal. Jan. 15, 2019) (rejecting plaintiff's argument that prejudice existed because the supplemental "invalidity grounds were not raised in the course of the claim construction proceedings," where plaintiff failed to "articulate how the prior art references" defendants sought "to add would have changed those proceedings"), *report and recommendation adopted*, 2019 WL 917059 (N.D. Cal. Feb. 25, 2019); *see also Monolithic Power Sys., Inc. v. Silergy Corp.*, No. 14-cv-01745-VC (KAW), 2015 WL 5440674, at *3 (N.D. Cal. Sept. 15, 2015) (finding non-movant's "vague statements professing undue prejudice without articulating any substantive ways in which it will be prejudiced . . . insufficient"). Facebook repeated this argument at the February 13 hearing, emphasizing that it faced cognizable prejudice based on the lost opportunity to present arguments related to the proposed supplementations at the *Markman* hearing. However, Facebook could not identify any *specific* arguments it would have presented if given the opportunity. In the absence of any undue prejudice to Facebook at this stage of litigation, leave to amend is warranted.

In sum, BlackBerry's proposed supplementations will not disrupt the district court's schedule in this case because that schedule has yet to be issued. Further, Facebook fails to demonstrate any specific undue prejudice that will result from allowing BlackBerry to supplement its contentions at this time. Accordingly, the Court recommends granting BlackBerry's motion.

## CONCLUSION

For the reasons stated above, the Court recommends that the district court grant BlackBerry's motion to amend its invalidity contentions. Any party may file objections to this report and recommendation with the district court judge within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file an objection may waive the right to review of the issue in the district court.

**IT IS SO ORDERED.**

Dated: February 13, 2020

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge