QUINN EMANUEL URQUHART & SULLIVAN, LLP
James R. Asperger (Bar No. 83188)
jamesasperger@quinnemanuel.com
Yury Kapgan (Bar No. 218366)
yurykapgan@quinnemanuel.com
Pushkal Mishra (Bar No. 298695)
pushkalmishra@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Jordan R. Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
Iman Lordgooei (Bar No. 251320)
imanlordgooei@quinnemanuel.com
Jonathan Tse (Bar. No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Attorneys for Defendants
BlackBerry Limited and BlackBerry Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| FACEBOOK, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>BLACKBERRY LIMITED, and BLACKBERRY CORPORATION,<br><br>    Defendants. | Case No. 4:18-cv-05434-JSW<br><br>**DEFENDANTS BLACKBERRY LIMITED AND BLACKBERRY CORPORATION'S NOTICE OF MOTION AND MOTION TO STAY PENDING *EX PARTE* REEXAMINATION AND *INTER PARTES* REVIEW OF PATENTS-IN-SUIT**<br><br>Hearing:  N/A (General Order No. 72-2) |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that, pursuant to the Court's order (Dkt. 116), Defendants BlackBerry Limited and BlackBerry Corporation (collectively, "BlackBerry") hereby respectfully move the Court to stay the above-captioned action in its entirety, pending the instituted *inter partes* review ("IPR") trials on the validity of U.S. Patent Nos. 6,744,759 (the "'759 Patent") and 7,302,698 (the "'698 Patent"), as well as pending institution decisions on *ex parte* reexamination requests filed regarding the validity of U.S. Patent Nos. 6,356,841 (the "'841 Patent"), 8,429,231 (the "'231 Patent"), 7,567,575 (the "'575 Patent"), and 7,228,432 (the "'432 Patent") (collectively, with the '759 and '698 Patents, the "Patents-in-Suit"). The instituted IPRs are directed to all of the asserted claims from the '759 and '698 Patents that Plaintiff Facebook, Inc. ("Facebook") had asserted against BlackBerry in this action. Additionally, the pending *ex parte* reexamination requests are directed to all of the asserted claims Facebook has asserted from the '231, '841, '432, and '575 Patents. This Motion is based on the Notice of Motion and Motion, accompanying Memorandum of Points and Authorities, Declaration of Iman Lordgooei and supporting exhibits ("Lordgooei Decl."), and proposed order submitted herewith, including all papers and pleadings on file in this action, and such other evidence and argument as may be presented to the Court.

## STATEMENT OF ISSUE TO BE DECIDED

BlackBerry respectfully moves the Court to stay this action pending final, non-appealable resolution of the instituted IPRs and *ex parte* reexamination requests directed to the asserted claims of the Patents-in-Suit.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Facebook, Inc. ("Facebook") has alleged infringement of U.S. Patent Nos. 6,744,759 (the "'759 Patent"), 7,302,698 (the "'698 Patent"), 6,356,841 (the "'841 Patent"), 8,429,231 (the "'231 Patent"), 7,567,575 (the "'575 Patent"), and 7,228,432 (the "'432 Patent") (collectively, the "Patents-in-Suit") by Defendants BlackBerry Limited and BlackBerry Corporation (collectively, "BlackBerry").  Every asserted claim of the Patents-in-Suit however is currently subject to pending reexamination and review by the United States Patent & Trademark Office ("PTO").  In particular, the PTO's Patent Trial and Appeal Board ("PTAB") has instituted *inter partes* review ("IPR") proceedings against every asserted claim of the '698 and '759 Patents.[1]  Additionally, BlackBerry has filed *ex parte* reexamination ("reexam") requests for every asserted claim of the '231, '841, '432, and '575 Patents, all of which are likely to be instituted.[2]  Accordingly, this action should be stayed pending the IPRs and reexams, as (1) the IPRs and reexams stand to significantly simplify issues in this action, thereby preserving the Court and the parties' time and resources; (2) this action is still in a relatively early stage, as a scheduling order has not issued, discovery is not near completion, and no dates have been set for the close of discovery or trial; and (3) there is no potential prejudice to Facebook from a stay.  Moreover, there is a long-promoted liberal policy in this District in favor of staying patent litigation pending reexam, and even Facebook cannot reasonably deny that a stay is justified here.  Indeed, throughout Facebook's litigation history—including in an ongoing case with BlackBerry in the Central District of California—Facebook has consistently presented arguments in favor of instituting a stay that apply with equal, if not greater, force to the facts of the instant case.

BlackBerry's motion should therefore be granted.

---

[1] Facebook has provided a covenant not to sue on the '759 and '698 Patents (Dkt. 117).  However, the covenant does not divest the Court of subject matter jurisdiction over BlackBerry's counterclaims and, thus, the IPRs still stand to simplify issues in this case (Dkt. 118; *infra* § III.D).

[2] According to the latest USPTO statistics, *ex parte* reexamination has been instituted on 91% of all requests, resulting in challenged claims being cancelled or modified in 79% of instituted reexams.  Ex. A (all exhibits herein are attached to the Declaration of Iman Lordgooei filed herewith).

## II. LEGAL STANDARD

The decision to grant a stay pending *ex parte* reexamination or *inter partes* review of asserted patents is within the court's discretion and is based on three primary factors: "(1) the stage of the litigation, including whether discovery is or will be almost completed and whether the matter has been marked for trial; (2) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party; and (3) whether a stay will simplify the issues in question and streamline the trial, thereby reducing the burden of litigation on the parties and on the parties and on the court." *Robert Bosch Healthcare Systems, Inc. v. ExpressMD*, No. C 12–00068 JSW, 2013 WL 752474, *2 (N.D. Cal. Feb. 27, 2013); *Aavid Thermalloy LLC v. Cooler Master, Ltd.*, No. C 17-05363 JSW, 2019 WL 4009166 (N.D. Cal. Aug. 26, 2019); *MPH Techs. Oy v. Apple, Inc.*, Case No. 18-cv-05935-PJH, 2019 WL 8128574, *1 (N.D. Cal. Apr. 26, 2019).

As this Court has consistently noted, "[t]here is a 'liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings.'" *Robert Bosch*, 2013 WL 752474, at *2 (quoting *ASCII Corp. v. STD Entertainment*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994)); *see also Riverbed Technology, Inc. v. Silver Peak Systems, Inc.*, No. C 13–02980 JSW, 2014 WL 1647399, *2 (N.D. Cal. Mar. 14, 2014); *Coho Licensing LLC v. Glam Media*, No. C 14–01577 JSW, 2014 WL 4681699, *1 (N.D. Cal. Sept. 17, 2014); *STMicroelectronics v. Invensense, Inc.*, No. No. C 12-02475 JSW, 2013 WL 12173921, *1 (N.D. Cal. Feb. 27, 2013).

Indeed, even Facebook and its counsel have acknowledged in prior litigation that "Courts need not expend unnecessary judicial resources by attempting to resolve claims which may be amended, eliminated, or lucidly narrowed by the patent reexamination process and the expertise of [PTO] officers" and that "a stay is 'particularly justified where the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue.'" Ex. B (Facebook's Motion to Stay in *Evolutionary Intelligence, LLC v. Facebook, Inc.*, 3:13-cv-04202-SI, Dkt. 128 (N.D. Cal. Nov. 19, 2013)) at 5 (citations omitted).

///

///

## III. ARGUMENT

### A. The Stage of This Case Favors a Stay

This case is still in a relatively early stage, and the parties and the Court have yet to expend significant resources. For example, there is no scheduling order, no dates have been set for the close of discovery or trial, party depositions have yet to be taken, email discovery has yet to be conducted, expert reports and discovery has yet to commence, and the parties have yet to file any dispositive motions. Accordingly, though the Court has held a *Markman* hearing and issued a claim construction order, significant discovery and motion practice still remains. *See, e.g.*, *Yodlee, Inc. v. Ablaise Ltd.*, No. 06-cv-07222-SBA, 2009 WL 112857, at *3 (N.D. Cal. Jan. 16, 2009) (noting "many courts have granted stays well beyond discovery's completion, well into litigation, and very close to trial").

Moreover, in parallel litigation between the parties in the Central District of California (which BlackBerry brought before Facebook filed the instant action), Facebook filed and won a motion to stay the case pending IPRs, despite that the case was near the eve of trial and claim construction, fact discovery, and expert discovery had all been completed. There, Facebook argued that the late stage of the case—which was far more advanced than the instant case—nevertheless weighed in favor of a stay because the stay could spare the expense of dispositive and *Daubert* motions, which were due within a few months, and trial, which was set to begin shortly thereafter. *See* Ex. C (Facebook's Motion in *BlackBerry Limited v. Facebook, Inc.*, No. 2:18-cv-01844-GW-KS, Dkt. 501-1 (C.D. Cal. Dec. 16, 2019)) at 3-4. Having been granted a stay in view of these arguments, Facebook is estopped from taking an inconsistent position here, which would risk inconsistent court determinations on at least this factor of the stay analysis, and would prejudice BlackBerry, whose earlier-filed claims for patent infringement against Facebook are now stayed. *See New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.").

///

///

### B. A Stay Will Not Unduly Prejudice Facebook

There would be no undue prejudice to Facebook from a stay of this action pending the IPRs and reexams. Indeed, Facebook and BlackBerry are not direct competitors with respect to the products and technology at issue in this action, nor does Facebook even claim to practice any of the Patents-in-Suit. *See, e.g.*, *Personal Web Techs., LLC v. Facebook, Inc.*, No. 5:13-CV-01356-EJD, 2014 WL 116340, at *5 (N.D. Cal. Jan. 13, 2014) (finding no prejudice "considering the parties are not competitors" and that "any harm from the temporary halt in enforcing Plaintiffs' rights in the asserted patents can be addressed through a final damages award"); *Oyster Optics, LLC v. Ciena Corp.*, Case No. 17-cv-05920-JSW, 2018 WL 6972999, at *2 (N.D. Cal. Jan. 29, 2018) ("Plaintiff does not dispute that the parties are not competitors, which lessens the potential prejudice it might suffer from a stay.").

Moreover, the parties have not yet expended significant resources that would be wasted if a stay were to issue (e.g., no party depositions have been taken, no email discovery has been conducted, and no substantive damages contentions have been provided by Facebook). On the other hand, the parties *will* be unduly prejudiced by engaging in costly discovery and, eventually, trial preparation and trial—all while PTO proceedings are ongoing in parallel and could simplify or eliminate issues, thereby wasting the parties' and the Court's resources. *See, e.g.*, Ex. B at 7-8 (describing the "cautionary tale" of the *Fresenius USA, Inc. v. Baxter Int'l Inc.* litigation, where a stay pending reexam was not granted, leading to "untold costs for the parties and expenditure of resources by the Court—all for naught"). Indeed, a stay may also help the parties and the Court avoid the present difficulties affecting discovery under current pandemic conditions, which has generated uncertainty and inefficiencies in review of source code and witness depositions, for example.

### C. The IPRs and Reexams Will Simplify Issues for Trial

As shown in the table, below, the instituted IPRs and pending reexam requests cover all of the asserted claims of every Patent-in-Suit and, thus, could "dispose of this matter in its entirety or significantly narrow the scope of the issues." *Aavid Thermalloy LLC v. Cooler Master, Ltd.*, No. C 17-05363 JSW, 2019 WL 4009166, at *2 (N.D. Cal. Aug. 26, 2019). Thus the stay could help the parties and the Court avoid unnecessary time and expense litigating issues that may become entirely

moot. At a minimum, a stay would avoid "potentially inconsistent results," allow the Court to "obtain guidance from the PTO or the PTAB," and "facilitate trial by providing the Court with expert opinion of the PTO and clarifying the scope of the claims." *Id*. (citations omitted).  Indeed, Facebook may amend one or more of the asserted claims during prosecution or present arguments that result in estoppel affecting the scope of its infringement allegations or creating intervening rights that will affect the parties' damages theories.  Thus, as this Court has previously found, even if all the claims are not found invalid, the PTO proceedings could nevertheless "raise estoppel issues" and "encourage settlement," and therefore weigh in favor of a stay. *Id*.

| Patent-in-Suit | PTO/PTAB Control No. | Challenged Claims |
|---|---|---|
| '759 Patent | IPR2019-01597 (instituted) | 1, 4-6, 8-10 (all asserted claims) |
| '698 Patent | IPR2019-01598 (instituted) | 1, 3, 20 (all asserted claims) |
| '841 Patent | 90/014,500 (pending) | 12, 15, 16, 23, 25-28 (all asserted claims) |
| '231 Patent | 90/014,501 (pending) | 1, 3-9 (all asserted claims) |
| '575 Patent | 90/014,502 (pending) | 1, 3, 4, 22 (all asserted claims) |
| '432 Patent | 90/014,503 (pending) | 1, 3-6 (all asserted claims) |

Additionally, PTO statistics regarding *ex parte* reexams support a stay in this case.  Through September 30, 2018 (the latest date for which the PTO appears to have published data), the PTO had granted reexamination in 91% of all requests, and, of those, 79% resulted in challenged claims being canceled or modified.  Ex. A at 1-2.  Accordingly, there is a high likelihood that the requests for reexamination of the '841, '231, '575, and '432 Patents will be granted and result in cancellation or modification of asserted claims.  That the PTO is still deciding whether to grant the reexam requests, therefore, does not militate against a stay.  Indeed, "it 'is not uncommon for [courts] to grant stays pending reexamination prior to the PTO deciding to reexamine the patent.'" *Oyster Optics*, 2018 WL 6972999, at *2 (quoting *Evolutionary Intelligence, LLC v. Facebook, Inc.*, No. 13-cv-04202-SI, 2014 WL 261837, at *3 (N.D. Cal. Jan. 23, 2014)); *see also Graphon Corp. v. Juniper Networks, Inc.*, No.

C 10–1412 JSW, 2010 WL 3619579 (N.D. Cal. Sept. 13, 2010) (issuing stay prior to PTO decision on whether to grant reexam, noting PTO statistics indicating high likelihood of institution); *Akeena Solar Inc. v. Zep Solar Inc.*, No. C 09–05040 JSW, 2010 WL 1526388 (N.D. Cal. Apr. 14, 2010) (same).

Tellingly, even Facebook has acknowledged in prior litigation that PTO statistics indicating an 87% institution rate for IPRs weighed in favor of granting a stay.  Ex. D (Facebook's Reply re Motion to Stay in *Evolutionary Intelligence, LLC v. Facebook, Inc.*, 3:13-cv-04202-SI, Dkt. 135 (N.D. Cal. Dec. 10, 2013)) at 4-5 (listing cases).  Here, the institution rate is even higher:  91%.

### D. Facebook's Covenant Does Not Affect The Simplification of Issues for Trial

On April 21, 2020, Facebook filed a notice withdrawing its infringement allegations under the '759 and '698 Patents and providing a covenant not to sue, stating: "Facebook irrevocably covenants not to assert the '759 and '698 patents against BlackBerry with respect to any of its past, present, or future acts." Dkt. 117 at 1.  As explained in BlackBerry's response to Facebook's notice, Facebook's covenant is not sufficient to divest this Court of subject matter jurisdiction over BlackBerry's counterclaims in this action. Dkt. 118 at 1-2.[3] For example, the covenant is directed to **BlackBerry's** "past, present, or future acts," but could leave open the possibility for Facebook to argue that, notwithstanding **BlackBerry's** actions, the accused **products**—which are software products—are capable of infringing and infringe when deployed and used by BlackBerry's customers and end users. Accordingly, even though Facebook's covenant covers BlackBerry and its acts, it leaves a potential cloud over BlackBerry's **products** accused of infringement in this action. Similarly, in *Sandisk Corp. v. Mobile Media Ideas LLC*, No. C 11-00597 CW, 2011 U.S. Dist. LEXIS 54889, at *6-8 (N.D. Cal. May 23, 2011), the patentee's covenant was insufficient to divest the court of subject matter jurisdiction because it did not expressly extend to the accused infringer's customers. Although, unlike *Sandisk*, Facebook has not expressly alleged infringement by BlackBerry's customers, Facebook's

---

[3] Notably, on April 10, 2020, Facebook proposed dropping the '759 and '698 Patents in order to proceed on the remaining patents.  Ex. E.  On April 20, BlackBerry agreed in principle on working with Facebook to drop those patents (including on an acceptable covenant not to sue that could have avoided the instant deficiencies), but did not agree to waive all rights to a potential stay.  *Id*.  Without further engaging BlackBerry, on April 21, Facebook filed its unilateral covenant and notice.  Dkt. 117.

allegations against both BlackBerry and BlackBerry's ***products*** creates effectively the same "uncertainty" that could cause BlackBerry's "relationships with its customers [to] suffer, causing harm to [BlackBerry's] business." *Id*. at *6. By providing a covenant limited only to BlackBerry's acts, Facebook maintains this uncertainty over BlackBerry's accused products and customers thereof.

Moreover, Facebook's covenant does not extend to successors and assigns of the '759 and '698 Patents, nor does it explicitly release BlackBerry for alleged past infringement. Accordingly, Facebook has not foreclosed its ability to assign the patents to any one of its own subsidiaries who could then sue BlackBerry for alleged infringement and seek recovery of all alleged past damages. Indeed, USPTO records show Facebook has in the past assigned a number of patents from Facebook, Inc. to, *e.g.*, Facebook Technologies, LLC. *See* Ex. F. Further to BlackBerry's concern, Facebook's assignment expressly provides its affiliate, Facebook Technologies, LLC, with "the right to sue for and receive ***all damages from past infringements*** of the Patents," yet ***does not*** include any language limiting said right based on Facebook's pre-existing commitments, obligations, or covenants. *Id*. at 3.

Accordingly, there is still subject matter jurisdiction over BlackBerry's counterclaims in view of the expansive rights maintained by Facebook under its covenant. Yet, even if the Court finds the covenant is sufficient to dismiss all claims and counterclaims under the '759 and '698 Patents with prejudice, a stay should nevertheless be entered. Specifically, for the reasons explained above in § III.B, a stay is still warranted in view of the pending *ex parte* reexams, which have been filed on every asserted claim of each of the remaining Patents-in-Suit and, thus, will simplify issues in this case.

**IV.    CONCLUSION**

Based on the foregoing, BlackBerry respectfully requests that this action be stayed pending resolution of the pending instituted IPRs and filed reexams against the Patents-in-Suit.

| | | |
|---|---|---|
| 1 | DATED:  May 1, 2020 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |

By  */s/ Iman Lordgooei*
    Kevin P.B. Johnson (Bar No. 177129)
    kevinjohnson@quinnemanuel.com
    Victoria Maroulis (Bar No. 202603)
    victoriamaroulis@quinnemanuel.com
    555 Twin Dolphin Drive, 5th Floor
    Redwood Shores, CA 94065
    Telephone: (650) 801-5000
    Facsimile: (650) 801-5100

    Jordan R. Jaffe (Bar No. 254886)
    jordanjaffe@quinnemanuel.com
    Iman Lordgooei (Bar No. 251320)
    imanlordgooei@quinnemanuel.com
    Jonathan Tse (Bar. No. 305468)
    jonathantse@quinnemanuel.com
    50 California Street, 22nd Floor
    San Francisco, CA 94111
    Telephone: 415-875-6600
    Facsimile: 415-875-6700

    James R. Asperger (Bar No. 83188)
    jamesasperger@quinnemanuel.com
    Yury Kapgan (Bar No. 218366)
    yurykapgan@quinnemanuel.com
    Pushkal Mishra (Bar No. 298695)
    pushkalmishra@quinnemanuel.com
    865 S. Figueroa Street, 10th Floor
    Los Angeles, CA 90017
    Telephone: (213) 443-3000
    Facsimile: (213) 443-3100

    Attorneys for Defendants BLACKBERRY LIMITED and BLACKBERRY CORPORATION