1   COOLEY LLP                          MICHAEL G. RHODES (116127)
    HEIDI L. KEEFE (178960)             (rhodesmg@cooley.com)
2   (hkeefe@cooley.com)                 101 California Street
    MARK R. WEINSTEIN (193043)          San Francisco, CA  94111-5800
3   (mweinstein@cooley.com)             Telephone:   (415) 693-2000
    LOWELL D. MEAD (223989)             Facsimile:   (415) 693-2222
4   (lmead@cooley.com)
    3175 Hanover Street
5   Palo Alto, CA  94304-1130
    Telephone:   (650) 843-5000
6   Facsimile:   (650) 849-7400

7   Attorneys for Plaintiff
    FACEBOOK, INC.

8

9

10

11                      UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13                            OAKLAND DIVISION

14

15  FACEBOOK, INC.,                        Case No.  4:18-cv-05434-JSW
    a Delaware corporation,
16                                         **FACEBOOK'S OPPOSITION TO
                                           BLACKBERRY'S MOTION TO
17              Plaintiff,                  STAY**

18       v.                                Hearing Date:   N/A
                                           Before:          Hon. Jeffrey S. White
19  BLACKBERRY LIMITED,
    a Canadian corporation, and
20  BLACKBERRY CORPORATION,
    a Delaware corporation,
21
                Defendants.
22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ....................................................... 1

II.   PROCEDURAL BACKGROUND........................................................................................ 1

    A.    The Court and Parties Have Invested Substantial Time and Resources Through *Markman* and Discovery Since this Case Commenced in September 2018................................................................................................................................ 2

    B.    BlackBerry's Failed IPR Petitions as to the Four Remaining Patents ........................ 2

III.  LEGAL STANDARD........................................................................................................... 3

IV.   ARGUMENT ....................................................................................................................... 4

    A.    Facebook's Covenant-Not-to-Sue Divests the Court of Subject Matter Jurisdiction Over the '759 and '698 Patents. ............................................................... 4

    B.    The Discretionary Factors Weigh Strongly Against A Stay. ...................................... 5

        1.    *Ex Parte* Reexamination Is Unlikely to Simplify the Issues for Trial. ............ 5

        2.    BlackBerry's Dilatory Tactics Will Unduly Prejudice Facebook................... 8

        3.    The Stage of Litigation Weighs Against a Stay............................................ 10

        4.    Facebook's Position Is Consistent In All Cases. .......................................... 11

V.    CONCLUSION.................................................................................................................. 11

1

**TABLE OF AUTHORITIES**

2
                                                                                                    **Page**
3

4
**Cases**

5
*Aavid Thermalloy LLC v. Cooler Master, Ltd.*,
6
   No. C 17-05363 JSW, 2019 WL 4009166 (N.D. Cal. Aug. 26, 2019) ....................................7

*Affinity Labs of Texas, LLC v. BMW N. Am., LLC*,
7
   No. 9:08–CV–164, 2009 WL 8590914 (E.D. Tex. Feb. 20, 2009)......................................7, 9

8
*Akeena Solar Inc. v. Zep Solar Inc.*,
   No. C 09–05040 JSW, 2010 WL 1526388 (N.D. Cal. Apr. 14, 2010) ....................................7
9

10
*Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*,
   No. 10-cv-02863-EJD, 2011 WL 3267768 (N.D. Cal. July 28, 2011) .................................5, 7

11
*Brixham Sols. Ltd. v. Juniper Networks, Inc.*,
12
   No. 13-cv-00616-JCS, 2014 WL 1677991 (N.D. Cal. Apr. 28, 2014) ....................................6

13
*Dow Jones & Co., Inc. v. Ablaise Ltd.*,
   606 F.3d 1338 (Fed. Cir. 2010)..............................................................................................4
14

15
*Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*,
   No. C–13–4513–RMW, 2014 WL 819277 (N.D. Cal. Feb 28, 2014)................................3, 11

16
*Graphon Corp. v. Juniper Networks, Inc.*,
17
   No. C 10–1412 JSW, 2010 WL 3619579 (N.D. Cal. Sept. 13, 2010) ....................................7

18
*Interwoven, Inc. v. Vertical Comp. Sys., Inc.*,
   No. C 10–04645 RS, 2012 WL 761692 (N.D. Cal. Mar. 8, 2012) ...........................3, 5, 8, 11
19

20
*Nken v. Holder*,
   556 U.S. 418 (2009)................................................................................................................3

21
*Oyster Optics, LLC v. Ciena Corp.*,
22
   Case No. 17-cv-05920-JSW, 2018 WL 6972999 (N.D. Cal. Jan. 29, 2018) ...........................7

23
*Pi-Net Int'l, Inc. v. Focus Bus. Bank*,
   No. 12-4958-PSG, 2013 WL 4475940 (N.D. Cal. Aug. 16, 2013)..........................................6
24

25
*Pro-Troll, Inc. v. Shortbus Flashers, LLC*,
   No. 16-cv-04062-VC, 2016 WL 11432003 (N.D. Cal. Dec. 23, 2016)..................................7, 9

26
*Robert Bosch Healthcare Sys., Inc. v. ExpressMD Sols., LLC*,
   No. C 12–00068 JSW, 2013 WL 752474 (N.D. Cal. Feb. 27, 2013) ...................................3, 9
27

28

**FACEBOOK'S OPPOSITION TO
BLACKBERRY'S MOTION TO STAY
Case No. 4:18-cv-5434-JSW**

# TABLE OF AUTHORITIES

(continued)

Page

*Saint Regis Mohawk Tribe v. Mylan Pharm. Inc.*,
    896 F.3d 1322 (Fed. Cir. 2018)......................................................................................6

*STMicroelectronics v. Invensense, Inc.*,
    No. C 12-02475 JSW, 2013 WL 12173921 (N.D. Cal. Feb. 27, 2013)...........................9

*Super Sack Mfg. Corp. v. Chase Packaging Corp.*,
    57 F.3d 1054 (Fed. Cir. 1995)........................................................................................4

*TPK Touch Sols., Inc. v. Wintek Electro-Optics Corp.*,
    No. 13–cv–02218–JST, 2013 WL 5289015 (N.D. Cal. Sept. 18, 2013) .....................7, 8

*Vikase Corp. v. Am. Nat'l Can Co.*,
    261 F.3d 1316 (Fed. Cir. 2001)......................................................................................3

## Statutes

35 U.S.C. § 134(b) ...............................................................................................................9

35 U.S.C. § 302 ..................................................................................................................10

35 U.S.C. § 303(a) ...............................................................................................................5

35 U.S.C. § 314(a) ...............................................................................................................5

35 U.S.C. § 314(d) ...............................................................................................................3

35 U.S.C. § 315(b) ...............................................................................................................3

35 U.S.C. § 315(e)(2)....................................................................................................5, 6, 7

Leahy–Smith America Invents Act, Pub. L. No. 112-29, § 6, 125 Stat. 284, 299–304
    (2011) .............................................................................................................................6

## Other Authorities

37 C.F.R. § 41.31(a)(2) ........................................................................................................9

37 C.F.R. § 41.50(a)-(b).......................................................................................................9

37 C.F.R. § 42.71(d) ............................................................................................................3

Rule 30(b)(6).......................................................................................................................2

-iii-

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

BlackBerry's motion fails to justify the extraordinary relief it seeks—a stay of this action based exclusively on requests for *ex parte* reexamination filed only after the Patent Office refused to institute *Inter Partes* Review (IPR) on the same patents.  BlackBerry waited until the end of its one-year statutory deadline to file IPR petitions with respect to the six originally-asserted patents.  The PTAB instituted IPR as to only two of those patents, which Facebook has since dropped from this case.  The remaining four patents are thus clear to proceed to trial.  BlackBerry's four new serial requests for *ex parte* reexamination seek to "do-over" its failed IPR petitions and tactically delay this case.

*Ex parte* reexamination is very different from the IPR procedure in ways that, in this case, militate against a stay.  For example, *ex parte* reexamination, unlike IPR, imposes no estoppel on BlackBerry and thus will not materially narrow the scope of prior art in this case.  *Ex parte* reexamination also, unlike IPR, imposes no statutory deadlines, meaning that proceedings often remain pending for more than five years before reaching final resolution.  *Ex parte* reexamination also rarely results in cancellation of all claims, and BlackBerry's low likelihood of success is further diminished by the fact that the PTAB rejected BlackBerry's best prior art when it rejected its IPR petitions.  There is no reason to believe that BlackBerry's *ex parte* reexamination requests, based on second-tier prior art, will fare any better.

The other factors relevant to the motion to stay overwhelmingly favor proceeding with discovery and trial.  Facebook filed this action more than twenty months ago.  The Court and parties have invested substantial resources including voluminous discovery resulting in supplemental infringement and invalidity contentions and motion practice, and extensive party and third-party discovery including inventor depositions and many subpoenas, and claim construction briefing resulting in a *Markman* ruling from the Court.  This case is far too advanced to impose a stay considering that BlackBerry has already taken its shot, and lost, at obtaining PTO review of the asserted patents.  The Court should deny BlackBerry's motion and set a Case Management Conference to schedule the rest of the case through trial.

## II.   PROCEDURAL BACKGROUND

In September 2018, Facebook filed this action alleging that BlackBerry infringed U.S. Patent

1   Nos. 7,228,432 (the "'432 Patent"), 6,356,841 (the "'841 Patent"), 8,429,231 (the "'231 Patent"),

2   7,567,575 (the "'575 Patent"), 6,744,759 (the "'759 Patent"), and 7,302,698 (the "'698 Patent").  After

3   the PTAB instituted IPR on the '759 and '698 patents, Facebook covenanted not to assert those patents

4   against BlackBerry for any past, present, or future act, thus removing those patents from the case.

5   (ECF No. 117.)  Thus, only the '432, '841, '231, and '575 patents remain asserted.

### A.   The Court and Parties Have Invested Substantial Time and Resources Through *Markman* and Discovery Since this Case Commenced in September 2018.

8       Over the past twenty months, the Court and parties have committed substantial time and

9   resources to advancing and narrowing the issues toward trial.   The parties exchanged initial

10  infringement contentions, initial invalidity contentions, extensive document productions and written

11  discovery including many subpoenas issued by BlackBerry.  (Mead Decl. ¶ 2.)  The Court presided

12  over a technical tutorial and *Markman* hearing in November 2019 and issued a detailed final claim

13  construction ruling in December 2019.  (ECF No. 90.)

14      After receiving BlackBerry's technical document production including source code spanning

15  six different accused functionalities, Facebook invested heavily in technical discovery developing its

16  infringement theories, including extensive review of BlackBerry's confidential technical documents

17  and weeks of on-site source code review.  (Mead Decl. ¶ 2.)  Based on its technical analysis, Facebook

18  served supplemental infringement contentions with detailed citations to BlackBerry's source code and

19  confidential technical documentation.   (ECF No. 53.)   BlackBerry likewise twice amended its

20  invalidity contentions.  (ECF No. 91.)  The amended contentions resulted in two opposed motions

21  (ECF Nos. 53, 91), oral arguments, and detailed written opinions.  (ECF Nos. 72, 105.)

22      Deposition discovery is also well underway.  BlackBerry has deposed two of the named

23  inventors and issued subpoenas to several others.  (Mead Decl. ¶ 2.)  Facebook served a comprehensive

24  Rule 30(b)(6) notice in January 2020, which Blackberry dodged.  (Mead Decl. ¶ 3.)  When the Court

25  temporarily stayed the case to await the results of BlackBerry's IPR petitions, the Court and parties

26  were set for a Case Management Conference to schedule the case through trial.  (ECF Nos. 108, 109.)

### B.   BlackBerry's Failed IPR Petitions as to the Four Remaining Patents

28      On September 13-14, 2019, at the very end of the one-year statute of limitations for IPR

FACEBOOK'S OPPOSITION TO
BLACKBERRY'S MOTION TO STAY
CASE NO. 4:18-CV-5434-JSW

petitions under 35 U.S.C. § 315(b), BlackBerry filed IPR petitions with respect to the asserted patents. The results of BlackBerry's IPR petitions are now in: the PTAB rejected four of the six petitions, and Facebook has irrevocably dropped from this case the two patents where the PTAB instituted IPR. (ECF Nos. 110-115, 117.)  Between March 3 and March 27, 2020, the Board issued written decisions denying the IPR petitions with respect to the '231, '432, '575, and '841 patents remaining in this case. The Board's decisions were extensive, in total almost 100 pages.

The PTAB's decisions denying BlackBerry's IPR petitions are "final and nonappealable."  35 U.S.C. § 314(d).  BlackBerry's sole remedy was to seek rehearing or reconsideration of the Board's decision.  *See* 37 C.F.R. § 42.71(d).  BlackBerry sought reconsideration only as to the '841 patent, which the PTAB promptly denied.  The 30-day deadline for seeking rehearing or reconsideration of the other PTAB decisions has since passed.

BlackBerry waited until April 28-29, 2020, more than a month after it received the last of the PTAB decisions rejecting its IPR petitions on the remaining four patents, to file *ex parte* reexamination requests with respect to those patents.  The *ex parte* reexamination requests are exceedingly cursory when compared to the earlier-filed IPR petitions.  Unlike the IPR petitions, for example, BlackBerry did not submit any expert declaration or testimony with any of its *ex parte* reexamination requests.

## III.   LEGAL STANDARD

"The burden is on the party seeking the stay to persuade the court that a stay is appropriate."  *Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*, No. C–13–4513–RMW, 2014 WL 819277, at *2 (N.D. Cal. Feb 28, 2014) (citing *Nken v. Holder*, 556 U.S. 418, 433–34 (2009)).  "A court is certainly not required to stay judicial resolution in light of a pending patent reexamination."  *Interwoven, Inc. v. Vertical Comp. Sys., Inc.*, No. C 10–04645 RS, 2012 WL 761692, at *2 (N.D. Cal. Mar. 8, 2012) (citing *Vikase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001)).  In considering whether to grant a stay, the Court may consider (1) whether a stay will simplify the issues in question and trial of the case; (2) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; and (3) whether discovery is complete and whether a trial date has been set.  *Robert Bosch Healthcare Sys., Inc. v. ExpressMD Sols., LLC*, No. C 12–00068 JSW, 2013 WL 752474, at *2 (N.D. Cal. Feb. 27, 2013).  The applicable factors weigh against a stay here.

1

2

3

## IV.   ARGUMENT

### A.   Facebook's Covenant-Not-to-Sue Divests the Court of Subject Matter Jurisdiction Over the '759 and '698 Patents.

Facebook has dropped the two patents that are subject to instituted IPRs, *i.e.* the '759 and '698 patents. Specifically, on April 21, 2020, Facebook committed that it "irrevocably covenants not to assert the '759 and '698 patents against BlackBerry with respect to any of its past, present, or future acts." (ECF No. 117 at 1.) BlackBerry raises the smokescreen argument that the covenant might not extend to customers and users. (ECF No. 119 at 6-7.) But Facebook never alleged infringement by BlackBerry's customers or end users as to those patents, or named them as defendants in this case. In any event, to eliminate the issue, Facebook affirms and irrevocably covenants (on behalf of Facebook and all successors and assigns[1]) that its covenant not to sue as to those patents extends to any past, present, or future BlackBerry products or services, whether they are made, used, sold, or otherwise utilized by BlackBerry, its customers, its end users, or any other person or entity. Because this Court lacks subject matter jurisdiction to proceed on those two patents, they should be dismissed from this case as moot. *See Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058-59 (Fed. Cir. 1995) (holding that a patentee "can divest the trial court of jurisdiction over the case by filing a covenant not to assert the patent at issue against the putative infringer with respect to any of its past, present, or future acts" and affirming dismissal where patentee provided such a covenant-not-to-sue in an opposition brief to a motion filed with the district court).

---

[1] BlackBerry also speculates that Facebook's covenant not to sue might not apply in the event the '759 or '698 patents are later transferred to third parties. But BlackBerry cites no case law suggesting that a covenant not to sue must extend beyond the parties to the present action in order to divest a district court of jurisdiction. *See Dow Jones & Co., Inc. v. Ablaise Ltd.*, 606 F.3d 1338, 1345-49 (Fed. Cir. 2010) ("Whether Ablaise at present (or in the future) seeks to assert the '530 patent against News Corporation is consequently irrelevant to whether a controversy exists between Ablaise and Dow Jones in the case at bar. Consequently, the covenant not to sue proffered by Ablaise extinguishes the controversy between Ablaise and Dow Jones and divests the district court of its Article III jurisdiction."). Nevertheless, to avoid the need to further address this issue, Facebook irrevocably covenants that any transfer of the '759 or '698 patents will be subject to the covenants set forth herein, such that they will be binding upon subsequent assignees or successors-in-interest.

**B.    The Discretionary Factors Weigh Strongly Against A Stay.**

    **1.    *Ex Parte* Reexamination Is Unlikely to Simplify the Issues for Trial.**

BlackBerry's *ex parte* reexamination requests are unlikely to simplify the issues in this case. As noted above, BlackBerry filed its *ex parte* reexamination requests only after the PTAB rejected its IPR petitions with respect to the four remaining patents. There is no reason to believe that BlackBerry's *ex parte* reexamination requests will fare any better. Because IPR proceedings are subject to statutory estoppel under 35 U.S.C. § 315(e)(2) (as discussed further below), BlackBerry was highly incentivized to use its very best art in preparing its IPR petitions. No such incentive exists in the context of *ex parte* reexamination, which left BlackBerry free to resort to its leftover references after the "best" art failed to raise any invalidity question in IPR.

BlackBerry's analysis of this factor ignores fundamental differences between IPR and *ex parte* reexamination that weigh heavily against granting a stay under the circumstances presented here. IPR cannot be initiated unless there is a "reasonable likelihood that the petitioner would prevail" with respect to at least one challenged claim. *See* 35 U.S.C. § 314(a). But the bar for initiating *ex parte* reexamination is considerably lower – the examiner must initiate reexamination if there is merely "a substantial new question" raised by the reexamination request. *See* 35 U.S.C. § 303(a).[2] Accordingly, a decision to institute *ex parte* reexamination is much less predictive of the ultimate outcome than institution of IPR.

Consistent with their low bar for initiation, *ex parte* reexaminations are rarely successful in cancelling all challenged claims: only 12% achieve that result. (ECF No. 119, Ex. A at 2.) *Interwoven*, 2012 WL 761692, at *3 ("[T]he only way Interwoven's requested reexaminations will resolve invalidity issues is if the PTO cancels the claims in their entirety, of which there is only a 12% chance.") (citing *Avago Techs.*, 2011 WL 3267768, at *4 (denying a stay because simplification is unlikely when the likelihood of PTO cancellation was low)). The odds drop even more when

---

[2] This low threshold for initiating reexamination is illustrated by the May 14, 2020 decision initiating reexamination of the challenged '575 patent claims. (ECF No. 120-1.) The decision notes that a substantial new question is raised "when there is a substantial likelihood that a reasonable examiner would consider the prior art patent or printed publication important in deciding whether the claim is patentable." (*Id.* at 1.) The decision determines only that the cited references "would be important to a reasonable examiner in deciding patentability." (*Id.* at 5, 9, 11, 12.) The decision does not state or suggest that the cited references likely render invalid the challenged claims.

considering that the PTAB has already rejected BlackBerry's IPR petitions that presumably relied on its "strongest" prior art.  BlackBerry cites generic statistics about the numbers of reexaminations that result in modified or canceled claims (ECF No. 119 at 5), but those statistics do not apply to the unique circumstances here.  There is virtually no chance that BlackBerry's second-string prior art will invalidate all of the challenged claims.

IPR was also specifically designed as an alternative to adjudicating invalidity in litigation, and enacted to address the perceived deficiencies of reexamination.  Congress specifically observed the deficiencies in *ex parte* reexamination, including its open-ended timeframe and lack of estoppel effect. As the Federal Circuit has explained:

> Ultimately, however, both ex parte and inter partes reexamination were less widely used than Congress had hoped, and had features that made them "troublesomely inefficient and ineffective as a truly viable alternative for resolving questions of patent validity." S. Rep. No. 110-259 at 19 (2008).
>
> It was against this background that, in 2011, Congress enacted the Leahy–Smith America Invents Act, which replaced inter partes reexamination with new post-grant review procedures, such as inter partes review, covered business method review, and post-grant review, while retaining ex parte reexamination. *See* Pub. L. No. 112-29, § 6, 125 Stat. 284, 299–304 (2011).

*Saint Regis Mohawk Tribe v. Mylan Pharm. Inc.*, 896 F.3d 1322, 1333-34 (Fed. Cir. 2018); *see also Pi-Net Int'l, Inc. v. Focus Bus. Bank*, No. 12-4958-PSG, 2013 WL 4475940, at *2 (N.D. Cal. Aug. 16, 2013) ("Another difference between IPR and the old reexamination proceeding is that the PTO is now required to make a final determination within one year after instituting the IPR" as compared to statistics where "the old reexamination proceeding averaged over thirty-seven months"); *Brixham Sols. Ltd. v. Juniper Networks, Inc.,* No. 13-cv-00616-JCS, 2014 WL 1677991, at *2 (N.D. Cal. Apr. 28, 2014).

Another critical difference when evaluating simplification of issues is the lack of estoppel from *ex parte* reexamination.  District courts that grant motions to stay pending IPR often observe that IPR imposes a statutory estoppel that prevents an IPR petitioner from asserting in litigation "that the claim is invalid on *any ground that the petitioner raised or reasonably could have raised during that inter partes review*."  35 U.S.C. § 315(e)(2) (emphasis added).  This standard thus applies not only to the

6.

1    prior art actually raised in IPR, but also to any prior art that "reasonably could have [been] raised" in

2    IPR. *Id.* The estoppel impact of IPR often weighs in favor of a stay because it can dramatically narrow

3    the scope of prior art available to a defendant at trial.[3]

4    But *ex parte* reexamination imposes no estoppel whatsoever, let alone the broad estoppel

5    provided by § 315(e)(2). In fact, a "requester in an *ex parte* reexamination is not precluded from

6    raising the same issues in a subsequent litigation between itself and the patent owner. Because the

7    reexamination at issue here is *ex parte,* the third party requester will not be bound by the results as it

8    would have been had the reexamination been *inter partes*." *Affinity Labs of Texas, LLC v. BMW N.*

9    *Am., LLC*, No. 9:08–CV–164, 2009 WL 8590914, at *3 (E.D. Tex. Feb. 20, 2009). "In other words,

10   even if the PTO decided not to invalidate the patent after reexamination, [BlackBerry] could continue

11   to press an invalidity argument here. This is in contrast to inter partes review, which is 'guaranteed to

12   finally resolve at least some issues of validity.'" *Pro-Troll, Inc. v. Shortbus Flashers, LLC*, No. 16-

13   cv-04062-VC, 2016 WL 11432003, at *1 (N.D. Cal. Dec. 23, 2016) (quoting *Avago Techs. Fiber IP*

14   *(Singapore) Pte. Ltd. v. IPtronics Inc.*, No. 10-cv-02863-EJD, 2011 WL 3267768, at *5 (N.D. Cal.

15   July 28, 2011)). "Thus, the ex parte reexamination process is much less likely to advance the ball in

16   this case." *Id.*; *see also, e.g.*, *TPK Touch Sols., Inc. v. Wintek Electro-Optics Corp.*, No. 13–cv–02218–

17   JST, 2013 WL 5289015, at *2-3 (N.D. Cal. Sept. 18, 2013) ("The *ex parte* reexamination procedure,

18   unlike the *inter partes* procedure, takes longer [and] is less likely to result in material changes in the

19   litigation….").

20   Finally, BlackBerry speculates that if one or more of its reexamination requests are ultimately

21   granted, Facebook might amend its claims or raise arguments that change the claim scope. (ECF No.

22

23

----

24   [3] BlackBerry's cited cases primarily involved *inter partes* proceedings with estoppel consequences.
     *See Aavid Thermalloy LLC v. Cooler Master, Ltd.*, No. C 17-05363 JSW, 2019 WL 4009166, at *2

25   (N.D. Cal. Aug. 26, 2019) (granting stay pending IPR); *Oyster Optics, LLC v. Ciena Corp.*, Case No.
     17-cv-05920-JSW, 2018 WL 6972999, at *2 (N.D. Cal. Jan. 29, 2018) (same; IPR); *Graphon Corp.*

26   *v. Juniper Networks, Inc.*, No. C 10–1412 JSW, 2010 WL 3619579, at *2 (N.D. Cal. Sept. 13, 2010)
     (granting stay pending *inter partes* reexamination and noting that no discovery had been served and

27   no claim construction proceedings occurred); *Akeena Solar Inc. v. Zep Solar Inc.*, No. C 09–05040
     JSW, 2010 WL 1526388, at *2 (N.D. Cal. Apr. 14, 2010) (same). Although some decisions have
     granted stays pending *ex parte* reexamination, the facts in those cases were readily distinguishable as

28   explained in the text.

FACEBOOK'S OPPOSITION TO
BLACKBERRY'S MOTION TO STAY
CASE NO. 4:18-CV-5434-JSW

119 at 5.)  <u>Facebook commits and covenants, however, that it will not seek to amend any claims in</u> <u>reexamination with respect to any of the four patents.</u>  BlackBerry's speculation that Facebook might raise arguments effecting a disavowal or disclaimer of claim scope is similarly unfounded.  Indeed, Facebook filed lengthy oppositions to BlackBerry's IPR petitions, and BlackBerry has not identified anything in those oppositions raising any new issue in this case.

In sum, because of the slim odds of canceling the claims and the lack of estoppel, *ex parte* reexamination is unlikely to simplify the issues for trial.  This factor weighs against a stay.

### 2.    BlackBerry's Dilatory Tactics Will Unduly Prejudice Facebook.

The second factor—undue prejudice and tactical disadvantage to the non-moving party—also weighs heavily against a stay.  BlackBerry chose to wait until the very last day before its one-year bar to file IPR petitions on the four remaining patents, and then waited more than a month after those petitions were rejected before filing serial *ex parte* reexaminations.  As one court recognized:

> The risk of prejudice is compounded by the relatively long period of time required to complete *ex parte* reexamination. Recent statistics indicate that an *ex parte* reexamination process takes, on average, 32.5 months to complete, and that appeals take, on average, another 24 months. Thus, if the Court were to grant a stay, it would potentially be delaying relief for almost five years.

*TPK Touch Sols.*, 2013 WL 5289015, at *3.  The risk of prejudice is further compounded here, considering that BlackBerry did not even file its *ex parte* reexamination requests until twenty months after this case was filed.

BlackBerry's motion fails to justify a stay under the circumstances here, in which a stay was granted based solely on *ex parte* reexaminations requested after *Markman* and only after the moving party failed to convince the PTO to institute IPR on those same patents.  Indeed, courts deny stays where, as here, petitions to the PTO reflect gamesmanship and delay tactics after a setback on the merits.  *Interwoven*, 2012 WL 761692, at *2 ("That Interwoven waited until after receiving an unfavorable ruling to request reexamination lends credence to Vertical's contention that the current motion is simply a delaying strategy.").  By attempting a do-over with the *ex parte* procedure at this late stage after its IPR petitions failed, BlackBerry "has reached back in history to the non-binding 'no risk for me' *ex parte* reexamination process, allowing [it] to lay behind the log, hoping for favorable

1    developments with the passage of time." *Affinity Labs of Texas*, 2009 WL 8590914, at *2.

2         BlackBerry's cited cases are distinguishable from the circumstances in this case. This Court's

3    decisions in *Robert Bosch* and *STMicroelectronics* both involved reexaminations that were instituted

4    at very early, pre-*Markman* stages of litigation. *Robert Bosch Healthcare Sys.*, 2013 WL 752474, at

5    *2 (both *ex parte* and *inter partes* proceedings were instituted before any claim construction briefing);

6    *STMicroelectronics v. Invensense, Inc.*, No. C 12-02475 JSW, 2013 WL 12173921, at *1 (N.D. Cal.

7    Feb. 27, 2013) (all asserted claims were subject to instituted reexamination before any claim

8    construction briefing).

9         The prejudice to Facebook in this case would be exacerbated by lack of timing requirements

10   in *ex parte* reexaminations which allow for long, open-ended durations. The most recent PTO statistics

11   bear this out: the average pendency of an *ex parte* reexamination is 27.7 months, which includes

12   proceedings that conclude quickly when the claims are confirmed. (ECF No. 119, Ex. A at 1.) *Pro-*

13   *Troll*, 2016 WL 11432003, at *1 (noting that if a stay pending *ex parte* reexamination were granted,

14   plaintiff "would be prevented from asserting its patent rights in court for as long as two years, with

15   [defendant] having effectively pressed the pause button on the litigation while hardly needing to lift a

16   finger. This argues against a stay. This is so even acknowledging that [defendant] was diligent in

17   seeking *ex parte* reexamination shortly after this lawsuit was filed.") (internal citation omitted).

18        BlackBerry only recently filed its requests for reexamination on April 28-29, 2020. Assuming

19   reexaminations are ordered, the process often takes several years at the Patent Office alone because,

20   unlike IPR, reexamination involves at least two layers of review within the Patent Office –

21   reexamination before a patent examiner followed by an internal appeal of the examiner's decision to

22   the PTAB. *See* 35 U.S.C. § 134(b); 37 C.F.R. § 41.31(a)(2). There is no statutory timeline for

23   completion of proceedings before either the examiner or the PTAB, and the PTAB owes no deference

24   in reviewing the examiner's decision. The PTAB could modify the examiner's decision, substitute

25   the examiner's rejections for different ones, and remand back to the examiner to reopen prosecution

26   on the merits. *See* 37 C.F.R. § 41.50(a)-(b). And even after completion of any ping-pongs between

27   the examiner and the PTAB (which could take years), the final ruling by the PTAB then may be further

28   appealed to the Federal Circuit, which may add another 14-18 months, if not more.

1    The undue prejudice that Facebook would suffer from a years-long stay is particularly acute in

2    this case because of the likely loss of available relevant witnesses and the fading of relevant memories.

3    This is not merely a hypothetical possibility but a tangible problem in the present case.  BlackBerry

4    has been on a years-long decline and may have difficulty retaining its employees.  Indeed, at least

5    three of the witnesses BlackBerry originally disclosed as having relevant knowledge about

6    BlackBerry's accused products left the company during discovery.  (Mead Decl. Ex. 1.)[4]

7    Furthermore, BlackBerry's gamesmanship in filing serial petitions—failed IPR petitions

8    followed by new *ex parte* reexamination requests—raises the specter of an endless quagmire if the

9    case were stayed.  While an IPR petition may not be filed after the one-year deadline, *ex parte*

10   reexamination can be requested at any time with no estoppel and no statutory prohibition on serial

11   requests.  *See* 35 U.S.C. § 302 ("Any person at any time may file a request for reexamination . . .").

12   If BlackBerry's current requests are ultimately unsuccessful, it could try again, and again, dragging

13   out the parties' dispute indefinitely.  The better course of action is to complete the substantial

14   investment the parties and Court have already made and see this case through to resolution.

15   In sum, this second factor strongly weighs against a stay.

16   ### 3.    The Stage of Litigation Weighs Against a Stay.

17   The final factor, the stage of litigation, does not warrant a stay here given that the PTAB

18   already denied BlackBerry's IPR petitions.  BlackBerry asserts that "the parties and the Court have

19   yet to expend significant resources" (ECF No. 119 at 3), but ignores the substantial work that the Court

20   and parties performed in connection with the amended infringement and invalidity contentions,

21   including massive reviews and analyses of technical documentation, source code, and potential prior

22   art and the Court's hearings and detailed motion rulings, extensive discovery including inventor

23   depositions, extensive party discovery, and many third-party subpoenas, as well as the substantial

24

25   ---

26   [4] These specific concerns outweigh any potential delay due to the COVID-19 situation.  (*Cf.* ECF No.
     119 at 4.)  Facebook is fully sensitive to the COVID-19 pandemic and will cooperatively negotiate an
27   appropriate case schedule and reasonable discovery procedures.  Fortunately, the parties' counsel and
     client representatives generally have been able to continue working during this period; indeed, the
28   same parties and counsel have been actively engaged in other ongoing IPR and litigation proceedings
     including videoconference depositions.

efforts the Court and parties devoted to the *Markman* tutorial, hearing, and detailed final ruling. *Interwoven*, 2012 WL 761692, at *4 (denying stay where the parties "have exchanged documents, excepting source code, served interrogatories and document request, and responded to each other's requests and interrogatories" and "[m]ore importantly, the parties have fully briefed the issue of claim construction, attended a *Markman* hearing, and received a claim construction order."). Facebook has also dropped two of the asserted patents as a result of IPR institutions, substantially streamlining this case. While of course work remains to be done, all of the work invested to date by the Court and the parties has substantially advanced and narrowed the issues for trial.

### 4.    Facebook's Position Is Consistent In All Cases.

BlackBerry is simply wrong to suggest that a stay would be consistent with Facebook's positions in past cases. Facebook has never sought a stay under circumstances that remotely resemble the circumstances in this case, in which the stay was based entirely on *ex parte* reexamination requests filed after the PTO refused to institute IPR on the same patents. For example, in the pending case between BlackBerry and Facebook in the Central District of California, the district court granted a stay in view of instituted IPR proceedings against BlackBerry's asserted patents. (*See* ECF No. 119, Ex. C.) There were no *ex parte* reexamination requests in that case – let alone *ex parte* reexaminations filed after failed IPRs.[5] The stay in *Evolutionary Intelligence* was also based on instituted IPR petitions, which in that case were filed before the initial Case Management Conference, not on follow-on or serial *ex parte* reexamination requests. (*See* ECF No. 119, Exs. B, C.)

### V.    CONCLUSION

For the foregoing reasons, Facebook respectfully requests that the Court deny BlackBerry's Motion to Stay and set this matter for a Case Management Conference.

---

[5] BlackBerry's invocation of the doctrine of judicial estoppel is frivolous. (ECF No. 119 at 3.) The circumstances here are nothing like the C.D. Cal. case or any case where Facebook obtained a stay.

1   Dated:  May 15, 2020                    COOLEY LLP

2

3                                          /s/ *Heidi L. Keefe*

4                                          HEIDI L. KEEFE (178960)
                                           (hkeefe@cooley.com)
5                                          MARK R. WEINSTEIN (193043)
                                           (mweinstein@cooley.com)
6                                          LOWELL D. MEAD (223989)
                                           3175 Hanover Street
7                                          Palo Alto, CA  94304-1130
                                           Telephone:    (650) 843-5000
8                                          Facsimile:    (650) 849-7400

9                                          COOLEY LLP
                                           MICHAEL G. RHODES (116127)
10                                         (rhodesmg@cooley.com)
                                           101 California Street
11                                         San Francisco, CA  94111-5800
                                           Telephone:    (415) 693-2000
12                                         Facsimile:    (415) 693-2222

13                                         Attorneys for Plaintiff
                                           FACEBOOK, INC.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28