QUINN EMANUEL URQUHART & SULLIVAN, LLP
James R. Asperger (Bar No. 83188)
jamesasperger@quinnemanuel.com
Yury Kapgan (Bar No. 218366)
yurykapgan@quinnemanuel.com
Pushkal Mishra (Bar No. 298695)
pushkalmishra@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Jordan R. Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
Iman Lordgooei (Bar No. 251320)
imanlordgooei@quinnemanuel.com
Jonathan Tse (Bar. No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Attorneys for Defendants
BlackBerry Limited and BlackBerry Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| FACEBOOK, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>BLACKBERRY LIMITED, and BLACKBERRY CORPORATION,<br><br>    Defendants. | Case No. 4:18-cv-05434-JSW<br><br>**DEFENDANTS BLACKBERRY LIMITED AND BLACKBERRY CORPORATION'S REPLY IN SUPPORT OF MOTION TO STAY PENDING *EX PARTE* REEXAMINATION AND *INTER PARTES* REVIEW OF PATENTS-IN-SUIT**<br><br>Hearing:  N/A (General Order Nos. 72-2, -3) |

## I. INTRODUCTION

A stay of this litigation pending reexamination of the patents-in-suit would hardly constitute "extraordinary relief." Indeed, this Court has consistently held "[t]here is a 'liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings.'" *Robert Bosch Healthcare Systems, Inc. v. ExpressMD*, No. C 12–00068 JSW, 2013 WL 752474, at *2 (N.D. Cal. Feb. 27, 2013); *Riverbed Technology, Inc. v. Silver Peak Systems, Inc.*, No. C 13–02980 JSW, 2014 WL 1647399, at *2 (N.D. Cal. Mar. 14, 2014); *Coho Licensing LLC v. Glam Media*, No. C 14–01577 JSW, 2014 WL 4681699, at *1 (N.D. Cal. Sept. 17, 2014); *STMicroelectronics v. Invensense, Inc.*, No. No. C 12-02475 JSW, 2013 WL 12173921, at *1 (N.D. Cal. Feb. 27, 2013). And for good reason. It makes little sense to proceed with litigation where, as here, there is a pending reexamination or request for reexamination against all of the patents-in-suit that could result in cancelation or modification of the asserted claims.

Further, while Facebook attempts to cast doubt on BlackBerry's *ex parte* reexaminations as being based on "second-tier prior art" or a "do-over" of BlackBerry's IPRs, it ignores the fact that the reexaminations are actually ***stronger*** than BlackBerry's IPRs because they specifically address the perceived deficiencies that the PTAB cited as the reasons for denying the IPRs. Indeed, the PTO took just two weeks to grant BlackBerry's request and order reexamination of the '575 Patent, and the remaining decisions are forthcoming. Moreover, Facebook cannot reasonably argue with PTO statistics showing that reexamination is ordered in 91% of all requests, and result in cancelation or modification of challenged claims 79% of the time. Thus, there is a significant likelihood the reexaminations will simplify issues in this case. For example, if the '575 Patent claims are invalidated, BlackBerry's BES/UEM products will no longer be at issue, eliminating a significant product line from the case.

Nor is this case at such an advanced stage that a stay would be inappropriate. Significant tasks still remain that could be avoided and will likely be affected by the reexaminations—tasks such as the remainder of fact discovery, party depositions, expert discovery, dispositive motions, pretrial motions and exchanges, and trial. Tellingly, Facebook and its counsel have argued to other courts that a stay pending PTO review is appropriate ***even at the eve of trial***—yet this case is far from the eve of trial.

Neither the parties nor the Court should be forced to expend the significant resources required to proceed through discovery and trial when there is a strong likelihood the asserted claims will be cancelled or modified through reexamination. BlackBerry's motion should be granted.

## II. ARGUMENT

### A. The Reexams Will Simplify Issues for Trial

As an initial matter, Facebook's *ad hominem* attacks on BlackBerry's *ex parte* reexamination requests—arguing, for example, that the requests are based on "second-tier prior art" or "leftover references"—fall flat in view of PTO statistics and the fact that the PTO has already ordered reexamination against one of the patents-in-suit. Indeed, it took the PTO examiner just a few weeks to recognize that each of the three invalidity grounds based on so-called "leftover references" raised against the '575 Patent were enough to present a substantial new question of patentability warranting reexamination. *See* Dkt. 120-1 at 16. And, it is undisputed that when the PTO does order reexamination of a patent, the challenged claims of that patent are canceled or modified **79%** of the time.[1] Dkt. 119-2 at 1-2. Indeed, contrary to Facebook's assertions, it would make little sense for the PTO to order reexamination based on prior art that has "virtually no chance" (Opp. at 6) of invalidating the challenged claims. Nor is there any reason, as a general matter, why a stay should not be ordered pending reexaminations filed after unsuccessful IPRs. *See, e.g.*, *MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, Case No. 14-cv-03657-SI, 2017 WL 4948560, *2-*3 (N.D. Cal. Nov. 1, 2017) (ordering a stay pending *ex parte* reexamination after an initial, unsuccessful IPR petition); *Nautilus, Inc. v. Icon Health & Fitness, Inc.*, Case No. 1:17-cv-00154-DN, 2018 WL 4215095, *2-*4 (D. Utah Sept. 4, 2018) (rejecting patentee's argument "that there is a lower-than-typical chance of reexamination simplifying the issues in this case because the PTAB has already denied [challenger's] petitions for *inter partes* review regarding [the] asserted patents").

---

[1] Facebook asserts that the PTO statistics "do not apply to the unique circumstances here," where IPRs were previously denied on the patents-in-suit. However, Facebook's assertion is based entirely on unsupported speculation. For example, Facebook has not cited any evidence that the statistics for reexaminations following unsuccessful IPRs are any different than those for all other reexaminations. Facebook also ignores key aspects of the "unique circumstances here," such as, *inter alia*, the fact the reexaminations are actually stronger than the IPR petitions. *See infra*.

Moreover, the reexamination requests present *stronger* grounds for invalidity than those raised in the IPRs. In particular, the reexaminations raise prior art and invalidity grounds responsive to the PTAB's reasons for denying BlackBerry's IPRs. Thus, far from raising "leftover references," the reexaminations raise prior art that directly address the perceived deficiencies in BlackBerry's IPR petitions. Accordingly, notwithstanding Facebook's unsupported allegations, there is a high likelihood that reexamination of the patents-in-suit will simplify issues for trial in this case by canceling or modifying one or more of the asserted claims of the patents-in-suit.

Additionally, with respect to the '841 Patent, although the PTAB denied BlackBerry's IPR petition, it nevertheless concluded that certain invalidity grounds presented in the petition were reasonably likely to invalidate claims 12, 15, and 16. Ex. G at 38. BlackBerry's *ex parte* reexamination request includes those invalidity grounds and, as such, is reasonably likely to result in invalidation of at least claims 12, 15, and 16 of the '841 Patent.

Furthermore, despite Facebook's covenant not to amend any of the challenged claims during reexamination, Facebook cannot provide a similar covenant against making any arguments to the PTO that may result in estoppel affecting the scope of its infringement allegations or the parties' damages theories. Thus, even if the claims are not invalidated, the reexaminations would still simplify issues in the case and, thus, weigh in favor of a stay. *See, e.g.*, *Klaustech, Inc. v. AdMob, Inc.*, Case No. C 10-05899 JSW, 2011 WL 13152861, *3 (N.D. Cal. Feb. 22, 2011) ("One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) *or to facilitate trial of that issue* by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding).") (emphasis added) (citations omitted); *STMicroelectronics, Inc. v. Invensense, Inc.*, No. C 12-02475 JSW, 2013 WL 12173921, *2 (N.D. Cal. Feb. 27, 2013) (same); *Robert Bosch Healthcare Systems, Inc. v. ExpressMD*, No. C 12–00068 JSW, 2013 WL 752474, *3 (N.D. Cal. Feb. 27, 2013) (same). Although Facebook argues that BlackBerry has not identified anything in Facebook's IPR oppositions "effecting a disavowal or disclaimer of claim scope" (Opp. at 8), that is because discovery in this case has been stayed and, as such, BlackBerry has not had an opportunity to identify Facebook's disclaimers. In fact, Facebook made numerous disclaimers and

other statements in the IPRs that affect the scope of its asserted claims, and will likely do so in the reexaminations as well.[2]

Facebook's argument against simplification, on the other hand, is based on the fallacy that the reexaminations are "unlikely to simplify the issues for trial" because **all** challenged claims are cancelled in only 12% of reexaminations. This Court has consistently held, however, that reexamination need not result in **all** challenged claims being cancelled in order to weigh in favor of a stay, as "there is no requirement that reexamination resolve all issues in a case in order to warrant a stay." *STMicroelectronics*, 2013 WL 12173921, at *2; *Robert Bosch*, 2013 WL 752474, at *4 (same). Rather, if only some of the claims are cancelled or even modified—for which there is a 79% chance—the reexamination would still simplify issues for trial. Moreover, Facebook's covenant not to present amendments in the reexaminations actually ***increases*** the possibility that all claims will be cancelled. Indeed, "some courts have found that 'the likelihood for cancellation of one or more of the claims may be increased [where the patent is] not subject to amendment in the ex parte reexamination proceedings." *MLC Intellectual Prop., LLC*, 2017 WL 4948560, at *3 (citations omitted).

Even if the challenged claims are confirmed, "the PTO's decision would likely assist the court in determining patent validity." *Klaustech*, 2011 WL 13152861, at *3. Additionally, "[t]o the extent claims survive the reexamination process, the reexamination would 'facilitate trial by providing the Court with expert opinion of the PTO and clarifying the scope of the claims.'" *STMicroelectronics*, 2013 WL 12173921, at *2 (citing *Pegasus Dev. Corp. v. DirecTV, Inc.*, 2003 WL 21105073, at *1-2

---

[2] As just one example, in the IPR of the now-dropped '698 Patent, Facebook argued that the claimed "monitoring component" does not encompass the prior art's disclosure of a "big brother" computing entity that monitors the status of a designated "little brother" computing entity, because the '698 Patent's "monitoring component" requires "determin[ing] the current operating state of the computer platform ***as a whole***" and not just one entity within the computer platform. Ex. H at 20-22. Yet, this disclaimed embodiment is precisely what Facebook had been accusing of infringement in this case. *See, e.g.*, Dkt. 53 at 9 (identifying a computing entity called "QNX Guardian" as infringing the "monitoring component" element of the asserted claim, not because it monitors the computer platform as a whole, but because it monitors another computing entity called "QNX HAM"). Thus, Facebook's arguments in the IPR had a clear effect on its infringement allegations in this case and would have simplified issues for trial had Facebook not dropped the '698 Patent altogether. Statements having similar effects were made by Facebook in the other IPRs, as well.

(D. Del. May 14, 2003) as "noting the benefits of granting a stay pending reexamination include potentially narrowing the issues, reducing the complexity and length of trial, alleviating discovery problems relating to prior art, and encouraging settlement or even dismissal if the patent is declared invalid"); *see also Robert Bosch*, 2013 WL 752474, at *3 (same); *Aavid Thermalloy LLC v. Cooler Master, Ltd.*, No. C 17-05363 JSW, 2019 WL 4009166, at *2 (N.D. Cal. Aug. 26, 2019) (same; also finding that, even if all claims are not found invalid, the PTO review would still likely "raise [prosecution history] estoppel issues" and "encourage settlement").

Also unavailing are Facebook's arguments distinguishing *ex parte* reexamination from *inter partes* review. Facebook argues, for example, that *ex parte* reexaminations will not simplify issues for trial because, unlike IPRs, they do not result in estoppel narrowing the prior art available at trial. However, this exact argument was rejected in *Klaustech*, where this Court explained:

> KlausTech also contends that AdMob, as an *ex parte* requester, would not be estopped from reasserting the same prior art in an attempt to invalidate the '651 patent in court . . . . However, regardless of whether AdMob reasserts the same prior art in litigation, after reexamination, this Court will "have a richer prosecution history upon which to base necessary claim construction determinations or reconsideration," and "any review of prior art that the Court may conduct will be enhanced by the PTO's expert opinion."

2011 WL 13152861, at *3. Thus, Facebook's argument is a red herring—the effects that IPRs could have (*e.g.*, simplifying **additional** issues by virtue of IPR estoppel) are irrelevant to the question of whether *ex parte* reexaminations are likely to simplify issues in the case. And, as explained above, there is no doubt reexaminations stand to simplify significant issues in the case.[3]

If litigation were to proceed with the reexaminations in parallel, the file history estoppel and arguments made by Facebook in the reexamination would have effects on issues in the case **in real**

---

[3] Facebook also argues that BlackBerry's cited cases primarily involved *inter partes* review (Opp. at 7, n.3), but there are numerous decisions from this Court that granted a stay pending *ex parte* reexamination based upon the same rationale as IPRs. *See, e.g.*, *Klaustech*, 2011 WL 13152861; *STMicroelectronics*, 2013 WL 12173921; *Sorensen*, 2008 WL 152179; *Photoflex Products, Inc. v. Circa 3 LLC*, No. C 04-03715 JSW, 2006 WL 1440363 (N.D. Cal. May 24, 2006); *KLA-Tencor Corp. v. Nanometrics, Inc.*, No. C 05-03116 JSW, 2006 WL 708661 (N.D. Cal. Mar. 16, 2006). Indeed, the only difference between IPR and *ex parte* reexamination relevant to the stay analysis is the fact that a stay pending IPR may simplify even more issues than a reexamination (i.e., via IPR prior art estoppel). But, as explained above, there is still a significant likelihood of simplifying issues through *ex parte* reexamination.

*time* and, thus, would actually further complicate issues for trial. For example, Facebook will likely present arguments in the reexamination that affect claim scope and could require the parties to redo discovery and, potentially, dispositive and other motions, resulting in an extensive waste of resources. *See supra*, n.2. In Facebook and its counsel's own words, "[f]ailing to stay this litigation, in fact, may result in an enormous waste of judicial and party resources." Dkt. 119-3 at 7-8 (citing the "cautionary tale" of *Fresenius USA, Inc. v. Baxter Int'l Inc.*, where a stay pending reexam was not granted, leading to "untold costs for the parties and expenditure of resources by the Court—all for naught"). Facebook cannot now take a directly contrary position.

### B. A Stay Will Not Unduly Prejudice Facebook

Facebook's argument for purported prejudice is premised on the alleged delay associated with the *ex parte* reexamination process itself. Opp. at 8-10. Yet, as with Facebook's other arguments, this Court has repeatedly rejected the notion that the delay inherent in a reexamination is a basis for undue prejudice. *See, e.g.*, *Klaustech*, 2011 WL 13152861, at *2 (finding "the likely length of reexamination does not generally, by itself, constitute undue prejudice"); *STMicroelectronics*, 2013 WL 12173921, at *2 (same); *Robert Bosch*, 2013 WL 752474, at *3 (same); *Coho Licensing LLC v. Glam Media*, No. C 14–01576 JSW, 2014 WL 4681699, at *2 (N.D. Cal. Sept. 17, 2014) (same); *Oyster Optics, LLC v. Ciena Corp.*, Case No. 17-cv-05920-JSW, 2018 WL 6972999, at *3 (N.D. Cal. Jan. 29, 2018) ("Courts have long acknowledged that a delay inherent to a stay does not, in and of itself, constitute prejudice.") (quoting *Personal Web Technologies, LLC v. Facebook, Inc.*, No. 13-cv-1356-EJD, 2014 WL 116340, at *5 (N.D. Cal. Jan. 13, 2014)); *Sorensen v. Digital Networks North America Inc.*, No. C 07-05568 JSW, 2008 WL 152179, at *2 (N.D. Cal. Jan. 16, 2008) ("The delay inherent to the reexamination process does not constitute, by itself, undue prejudice.").

Facebook's cited cases are inapposite because they involved prejudice arising from the parties' status as direct competitors. For example, in *TPK Touch Sols., Inc. v. Wintek Electro-Optics Corp.*, the court found prejudice weighing against a stay pending reexamination because the parties were direct competitors. No. 13-cv-02218-JST, 2013 WL 5289015, at *3-4 (N.D. Cal. Sept. 18, 2013) ("[T]his Court finds in accordance with the rule that prejudice is likely where the parties are direct competitors, and is therefore and been reluctant to issue a stay."). Only based on that prerequisite

finding did the court further find that the prejudice would be "***compounded*** by the relatively long period of time required to complete *ex parte* reexamination." *Id*. The court did not find, however, that the delay in reexamination, by itself, constituted prejudice. Similarly, in both the *Pro-Troll, Inc. v. Shortbus Flashers, LLC* and *Interwoven, Inc. v. Vertical Computer Systems, Inc.* cases, there was prejudice from the parties' status as direct competitors. Case No. 16-cv-04062-VC, 2016 WL 11432003, at *1 (N.D. Cal. Dec. 23, 2016); No. C 10–04645 RS, 2012 WL 761692, at *3 (N.D. Cal. Mar. 8, 2012).[4] Here, it is undisputed that Facebook and BlackBerry are not direct competitors with respect to the products and technology at issue in this action. Facebook does not even claim to practice any of the Patents-in-Suit. Thus, unlike Facebook's cited cases, there is no prejudice from a stay that would be compounded or "exacerbated" (Opp. at 9) by delays in reexamination.

Facebook's claim that it would be prejudiced by fading memories and unavailability of witnesses is also unavailing. In particular, Facebook has failed to show that any evidence would not be equally available after a stay. Although individual employees have left BlackBerry during the pendency of this case, the information and knowledge that they may have had are neither unique nor limited to those individuals. This is not a case in which Facebook needs the testimony of percipient BlackBerry fact witnesses who may become unavailable or whose memories may fade. Rather, once the stay is lifted, BlackBerry can and will identify any necessary corporate representatives with knowledge of relevant issues and accused products that may remain in the case. BlackBerry has also produced extensive technical documentation and source code associated with each of the accused products, all of which will continue to be available to Facebook after the stay. *See* Dkt. 121-1 at ¶ 2

---

[4] Also inapposite is the *Affinity Labs of Texas, LLC v. BMW N. Am., LLC* case cited by Facebook. No. 9:08-CV-164, 2009 WL 8590914, at *2 (E.D. Tex. Feb. 20, 2009). In that case, the court found prejudice from "a strong inference of gamesmanship" based on: defendants' pattern and practice of delay; defendants' failure to take advantage of binding *inter partes* reexam before filing a request for *ex parte* reexam; and that, even when the *ex parte* reexam was filed, it was filed "by only one of the twenty-four Defendants in these three cases." *Id*. Thus the court inferred gamesmanship from defendants' lack of willingness to seek a "binding" procedure and, instead, opting for "non-binding" reexam in the first instance. No such facts exist here. BlackBerry first attempted to resolve the validity of the patents-in-suit through IPRs, and only when those were denied institution did BlackBerry resort to *ex parte* reexaminations—not with the goal of delaying this case for the sake of delay, but so the parties and the Court could avoid wasting resources litigating over invalid patents.

(acknowledging that Facebook has been able to develop its case via "BlackBerry's confidential technical documents and multiple weeks of on-site source code review"); *Hill-Rom Servs., Inc. v. Stryker Corp.*, No. 1:11-cv-1120-JMS-DKL, 2012 U.S. Dist. LEXIS 165470, at *10-11 (S.D. Ind. Nov. 20, 2012) ("[A]ny prejudice [the plaintiff] claims will result from the passage of time and the potential loss of witness recollection is mitigated by the fact that product manuals, source code, and engineering specifications describing the patented inventions and the accused products will survive.").

Additionally, contrary to Facebook's allegations, the timing of the reexaminations does not evince any strategic gamesmanship by BlackBerry. Unlike the *Interwoven, Inc. v. Vertical Computer Systems, Inc.* case cited by Facebook, for example, BlackBerry did not wait to file its *ex parte* reexaminations "until after receiving an unfavorable [claim construction] ruling" as "a delaying strategy." 2012 WL 761692, at *2. To the contrary, the Court's claim construction ruling in this case was favorable to BlackBerry.[5]  Nor does the overall timing of the *ex parte* reexaminations show "gamesmanship and delay tactics." Opp. at 8.[6] As explained above, the reexaminations were filed promptly after BlackBerry's IPR petitions were denied in order to specifically address the perceived deficiencies in the invalidity grounds identified by the PTAB in denying the IPRs. Thus, BlackBerry could not have brought the reexaminations any sooner. Accordingly, other than unsupported speculation, Facebook cannot show gamesmanship or delay tactics by BlackBerry.

### C. The Stage of This Case Favors a Stay

Facebook cites "the substantial work" performed in this case thus far as weighing against a stay. Opp. at 10-11. Facebook's argument, however, ignores the much more substantial amount of work that remains if the case proceeds—all of which could potentially be avoided if the reexaminations result in cancellation or modification of even some claims (*see supra* § II.A). Facebook ignores that there is no scheduling order in this case, no dates have been set for the close of

---

[5] As explained in the parties' recent Case Management Conference Statement, the claims as construed are not infringed by the accused products. *See* Dkt. 108 at 3-4, n.2.

[6] Facebook also intimates it was somehow improper for BlackBerry to file its IPR petitions on "the very last day before its one-year bar." Opp. at 8. Yet, filing IPRs at the deadline "is no evidence of dilatory motive or that the delay was excessive." *Evolutionary Intelligence, LLC v. Twitter, Inc.*, No. C 13-04207 JSW, 2014 WL 12601515, at *2 (N.D. Cal. Feb. 25, 2014).

discovery or trial, party depositions have yet to be taken, email discovery has yet to be conducted, expert reports and discovery has yet to commence, the parties have yet to file dispositive or *Daubert* motions, and pre-trial exchanges have not occurred. Thus this case is hardly at such an advanced stage that would weigh against a stay. *See, e.g.*, *Yodlee, Inc. v. Ablaise Ltd.*, No. 06-cv-07222-SBA, 2009 WL 112857, at *3 (N.D. Cal. Jan. 16, 2009) (noting "many courts have granted stays well beyond discovery's completion, well into litigation, and very close to trial").

Moreover, Facebook and its counsel cannot credibly argue that the stage of this litigation weighs against a stay, when just a few months ago, they successfully argued to another court that a case ***near the eve of trial***—after fact and expert discovery had been completed—was still at a stage of litigation that weighed in favor of a stay. Dkt. 119-4 (Facebook's Motion in *BlackBerry Limited v. Facebook, Inc.*, No. 2:18-cv-01844-GW-KS, Dkt. 501-1 (C.D. Cal. Dec. 16, 2019)) at 3-4. Indeed, there, Facebook and its counsel argued that "[s]ome of the most costly and time-consuming portions of the case lie ahead," including summary judgment, *Daubert* briefing, and trial. It is undisputed that the same portions of ***this*** case lie ahead, and more, thus Facebook's own arguments support a finding that this factor weighs in favor of a stay.[7]

## III.     CONCLUSION

Based on the foregoing, BlackBerry respectfully requests that this action be stayed pending resolution of the pending reexams against the Patents-in-Suit.

---

[7] Faced with its own prior inconsistent positions, Facebook argues it is "wrong to suggest that a stay would be consistent with Facebook's positions in past cases" because Facebook "has never sought a stay . . . based entirely on *ex parte* reexamination requests filed after the PTO refused to institute IPR on the same patents." Opp. at 11. Facebook's rebuttal misses the point. Even if the precise circumstances in Facebook's prior motion to stay do not exactly match the circumstances here, the arguments made by Facebook were not so limited. For example, Facebook argued that a case in which fact and expert discovery had been completed was still at a stage of litigation that weighed in favor of a stay—this broad argument has nothing to do with whether the stay was based on an IPR, an *ex parte* reexamination, or some other basis. There is no apparent reason why the same argument would not apply to a motion to stay "based entirely on *ex parte* reexamination requests filed after the PTO refused to institute IPR on the same patents," yet Facebook takes a directly contrary position here. Thus, it is plain to see that Facebook and its counsel have made inconsistent arguments to different courts. If any party is engaged in strategic gamesmanship, it is Facebook.

| | | |
|---|---|---|
| 1 | | |
| 2 | DATED: May 22, 2020 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |

By  /s/ Iman Lordgooei
    Kevin P.B. Johnson (Bar No. 177129)
    kevinjohnson@quinnemanuel.com
    Victoria Maroulis (Bar No. 202603)
    victoriamaroulis@quinnemanuel.com
    555 Twin Dolphin Drive, 5th Floor
    Redwood Shores, CA 94065
    Telephone: (650) 801-5000
    Facsimile: (650) 801-5100

    Jordan R. Jaffe (Bar No. 254886)
    jordanjaffe@quinnemanuel.com
    Iman Lordgooei (Bar No. 251320)
    imanlordgooei@quinnemanuel.com
    Jonathan Tse (Bar. No. 305468)
    jonathantse@quinnemanuel.com
    50 California Street, 22nd Floor
    San Francisco, CA 94111
    Telephone: 415-875-6600
    Facsimile: 415-875-6700

    James R. Asperger (Bar No. 83188)
    jamesasperger@quinnemanuel.com
    Yury Kapgan (Bar No. 218366)
    yurykapgan@quinnemanuel.com
    Pushkal Mishra (Bar No. 298695)
    pushkalmishra@quinnemanuel.com
    865 S. Figueroa Street, 10th Floor
    Los Angeles, CA 90017
    Telephone: (213) 443-3000
    Facsimile: (213) 443-3100

    Attorneys for Defendants BLACKBERRY LIMITED and BLACKBERRY CORPORATION