1
2
3            UNITED STATES DISTRICT COURT
4           NORTHERN DISTRICT OF CALIFORNIA
5

6    FACEBOOK, INC.,                          Case No.  4:18-cv-05434-JSW

7                 Plaintiff,                   **ORDER DENYING DEFENDANTS'
                                               MOTION TO STAY PENDING *EX
8           v.                                 PARTE* REEXAMINATION AND
                                               *INTER PARTES* REVIEW**
9    BLACKBERRY LIMITED, et al.,
                                               Re: Dkt. No. 119
10                Defendants.

11

12          Now before the Court is the motion to stay proceedings pending reexamination of asserted

13   patents filed by Defendants BlackBerry Limited and BlackBerry Corporation (collectively,

14   "BlackBerry").  The Court has considered the parties' papers, relevant legal authority, and the

15   record in this case, and finds this matter suitable for disposition without oral argument.  *See* N.D.

16   Civ. L.R. 7-1(b).  The Court HEREBY DENIES BlackBerry's motion to stay for the reasons

17   stated in this Order.

18                                **BACKGROUND**

19          BlackBerry and Plaintiff Facebook, Inc. ("Facebook") are engaged in a cross-jurisdictional

20   dispute.  On March 6, 2018, BlackBerry filed a lawsuit against Facebook in the Central District of

21   California, alleging infringement of seven patents.  *See BlackBerry Ltd. v. Facebook, Inc.*, No. 18-

22   cv-1844-GW-KS (filed on Mar. 6, 2018).  On September 4, 2018, Facebook counter-sued in this

23   District, asserting six of its own patents against BlackBerry.  (*See* Dkt. No. 1.)  The parties have

24   since initiated dozens of administrative proceedings before the PTO and further sued each other in

25   Germany.  (Dkt. No. 108 at 5.)  A claim construction hearing was held in this case on November

26   21, 2019, and the Court issued an Order construing the terms of the asserted patents on December

27   13, 2019.  (Dkt. No. 90.)

28

United States District Court
Northern District of California

United States District Court
Northern District of California

On September 13 and 14, 2019, BlackBerry filed inter partes review ("IPR") petitions before the United States Patent and Trademark Office ("PTO") for each asserted claim of the patents-in-suit.  (Dkt. No. 77.)  In light of the short time before the institution deadline, the Court issued a conditional stay on February 25, 2020, ordering the parties to inform the Court of the institution decisions in those IPRs.  (Dkt. No. 109.)  The PTO ultimately denied institution of BlackBerry's IPRs on all but two of the patents.  (*See* Dkt. Nos. 110-15.)  Facebook withdrew the two patents from the case.[1]  (Dkt. No. 117.)  BlackBerry immediately filed reexamination requests for the four remaining patents, purporting to address the deficiencies identified in the IPRs.  (*See* Dkt. Nos. 118, 119.)  Between May 14 and June 12, 2020, the PTO granted BlackBerry's request to reexamine three of the patents.  (*See* Dkt. Nos. 120, 123, 124.)  The request for the final patent remains outstanding.

The litigation in the Central District of California has proceeded to dispositive motions.  However, in light of similar facts in that case, the court there agreed to stay proceedings for seven of the nine asserted patents pending resolution of IPRs.  *See BlackBerry*, No. 18-1884, Dkt. No. 652 (February 13, 2020).  The Court further indicated intent to stay the case for the remaining two patents following its summary judgment decision.  *Id.*

The Court shall address additional facts as necessary in this Order.

**ANALYSIS**

**A.      Legal Standard.**

The patent reexamination statute provides in pertinent part that "[a]ny person at any time may file a request for reexamination by the [PTO] of any claim of a patent on the basis of any prior art cited under the provisions of section 301."  35 U.S.C. § 302.  The PTO must then grant reexamination within three months if it determines that "a substantial new question of patentability affecting any claim of the patent concerned is raised by the request."  35 U.S.C. §§ 303(a), 304.

---

[1] The parties debate whether Facebooks' withdrawal and covenant not to sue for the patents on which IPRs were instituted divests the Court of subject matter jurisdiction over them.  The Court finds that it does.  *See Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058-59 (Fed. Cir. 1995).  Even if it did not, the Court sees no compelling reasons to base its motion to stay decision on patents that Facebook does not intend to advance at trial.

United States District Court
Northern District of California

1   The purpose of the statute is to "increase the reliability of the PTO's action in issuing a patent by

2   reexamination of patents thoughts 'doubtful.'"  *In re Etter*, 756 F.2d 852, 857 (Fed. Cir. 1985).  In

3   essence, "the intent underlying reexamination is to 'start over' in the PTO with respect to the

4   limited examination areas involved . . . as they would have been considered if they had been

5   originally examined."  *Id*.  Reexamination proceedings are required to be conducted "with special

6   dispatch."  35 U.S.C. § 305.

7          In 2011, Congress enacted the inter partes review procedure.  35 U.S.C. § 311, *et seq.*  The

8   procedure was meant to remedy limitations of existing reexaminations.  *See* H.R. Rep. 112-98 at

9   45 (2011).  Chief among them was that "in the original reexamination system, the third party

10  challenger had no role once the proceeding was initiated, while the patent holder had significant

11  input throughout the entire process."  *Id*.; *Saint Regis Mohawk Tribe v. Mylan Pharma. Inc.*, 896

12  F.3d 1322, 1333 (Fed. Cir. 2018).  To remedy this limitation, Congress designed IPRs to "looks a

13  good deal more like civil litigation."  *SAS Inst., Inc. v. Iancu*, 138 S.Ct 1348, 1353 (2018).

14  However, to prevent the procedure from being used "as tools for harassment," Congress also

15  added a number of restrictions.  H.R. Rep. 112-98 at 48.  These restrictions include that (1) parties

16  cannot mount multiple challenges to a patent, including by challenging a patent in an IPR after

17  doing the same in civil litigation, (2) a party who successfully petitions the PTO to the point of a

18  final written determination is estopped from later raising any invalidity ground they "could have

19  raised" in the IPR, even in civil litigation, (3) the standard for instituting the IPR requires

20  "reasonable likelihood of success," not merely a "significant new question of patentability," and

21  (4) the entire IPR process must be completed in 12 to 18 months.  *See id*. at 47-48; 35 U.S.C. §§

22  314-15, 316(11); *see also* S. Rep. No. 110-259 at 19-23 (2008).

23         Despite these differences, both reexamination and inter partes review are, at bottom,

24  intended to provide a cost-effective alternative to litigation.  *See Ethicon Endo-Surgery, Inc. v.*

25  *Covidien LP*, 826 F.3d 1366 1367 (Fed. Cir. 2016) (Newman, J, dissenting) (IPRs intended to

26  "provide quick and cost effective alternatives to litigation" (citing H.R. Rep. 112-98 at 48)); *Etter*,

27  756 F.2d at 857 ("[A]n auxiliary function [of reexamination] is to free the court from any need to

28  consider prior art without the benefit of the PTO's initial consideration."); *Gould v. Control Laser*

1    *Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) ("One purpose of the reexamination procedure is to

2    eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by

3    providing the district court with the expert view of the PTO (when a claim survives the

4    reexamination proceeding).").

5         Courts have inherent authority to manage their dockets. *Ethicon*, 849 F.2d at 1426.  As

6    part of that authority, courts routinely grant motions to stay pending PTO reexamination.  *Id.*  The

7    determination of whether to grant a stay pending the outcome of the PTO's reexamination is

8    soundly within the Court's discretion. *See In re Cygnus Telecom. Tech., LLC Patent Litig.*, 385 F.

9    Supp. 2d 1022, 1023 (N.D. Cal. 2005) (citing *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 603

10   (Fed. Cir. 1985)).  When ruling on such a stay, courts consider: (1) the stage of the litigation,

11   including whether discovery is complete and whether a trial has been set; (2) whether a stay will

12   simplify issues for trial, and (3) whether a stay would unduly prejudice or present a clear tactical

13   disadvantage to the nonmoving party. *PersonalWeb Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1-

14   22, 1025 (N.D. Cal. 2014).

15        Courts in this District traditionally employ a "liberal policy in favor of granting motions to

16   stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings."

17   *ASCII Corp. v. STD Entm't*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).  However, some have

18   begun to rethink that policy due to concerns that "staying a case even in its early stages pending

19   reexamination has not led to the just, speedy, and efficient management of the litigation, but

20   instead has tended to prolong it without achieving sufficient benefits in simplification to justify the

21   delay." *Network Appliance Inc. v. Sun Microsys. Inc.*, No. C-07-06053 EDL, 2008 WL 2168917,

22   at *3 (N.D. Cal. May 23, 2008); *see also Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-02066 SI,

23   2011 WL 13153233, at *3 (N.D. Cal. Feb. 8, 2011).

24   **B.      The Court Denies BlackBerry's Motion to Stay.**

25        **1.      The Litigation Is Not in Its Early Stages.**

26        The first factor focuses "on the stage of litigation proceedings, not the length of time that

27   has passed since the filing of the case." *Wireless Recognition Tech. v. A9.com Inc.*, No. 12-cv-

28   01217-EJD, 2012 WL 4005459, at *2 (N.D. Cal. Sept. 11, 2012).  In the twenty months since this

United States District Court
Northern District of California

1  case was filed, the parties have conducted some fact discovery, including technical document

2  production and deposition of two named inventors.  (Dkt. No. 121-1 ("Mead Decl.") ¶ 2.)  Claim

3  construction has also taken place, and the Court issued a detailed ruling construing claim terms in

4  five of the asserted patents.  However, fact discovery has not closed, and neither expert discovery

5  nor dispositive motion practice have taken place.  The trial date—which would have been set if the

6  case had not been conditionally stayed—has not yet been set.  The case is therefore not in its

7  "early stages," even though substantial work remains to be done.

8      On these facts, many courts find this factor weighs against a stay.[2]  *See Interwoven, Inc. v.*

9  *Vertical Comp. Sys., Inc.*, No. 10-04645 RS, 2012 WL 761692, at *4 (N.D. Cal. Mar. 8, 2012)

10  (finding that partial fact discovery and completed claim construction weighed against granting a

11  stay); *TruePosition, Inc. v. Polaris Wireless, Inc.*, No. 12-646-RGA/MPT, 2013 WL 5701529, at

12  *4 (D. Del. Oct. 21, 2013) (same); *Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1111

13  (N.D. Cal. 2006) (finding that "well underway," if incomplete, fact discovery weighs against

14  granting a stay).  *But see PersonalWeb Techs.*, 69 F. Supp. 3d at 1026 (finding that significant fact

15  discovery and complete claim construction did not weigh in favor of stay where "much remains,

16  and the remaining work is costly"); *PersonalWeb Techs., LLC v. Facebook, Inc.*, No. 5:13-cv-

17  01356-EJD, 2014 WL 116340, at **3-4 (N.D. Cal. Jan. 13, 2014) (same).

18      Moreover, the parties appear to be bullish that the case can be quickly resolved.

19  BlackBerry indicates that if a stay is not granted, it intends to move for early summary judgment

20  of noninfringement.  (*See* Dkt. No. 108 ("CMC Statement") at 3 n.2.)  Taken at its word,

21  BlackBerry believes that the case is ripe for adjudication and may be resolved entirely on

22  infringement.  If that is correct, the Court will not need to address invalidity—the issue before the

23  PTO—before the case is resolved on infringement.  Furthermore, prior to the conditional stay in

24  this case, Facebook proposed an aggressive schedule where fact discovery closes in three months

25  and trial is set for October of this year.  Although BlackBerry proposed a much longer schedule,

26

27  _____

[2] BlackBerry cites case law for grating stays in cases in their "nascent" and "incipient" stages.
These cases are inapposite.  In addition to claim construction, the parties here have engaged in

28  document production, source code review, and two contested motions to amend infringement and
invalidity contentions.  (*See* Mead Decl. ¶¶ 2-2; Dkt. Nos. 53, 91.)

United States District Court
Northern District of California

1   most of the discovery lies with the accused infringer and BlackBerry presumably needs less from

2   the patent owner.  Accordingly, the parties' conduct suggests that the case is—or will soon be—

3   ripe for adjudication without the need for much further development.

4        The Court therefore finds that the stage of the litigation weighs against granting a stay.

5   The parties and the Court have already invested substantial resources, which may be wasted if the

6   litigation idles for several years.  Claim construction, in particular, may need to be redone if the

7   PTO alters the scope of the claims, without apparent benefit to resolving infringement.  The

8   parties appear to agree that the case can be fully resolved without substantial further development

9   or investigation.  The first factor thus weighs against a stay.

10        **2.**       **Reexamination May Simplify Issues.**

11        Reexamination may, in almost all cases, conceivably simplify issues by cancelling the

12   claims, thus "eliminat[ing] the need for trial," or by "providing the court with expert opinion of

13   the PTO and clarifying the scope of the claims."  *Target Therapeutics, Inc. v. SciMed Life Sys.,*

14   *Inc.*, , 33 U.S.P.Q. 2d 2022, 2023 (N.D. Cal. 1995); *see also Pegasus Devel. Corp. v. DirecTV,*

15   *Inc.*, 2003 WL 21105073, at *1-*2 (D. Del. May 14, 2003) (noting the benefits of granting a stay

16   pending reexamination include potentially narrowing the issues, reducing the complexity and

17   length of trial, alleviating discovery problems relating to prior art, and encouraging settlement or

18   even dismissal if the patent is declared invalid).  However, there are reasons to think that the

19   reexaminations will not simplify the issues in this case.

20        First, the PTO has already twice opined on the validity of the claims—once while granting

21   the patents and the second time during IPRs.  While no proceeding can conclusively demonstrate

22   that a patent is valid (as opposed to "not invalid"), issued patents have a presumption of validity,

23   which is confirmed by their ability to withstand multiple challenges.  BlackBerry cites statistics

24   showing that the PTO cancels or modifies claims in 79% of cases where it grants reexamination,

25   but these statistics are not persuasive.  (*See* Dkt. No. 119-2.)  As an initial matter, group statistics

26   are not indicative of individual probabilities.  *See Ecological Fallacy*, Wikipedia (June 11, 2020),

27   https://en.wikipedia.org/wiki/Ecological_fallacy.  Even assuming that they were, the PTO only

28   canceled all of the claims outright in 12% of cases.  (Dkt. No. 119-2 at 2.)  In the remaining cases,

the PTO "modified" the claims. (*Id.*) There is no evidence that the modification would aid the underlying litigation here. Given the parties conduct thus far, the Court or jury will still have to adjudicate validity and infringement—just with different claims or prior art.

Second, the circumstances of BlackBerry's reexamination requests are unpropitious. BlackBerry waited more than a year to file the requests, only doing so after receiving adverse rulings in the IPRs. BlackBerry drafted those requests within one month after receiving IPR denials, compared to the year it took to draft the IPRs. Courts routinely recognize that waiting to challenge validity until after an adverse ruling suggests gamesmanship and delay—not good faith validity challenges. *See, e.g.*, *KAIST IP US LLC v. Samsung Elecs. Co., Ltd.*, No. 2:16-cv-01314-JRG, 2020 WL 731360, at *2 (E.D. Tex. Feb. 13, 2020); *Interwoven*, 2012 WL 761692, at *2; *Esco Corp. v. Berkeley Forge & Tool, Inc.*, 2009 WL 3078463, at *4 (N.D. Cal. Sept. 28, 2009). Although BlackBerry contends that the reexaminations address deficiencies in the IPRs, no relationship is apparent from the face of those papers. *Compare* Dkt. No. 120-1 ("'575 Reexam") at 7, *with* IPR2019-01599, Paper 8 at 5 (PTAB Mar. 27, 2020); *see* Dkt. No. 123-1 ("'432 Reexam") at 3-5 (relying on different art).)

That the PTO quickly granted reexamination does not suggest otherwise. As stated by the examiner, the reexaminations were granted because "there is a substantial likelihood that a reasonable examiner would consider the prior art patent or printed publication important in deciding whether the claim is patentable." ('575 Reexam at 5.) While the prior art may well be worth considering, the standard employed here does not suggest that it is likely to invalidate the patents. The speed at which the requests were granted is also not inconsistent with the statutory requirement that the PTO resolve reexamination requests within three months after filing.

Third, no estoppel prevents BlackBerry from raising different—or even the same—invalidity grounds following reexamination. BlackBerry's initial invalidity contentions contained 160 references in 83 invalidity charts. (Dkt. No. 91-1 ¶ 2.) Following amendment, BlackBerry added seven additional charts with yet more references. (*Id.* ¶¶ 5-7.) The Court has little doubt that should the PTO invalidate, fail to invalidate, or do anything else to the claims, BlackBerry will have little trouble finding another subset of its 167 prior art references to advance at trial. In

1   these circumstances, reexamination is exceedingly unlikely to reduce (as opposed to merely

2   change) the issues to be decided by the Court and jury.

3        BlackBerry claims that additional reexamination may lead Facebook to disclaim claim

4   scope, but the Court fails to see how that would simplify the issues.  While disclaimer might make

5   the claims more *valid*, it will hardly make them *simpler*.  On the contrary, changing the scope of

6   the claims mid-way through litigation is likely to prompt additional discovery, motions to amend

7   to invalidity and infringement contentions, and possibly further claim construction.  Again, the

8   Court has already concluded claim construction.  Past a certain point, the contours of the claims

9   must be laid to rest so that invalidity and infringement may be finally determined by the jury.

10       Nevertheless, the Court recognizes that reexamination might potentially simplify the issues

11  by cancelling some of the claims.  Given the number of claims advanced in the complaint,

12  cancellation may or may not reduce the total number of claims the jury ultimately considers

13  following case narrowing.  Additionally, reexamination may shed light on the validity of the

14  patents.  However, since that the PTO's interpretations are not binding, and no estoppel prevents

15  BlackBerry from advancing the same invalidity arguments before the jury, such interpretations

16  may or may not simplify the issues to be decided.  Further, reexamination may complicate the

17  issues by modifying the scope of the claims, requiring a "re-do" of certain parts of the litigation.

18  On balance, the Court finds that this factor is neutral.[3]

19                    **3.      Facebook May Be Prejudiced By The Delay.**

20       The last factor considers "whether a stay would unduly prejudice or present a clear tactical

21  disadvantage to the non-moving party."  *TPK Touch Solutions, Inc. v. Wintek Electro-Optics

22  Corp.*, No. 13-cv-02218-JST, 2013 WL 6021324, at *4 (N.D. Cal. Nov. 13, 2013).  Facebook's

23  alleged prejudice centers on the delay involved in waiting for reexamination.  According to recent

24  statistics, the average pendency of reexamination is 27.7 months, and some stretch to five years.

25  (Dkt. No. 119-2 at 1.)  Facebook argues that the years-long delay from reexamination, combined

26

27  [3] The Court is also not blind to the circumstances of this case.  The parties' dispute clearly extends
    beyond the four patents in this case.  In these circumstances, finding a few claims invalid is far
28  less likely to lead the parties to settle than the continued pressure of trial.

United States District Court
Northern District of California

1   with BlackBerry's gamesmanship in seeking reexamination only after it failed to obtain IPRs,

2   creates prejudice for Facebook.  Facebook points out that witnesses have become unavailable

3   since the litigation began and that further delay may result in further loss of evidence.

4   Delay alone typically does not constitute prejudice.  *Telemac Corp. v. Teledigital, Inc.,* 450

5   F. Supp. 2d 1107, 1111 (N.D. Cal. 2006).  That is because "parties having protection under the

6   patent statutory framework may not 'complain of the rights afforded to others by the same

7   statutory framework.'"  *KLA-Tencor Corp. v. Nanometrics, Inc.*, No. C 05-03116 JSW, 2006 WL

8   708661, at *3 (N.D. Cal. Mar. 16, 2006) (citation omitted).  However, in considering this factor,

9   courts consider evidence of dilatory motives or tactics, which suggest that the party is "taking

10  tactical advantage of opportunities for delay." *Telemac,* 450 F. Supp. 2d at 1111; *Network*

11  *Appliance*, 2008 WL 2168917, at *5.  Moreover, in the context of successive challenges to

12  validity, the Court finds that delay may constitute undue prejudice.

13  The legislative history of the AIA demonstrates deep concern with the "troublesomely

14  inefficient and ineffective" reexamination procedure.  S. Rep. 110-259 at 19.  According to the

15  Senate Report, reexamination have failed to become a "truly viable alternative for resolving

16  questions of patent validity" in part because of the length of the proceedings.  *Id.*  To address this

17  issue, Congress added restrictions to the newly created inter partes review procedure, including by

18  barring parties from challenging validity in an IPR after doing the same in civil litigation.  H.R.

19  Rep. 112-98 at 48.  Although Congress did not add similar restrictions to the reexamination

20  statute, the House Report aptly articulates the potential for prejudice:

21

22      The Committee recognizes the importance of quiet title to patent owners to ensure
        continued investment resources. While this amendment is intended to remove current
23      disincentives to current administrative processes, the changes made by it are not to be used
        as tools for harassment or a means to prevent market entry through repeated litigation and
24      administrative attacks on the validity of a patent. Doing so would frustrate the purpose of
        the section as providing quick and cost effective alternatives to litigation. Further, such
25      activity would divert resources from the research and development of inventions. As such,
        the Committee intends for the USPTO to address potential abuses and current
26      inefficiencies under its expanded procedural authority.

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

H.R. Rep. 112-98 at 48.  As this report suggests, past a certain point, patent owners are entitled to "quiet title" to enforce their patents.  Although the prejudice in any one case may not be great, forcing patent owners to wait three or more years to resolve successive validity challenges before even beginning litigation would—as the House Report recognizes—disincentivize investment in innovation.  *Id.*  Moreover, it would divest resources away from research and development and towards defending an existing patent portfolio.  Finally, when used in succession, post-grant proceedings might become tools for harassment of patent owners who fail to license or allow others to use their patents.  Thus, although BlackBerry has a right to seek reexamination, the Court must be sensitive to creating disincentives for investment in innovation by forcing patent owners to jump through multiple validity hoops before being allowed to enforce their patents.

Here, BlackBerry has already tried to invalidate the patents in the IPRs.  It failed to do so even at the initial institution stage, where all it had to demonstrate was a "reasonable likelihood" of success.  The stay that resulted from waiting for IPR institution already created a four-month delay in this litigation.  The circumstances of BlackBerry's reexamination requests suggest tactical delay—BlackBerry filed the requests after receiving non-institution decisions in the IPRs, and it did so at record speed seemingly calculated to obtain a stay.  The nature of the parties' relationship explains why: the parties are engaged in a cross-jurisdictional dispute, and a stay will determine which case goes first.[4]  In these circumstances, BlackBerry's tactical delay, combined with the prejudice to Facebook from having its patents adjudicated long after BlackBerry's, weighs against granting a stay.  *See TPK Touch Solutions*, 2013 WL 6021324, at **4-5; *Interwoven*, 2012 WL 761692, at *2; *Esco*, 2009 WL 3078463, at *4; *Network Appliance*, 2008 WL 2168917, at *3.

//

//

//

---

[4] Although the Central District of California court has stayed most patents in BlackBerry's case, the short timeline for deciding IPRs following an institution decision suggests that they stay will be lifted in a few months, at least for the patents for which IPRs were not instituted.

**CONCLUSION**

For the foregoing reasons, the Court DENIES BlackBerry's motion to stay.  The Court SETS this matter for a case management conference on July 10, 2020 at 11:00 a.m.  The parties shall appear by AT&T Conference by calling 1-888-684-8852 and entering the access code is 8583698#.  The parties shall dial in to the conference no later than 15 minutes prior to the scheduled appearance time to check in with the Courtroom Deputy.  The parties are HEREBY ORDERED to file a joint case management by no later than July 2, 2020, setting out proposed dates for dispositive motions, as well as the remaining deadlines.  The parties are reminded that they shall each be allowed to file ONE motion for summary judgment.

**IT IS SO ORDERED.**

Dated:  June 15, 2020

_____
JEFFREY S. WHITE
United States District Judge